No. 23-10159

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

ALEXANDER R. DEANDA, on Behalf of Himself and Others Similarly Situated,

Plaintiff-Appellee,

v.

XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; JESSICA SWAFFORD MARCELLA, in her official capacity as Deputy Assistant Secretary for Population Affairs; UNITED STATES OF AMERICA,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of Texas

## RECORD EXCERPTS

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

ABBY C. WRIGHT
COURTNEY L. DIXON
*Attorneys, Appellate Staff*
*Civil Division, Room 7246*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-8189*

# TABLE OF CONTENTS

**Tab**

Docket Entries, No. 2:20-cv-00092-Z ...............................................................Tab 1
   ROA.1-ROA.9

Defendants' Notice of Appeal (Feb. 16, 2023)............................................Tab 2
   ROA.826-ROA.828

Summary Judgment Opinion (Dec. 8, 2022)...............................................Tab 3
   ROA.729-ROA.764

Final Judgment (Dec. 20, 2022) ...................................................................Tab 4
   ROA.793-ROA.794

Order Denying Motion to Strike (Jan. 4, 2023)..........................................Tab 5
   ROA.819-ROA.825

Complaint (Apr. 10, 2020) ...........................................................................Tab 6
   ROA.10-ROA.34

Exhibit to Plaintiff's Motion for Summary Judgment, Declaration of Alexander R.
Deanda (July 25, 2022) .................................................................................Tab 7
   ROA.627-ROA.628

CERTIFICATE OF SERVICE

**TAB 1**

APPEAL,CLOSED

# U.S. District Court
# Northern District of Texas (Amarillo)
# CIVIL DOCKET FOR CASE #: 2:20-cv-00092-Z

Deanda v. Becerra et al                          Date Filed: 04/10/2020
Assigned to: Judge Matthew J. Kacsmaryk          Date Terminated: 12/20/2022
 Case in other court:  USCA5, 23-10159           Jury Demand: None
Cause: 42:1981 Civil Rights                      Nature of Suit: 440 Civil Rights: Other Civil
                                                 Rights
                                                 Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Alexander R. Deanda**              represented by   **Jonathan F Mitchell**
*on Behalf of Himself and Others Similarly*          111 Congress Avenue
*Situated*                                           Suite 400
                                                     Austin, TX 78701
                                                     512-686-3940
                                                     Fax: 512-686-3941
                                                     Email: jonathan@mitchell.law
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Bar Status: Admitted/In Good Standing*

                                                     **Alex Lee Yarbrough**
                                                     Riney & Mayfield LLP
                                                     320 S. Polk Street, Suite 600
                                                     Maxor Building
                                                     Amarillo, TX 79101
                                                     806-468-3200
                                                     Fax: 806-376-4509
                                                     Email: ayarbrough@rineymayfield.com
                                                     *TERMINATED: 08/31/2022*
                                                     *Bar Status: Admitted/In Good Standing*

                                                     **Charles W Fillmore**
                                                     The Fillmore Law Firm LLP
                                                     201 Main Street
                                                     Suite 801
                                                     Fort Worth, TX 76102
                                                     817/332-2351
                                                     Fax: 817/870-1859
                                                     Email: chad@fillmorefirm.com
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Bar Status: Admitted/In Good Standing*

                                                     **Douglas Bryan Hughes**
                                                     Law Office of D. Bryan Hughes
                                                     110 North College Avenue, Suite 207
                                                     Tyler, TX 75702-7221

903-581-1776
Email: bryan@hughesfirm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**H Dustin Fillmore, III**
The Fillmore Law Firm LLP
201 Main Street
Suite 801
Fort Worth, TX 76102
817/332-2351
Fax: 817/870-1859
Email: dusty@fillmorefirm.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**W Heath Hendricks**
Underwood Law
500 S. Taylor
Suite 1200
Amarillo, TX 79101
806-379-0345
Fax: 806-379-0316
Email: heath.hendricks@uwlaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**<u>Defendant</u>**

| | | |
|---|---|---|
| **Xavier Becerra** <br> *in his official capacity as Secretary of Health and Human Services* | represented by | **Amber Justine Richer** <br> US Department of Justice <br> 1100 L St NW <br> Washington, DC 20005 <br> 202-514-3489 <br> Email: amber.richer@usdoj.gov <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* <br> *Bar Status: Not Admitted* |

**<u>Defendant</u>**

| | | |
|---|---|---|
| **Jessica Swafford Marcella** <br> *in her official capacity as Deputy Assistant Secretary for Population Affairs* | represented by | **Amber Justine Richer** <br> (See above for address) <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* <br> *Bar Status: Not Admitted* |

**<u>Defendant</u>**

| | | |
|---|---|---|
| **United States of America** | represented by | **Amber Justine Richer** <br> (See above for address) |

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Alex M. Azar II**
*in his Official Capacity as Secretary of*
*Health and Human Services*
*TERMINATED: 07/07/2021*

represented by **Amber Justine Richer**
(See above for address)
*TERMINATED: 07/07/2021*
*Bar Status: Not Admitted*

**Defendant**

**Diane Foley**
*in her Official Capacity as Deputy Assistant*
*Secretary for Population Affairs*
*TERMINATED: 07/07/2021*

represented by **Amber Justine Richer**
(See above for address)
*TERMINATED: 07/07/2021*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/10/2020 | 1 (p.10) | COMPLAINT against All Defendants filed by Alexander R. Deanda. (Filing fee $400; Receipt number 0539-10761023) Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.10) Exhibit(s), # 2 (p.36) Exhibit(s), # 3 (p.38) Cover Sheet) (Mitchell, Jonathan) (Attachment 3 replaced with flattened document on 7/27/2021) (awc). (Entered: 04/10/2020) |
| 04/10/2020 | 2 (p.36) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Alexander R. Deanda. (Mitchell, Jonathan) (Entered: 04/10/2020) |
| 04/10/2020 | 3 (p.38) | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Reno). Clerk to provide copy to plaintiff if not received electronically. (daa) (Entered: 04/10/2020) |
| 04/10/2020 | 4 (p.40) | Summons issued as to All Defendants, U.S. Attorney, and U.S. Attorney General. (daa) (Entered: 04/10/2020) |
| 04/28/2020 | 5 (p.58) | SUMMONS Returned Executed as to All Defendants. (Fillmore, H) (Entered: 04/28/2020) |
| 06/10/2020 | 6 (p.79) | NOTICE of Attorney Appearance by Amber Justine Richer on behalf of Alex M. Azar II, Diane Foley, United States of America. (Filer confirms contact info in ECF is current.) (Richer, Amber) (Entered: 06/10/2020) |
| 06/10/2020 | 7 (p.81) | Unopposed MOTION to Extend Time to answer or otherwise respond to the Complaint filed by Alex M. Azar II, Diane Foley, United States of America (Richer, Amber) (Entered: 06/10/2020) |

| 06/11/2020 | 8 (p.85) | ORDER granting 7 (p.81) Defendants' Unopposed Motion for Extension of Time. The Court GRANTS Defendants' request for an extension to file a pleading responsive to the Complaint but only extends the deadline five calendar days. The new filing deadline is Saturday, June 20, 2020. (Ordered by Judge Matthew J. Kacsmaryk on 6/11/2020) (daa) (Entered: 06/11/2020) |
|---|---|---|
| 06/16/2020 | 9 (p.88) | CERTIFICATE OF SERVICE by Alexander R. Deanda *on DHH through General Counsel* (Fillmore, H) (Entered: 06/16/2020) |
| 06/19/2020 | 10 (p.92) | MOTION to Dismiss *for Lack of Jurisdiction and Failure to State a Claim* filed by Alex M. Azar II, Diane Foley, United States of America (Richer, Amber) (Entered: 06/19/2020) |
| 06/19/2020 | 11 (p.94) | Brief/Memorandum in Support filed by Alex M. Azar II, Diane Foley, United States of America re 10 (p.92) MOTION to Dismiss *for Lack of Jurisdiction and Failure to State a Claim* (Richer, Amber) (Entered: 06/19/2020) |
| 06/19/2020 | 12 (p.123) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Alex M. Azar II, Diane Foley, United States of America. (Richer, Amber) (Entered: 06/19/2020) |
| 07/10/2020 | 13 (p.125) | RESPONSE filed by Alexander R. Deanda re: 10 (p.92) MOTION to Dismiss *for Lack of Jurisdiction and Failure to State a Claim* (Mitchell, Jonathan) (Entered: 07/10/2020) |
| 07/13/2020 | 14 (p.145) | AMENDED RESPONSE filed by Alexander R. Deanda re: 10 (p.92) MOTION to Dismiss *for Lack of Jurisdiction and Failure to State a Claim* (Mitchell, Jonathan) Modified title on 7/13/2020 (nhp). (Entered: 07/13/2020) |
| 07/24/2020 | 15 (p.165) | REPLY filed by Alex M. Azar II, Diane Foley, United States of America re: 10 (p.92) MOTION to Dismiss *for Lack of Jurisdiction and Failure to State a Claim* (Richer, Amber) (Entered: 07/24/2020) |
| 08/06/2020 | 16 (p.180) | ORDER SETTING HEARING ON MATTERS OF JURISDICTION - The Court hereby ORDERS that the parties appear, in person, at the hearing on August 24, 2020 at 10:00 a.m. (CDT) at the J. Marvin Jones Federal Building and Mary Lou Robinson Courthouse, First Floor Courtroom, 205 S.E. 5th Ave, Amarillo, Texas. (Ordered by Judge Matthew J. Kacsmaryk on 8/6/2020) (vls) (Entered: 08/06/2020) |
| 08/10/2020 | 17 (p.184) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-11063515) filed by Alexander R. Deanda (Attachments: # 1 (p.10) Exhibit(s), # 2 (p.36) Exhibit(s), # 3 (p.38) Proposed Order)Attorney Douglas Bryan Hughes added to party Alexander R. Deanda(pty:pla) (Hughes, Douglas) (Entered: 08/10/2020) |
| 08/11/2020 | 18 (p.190) | ORDER granting 17 (p.184) Application for Admission Pro Hac Vice of Douglas Bryan Hughes. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Matthew J. Kacsmaryk on 8/11/2020) (daa) (Entered: 08/11/2020) |
| 08/17/2020 | 19 (p.191) | MOTION to hold hearing scheduled for August 24, 2020, over video or teleconference filed by Alexander R. Deanda (Attachments: # 1 (p.10) Declaration(s), # 2 (p.36) Declaration(s), # 3 (p.38) Declaration(s)) (Mitchell, Jonathan) (Entered: 08/17/2020) |

| | | |
|---|---|---|
| 08/18/2020 | 20 (p.272) | ORDER: The Court invokes its authority under Local Rule 83.1 and sua sponte applies the precautionary principle to ORDER that the hearing be rescheduled to start over videoconference on Friday, August 28, 2020 at 2:00 p.m. CDT. re: 19 (p.191) MOTION to hold hearing scheduled for August 24, 2020, over video or teleconference (Ordered by Judge Matthew J. Kacsmaryk on 8/18/2020) (vls) (Entered: 08/18/2020) |
| 08/28/2020 | 21 | ELECTRONIC Minute Entry for proceedings held before Judge Matthew J. Kacsmaryk: VTC/Telephone Conference held on 8/28/2020. Written Order to follow. Attorney Appearances: Plaintiff - Jonathan F Mitchell; Defense - Amber Justine Richer. (Court Reporter: Stacy Morrison) (No exhibits) Time in Court - 2:47. (vls) (Entered: 09/04/2020) |
| 09/15/2020 | 22 (p.279) | NOTICE of Change of Address for Attorney H Dustin Fillmore, III on behalf of Alexander R. Deanda. (Filer confirms contact info in ECF is current.) (Fillmore, H) (Entered: 09/15/2020) |
| 09/24/2020 | 23 (p.281) | ORDER - The Court therefore DENIES Defendants' motion to dismiss the Complaint (ECF No. 1) under Rule 12(b)(l) of the Federal Rules of Civil Procedure. The Court also concludes Plaintiff has pleaded plausible statutory and constitutional claims. The Court therefore DENIES Defendants' motion to dismiss the Complaint (ECF No. 1) under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Ordered by Judge Matthew J. Kacsmaryk on 9/24/2020) (vls) (Entered: 09/24/2020) |
| 10/08/2020 | 24 (p.313) | ANSWER to 1 (p.10) Complaint,,,, filed by Alex M. Azar II, Diane Foley, United States of America. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov, or by clicking here:  Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Richer, Amber) (Entered: 10/08/2020) |
| 11/18/2020 | 25 (p.323) | SCHEDULING ORDER: Joinder of Parties due by 1/16/2021. Amended Pleadings due by 1/16/2021. Discovery due by 6/5/2021. Motions due by 7/5/2021. Deadline for mediation is on or before 5/6/2021. Pretrial Order due by 9/28/2021. Jury Trial set for 11/2/2021 09:00 AM in US Courthouse, Courtroom 1st Floor, 205 S. E. 5th Ave., Amarillo, TX 79101-1559 before Judge Matthew J. Kacsmaryk. Pretrial Conference set for 10/27/2021 01:30 PM in US Courthouse, Courtroom 1st Floor, 205 S. E. 5th Ave., Amarillo, TX 79101-1559 before Judge Matthew J. Kacsmaryk. (Ordered by Judge Matthew J. Kacsmaryk on 11/18/2020) (daa) (Entered: 11/18/2020) |
| 07/02/2021 | 26 (p.334) | MOTION for Summary Judgment filed by Alex M. Azar II, Diane Foley, United States of America (Richer, Amber) (Entered: 07/02/2021) |
| 07/02/2021 | 27 (p.337) | Brief/Memorandum in Support filed by Alex M. Azar II, Diane Foley, United States of America re 26 (p.334) MOTION for Summary Judgment (Richer, Amber) (Entered: 07/02/2021) |
| 07/05/2021 | 28 (p.383) | MOTION to Set Briefing Schedule and Modify Scheduling Order filed by Alexander R. Deanda (Attachments: # 1 (p.10) Proposed Order) (Mitchell, Jonathan) (Entered: 07/05/2021) |
| 07/07/2021 | 29 (p.387) | ORDER granting 28 (p.383) Joint Motion to Set Briefing Schedule and Modify Scheduling Order. (Ordered by Judge Matthew J. Kacsmaryk on 7/7/2021) (daa) (Entered: 07/07/2021) |
| 07/23/2021 | | |

| | | |
|---|---|---|
| | 30 (p.388) | CROSS-MOTION for Summary Judgment *and RESPONSE to Defendant's Motion for Summary Judgment* filed by Alexander R. Deanda with Brief/Memorandum in Support. (Mitchell, Jonathan) Modified title on 7/26/2021 (daa). (Entered: 07/23/2021) |
| 07/24/2021 | 31 (p.419) | Appendix in Support filed by Alexander R. Deanda re 30 (p.388) MOTION for Summary Judgment *and Response to Defendant's Motion for Summary Judgment (Declaration of Alexander R. Deanda)* (Mitchell, Jonathan) (Entered: 07/24/2021) |
| 07/26/2021 | 32 (p.421) | MOTION to Certify Class filed by Alexander R. Deanda with Brief/Memorandum in Support. (Mitchell, Jonathan) (Entered: 07/26/2021) |
| 07/26/2021 | 33 (p.424) | Brief/Memorandum in Support filed by Alexander R. Deanda re 32 (p.421) MOTION to Certify Class (Attachments: # 1 (p.10) Proposed Order) (Mitchell, Jonathan) (Entered: 07/26/2021) |
| 08/13/2021 | 34 (p.436) | RESPONSE filed by Xavier Becerra, Diane Foley, Jessica Swafford Marcella, United States of America re: 30 (p.388) MOTION for Summary Judgment *and Response to Defendant's Motion for Summary Judgment* (Richer, Amber) (Entered: 08/13/2021) |
| 08/13/2021 | 35 (p.439) | COMBINED REPLY in Support and RESPONSE in Opposition filed by Xavier Becerra, Diane Foley, Jessica Swafford Marcella, United States of America re 34 (p.436) Response 26 (p.334) Motion for Summary Judgment 30 (p.388) Cross-Motion for Summary Judgment (Richer, Amber) Modified title on 8/16/2021 (daa). (Entered: 08/13/2021) |
| 08/16/2021 | 36 (p.470) | RESPONSE filed by Xavier Becerra, Diane Foley, Jessica Swafford Marcella, United States of America re: 32 (p.421) MOTION to Certify Class (Richer, Amber) (Entered: 08/16/2021) |
| 08/16/2021 | 37 (p.473) | Brief/Memorandum in Support filed by Xavier Becerra, Diane Foley, Jessica Swafford Marcella, United States of America re 36 (p.470) Response/Objection *Brief in Opposition to Motion for Class Certification* (Richer, Amber) (Entered: 08/16/2021) |
| 08/20/2021 | 38 (p.498) | MOTION for Extension of Time to File Response/Reply to 36 (p.470) Response/Objection, 37 (p.473) Brief/Memorandum in Support of Motion, 34 (p.436) Response/Objection, 35 (p.439) Brief/Memorandum in Support of Motion, filed by Alexander R. Deanda (Attachments: # 1 (p.10) Proposed Order) (Mitchell, Jonathan) (Entered: 08/20/2021) |
| 08/23/2021 | 39 (p.503) | ORDER granting 38 (p.498) Plaintiff's Unopposed Motion to Extend Deadlines for Reply Briefs. Plaintiff shall file a reply brief in support of Plaintiff's cross-motion for summary judgment on or before September 10, 2021. Plaintiff shall file a reply brief in support of Plaintiff's motion for class certification on or before September 13, 2021. (Ordered by Judge Matthew J. Kacsmaryk on 8/23/2021) (daa) (Entered: 08/23/2021) |
| 09/10/2021 | 40 (p.504) | REPLY filed by Alexander R. Deanda re: 30 (p.388) MOTION for Summary Judgment *and Response to Defendant's Motion for Summary Judgment* (Mitchell, Jonathan) (Entered: 09/10/2021) |
| 09/13/2021 | 41 (p.516) | REPLY filed by Alexander R. Deanda re: 32 (p.421) MOTION to Certify Class (Mitchell, Jonathan) (Entered: 09/14/2021) |
| 09/27/2021 | 42 | Joint MOTION to Continue *All Pretrial and Trial Deadlines Pending Resolution of* |

| | | |
|---|---|---|
| | (p.531) | *Dispositive Motions* filed by Alexander R. Deanda (Mitchell, Jonathan) Modified title on 9/28/2021 (daa). (Entered: 09/27/2021) |
| 09/28/2021 | 43 (p.535) | ORDER granting 42 (p.531) Joint Motion to Continue All Pretrial and Trial Deadlines Pending Resolution of Dispositive Motions. (Ordered by Judge Matthew J. Kacsmaryk on 9/28/2021) (daa) (Entered: 09/28/2021) |
| 10/19/2021 | | Hearing/Deadline Modification: Deadlines/hearings terminated per 43 (p.535) . (nhp) (Entered: 10/19/2021) |
| 10/20/2021 | 44 (p.536) | NOTICE of *Supplemental Authority* filed by Xavier Becerra, Jessica Swafford Marcella, United States of America (Attachments: # 1 (p.10) Final Rule) (Richer, Amber) (Entered: 10/20/2021) |
| 02/15/2022 | 45 (p.576) | ORDER: The Court Orders Plaintiffs Motion to Certify Class is DENIED WITHOUT PREJUDICE; The pending motions for summary judgment (ECF Nos. 26, 30) are MOOT; Plaintiff and Defendants may refile their respective motion for summary judgement in the event the case proceeds under a narrower class in the future; and Plaintiff may file an amended Motion to Certify Class on or before Tuesday, March 15, 2022, at 5:00 p.m. (CST), should he choose to do so. Motions terminated: 30 (p.388) MOTION for Summary Judgment *and Response to Defendant's Motion for Summary Judgment* filed by Alexander R. Deanda, 26 (p.334) MOTION for Summary Judgment filed by Diane Foley, Alex M. Azar II, United States of America. (Ordered by Judge Matthew J. Kacsmaryk on 2/15/2022) (vls) (Main Document 45 replaced on 2/15/2022) (vls). (Entered: 02/15/2022) |
| 03/15/2022 | 46 (p.587) | NOTICE of *Decision Not to File a Renewed Motion for Class Certification* filed by Alexander R. Deanda (Mitchell, Jonathan) (Entered: 03/15/2022) |
| 06/21/2022 | 47 (p.589) | ORDER: The Court ORDERS parties to file a joint status report, detailing any further necessary proceedings in this case, on or before Wednesday, June 29, 2022. (Ordered by Judge Matthew J. Kacsmaryk on 6/21/2022) (daa) (Entered: 06/21/2022) |
| 06/29/2022 | 48 (p.590) | JOINT Status Report and MOTION to Set Briefing Schedule filed by Alexander R. Deanda. (Attachments: # 1 (p.10) Proposed Order) (Mitchell, Jonathan) Added event; modified title on 6/30/2022 (daa). (Entered: 06/29/2022) |
| 07/05/2022 | 49 (p.594) | ORDER, re: 48 (p.590) Joint Status Report and Motion to Set Briefing Schedule. See Order for deadlines. (Ordered by Judge Matthew J. Kacsmaryk on 7/5/2022) (daa) (Entered: 07/05/2022) |
| 07/25/2022 | 50 (p.595) | MOTION for Summary Judgment filed by Alexander R. Deanda (Attachments: # 1 (p.10) Proposed Order) (Mitchell, Jonathan) (Entered: 07/25/2022) |
| 07/25/2022 | 51 (p.599) | Brief/Memorandum in Support filed by Alexander R. Deanda re 50 (p.595) MOTION for Summary Judgment (Attachments: # 1 (p.10) Exhibit(s)) (Mitchell, Jonathan) (Entered: 07/25/2022) |
| 08/19/2022 | 52 (p.629) | CROSS MOTION for Summary Judgment and Response filed by Xavier Becerra, Jessica Swafford Marcella, United States of America (Attachments: # 1 (p.10) Proposed Order) (Richer, Amber) Modified title on 8/22/2022 (daa). (Entered: 08/19/2022) |
| 08/19/2022 | 53 (p.633) | Brief/Memorandum in Support filed by Xavier Becerra, Jessica Swafford Marcella, United States of America re 52 (p.629) Cross MOTION for Summary Judgment *and Response* (Richer, Amber) (Entered: 08/19/2022) |

| 08/19/2022 | 54 | ** Duplicate Entry ** See ECF 52 (p.629) . RESPONSE filed by Xavier Becerra, Jessica Swafford Marcella, United States of America re: 50 (p.595) MOTION for Summary Judgment (Attachments: # 1 (p.10) Proposed Order) (Richer, Amber) Duplicate entry confirmed by AUSA on 8/22/2022 (daa). (Entered: 08/19/2022) |
|---|---|---|
| 08/19/2022 | 55 | ** Duplicate Entry ** See ECF 53 (p.633) . Brief/Memorandum in Support filed by Xavier Becerra, Jessica Swafford Marcella, United States of America re 50 (p.595) MOTION for Summary Judgment , 54 Response/Objection *Consolidated Brief in Support of Defendants' Cross Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment* (Richer, Amber) Duplicate entry confirmed by AUSA on 8/22/2022 (daa). (Entered: 08/19/2022) |
| 08/31/2022 | 56 (p.672) | NOTICE of Attorney Appearance by W Heath Hendricks on behalf of Alexander R. Deanda. (Filer confirms contact info in ECF is current.) (Hendricks, W) (Entered: 08/31/2022) |
| 08/31/2022 | 57 (p.674) | MOTION to Withdraw as Attorney filed by Alexander R. Deanda (Yarbrough, Alex) (Entered: 08/31/2022) |
| 08/31/2022 | 58 (p.676) | ORDER granting 57 (p.674) Motion to Withdraw as Attorney. Attorney Alex Lee Yarbrough terminated (Ordered by Judge Matthew J. Kacsmaryk on 8/31/2022) (nht) (Entered: 08/31/2022) |
| 09/09/2022 | 59 (p.677) | Unopposed MOTION to Extend Time of deadline to file reply briefs filed by Alexander R. Deanda (Attachments: # 1 (p.10) Proposed Order) (Mitchell, Jonathan) (Entered: 09/09/2022) |
| 09/13/2022 | 60 (p.682) | ORDER granting 59 (p.677) Plaintiff's Unopposed Motion to Extend Deadlines for Reply Briefs. Plaintiff shall file his reply brief in support of his motion for summary judgment and response to Defendant's cross-motion for summary judgment on or before September 30, 2022. Defendants shall file their reply brief in support of their cross-motion for summary judgement on or before October 28, 2022. (Ordered by Judge Matthew J. Kacsmaryk on 9/13/2022) (daa) (Entered: 09/13/2022) |
| 09/30/2022 | 61 (p.683) | REPLY filed by Alexander R. Deanda re: 52 (p.629) Cross MOTION for Summary Judgment *and Response*, 50 (p.595) MOTION for Summary Judgment (Mitchell, Jonathan) (Entered: 09/30/2022) |
| 10/28/2022 | 62 (p.701) | REPLY filed by Xavier Becerra, Jessica Swafford Marcella, United States of America re: 52 (p.629) Cross MOTION for Summary Judgment *and Response* (Richer, Amber) (Entered: 10/28/2022) |
| 12/08/2022 | 63 (p.729) | OPINION AND ORDER granting 50 (p.595) Motion for Summary Judgment filed by Alexander R. Deanda; denying 52 (p.629) Cross Motion for Summary Judgment filed by Jessica Swafford Marcella, Xavier Becerra, United States of America. (Ordered by Judge Matthew J. Kacsmaryk on 12/8/2022) (daa) (Entered: 12/09/2022) |
| 12/15/2022 | 64 (p.765) | NOTICE of *Defendants' Proposed Judgment* re: 63 (p.729) Memorandum Opinion and Order, filed by Xavier Becerra, Jessica Swafford Marcella, United States of America (Attachments: # 1 (p.10) Text of Proposed Judgment, # 2 (p.36) Certificate of Service) (Richer, Amber) (Entered: 12/15/2022) |
| 12/15/2022 | 65 (p.771) | NOTICE of *Plaintiff's Proposed Final Judgment* filed by Alexander R. Deanda (Attachments: # 1 (p.10) Proposed Order) (Mitchell, Jonathan) (Entered: 12/15/2022) |
| 12/20/2022 | 66 | OPPOSED MOTION to Strike 65 (p.771) Notice of Plaintiff's Proposed Final |

| | | |
|---|---|---|
| | _(p.782)_ | Judgment filed by Xavier Becerra, Jessica Swafford Marcella, United States of America with Brief/Memorandum in Support. (Attachments: # 1 (p.10) Proposed Order, # 2 (p.36) Certificate of Service) (Richer, Amber) Document re-opened ; title modified on 12/20/2022 (daa). (Entered: 12/20/2022) |
| 12/20/2022 | 67 (p.793) | FINAL JUDGMENT (Ordered by Judge Matthew J. Kacsmaryk on 12/20/2022) (daa) (Entered: 12/20/2022) |
| 12/20/2022 | 68 (p.795) | ORDER: Before the Court is Defendants' Opposed Motion to Strike Notice of Plaintiff's Proposed Final Judgment ("Motion") (ECF No. 66), filed on December 20, 2022. The Court ORDERS Plaintiff to respond to the Motion on or before December 22, 2022. Defendants may file any reply on or before December 23, 2022. Based on parties' briefing, the Court will amend the Final Judgment, if necessary. re: 66 (p.782) MOTION to Strike 65 (p.771) Notice (Ordered by Judge Matthew J. Kacsmaryk on 12/20/2022) (daa) (Entered: 12/20/2022) |
| 12/22/2022 | 69 | ***Please Disregard - Per Attorney will Refile*** RESPONSE filed by Alexander R. Deanda re: 66 (p.782) MOTION to Strike 65 (p.771) Notice (Other) (Mitchell, Jonathan) Modified text on 12/23/2022 (sxf). (Entered: 12/22/2022) |
| 12/23/2022 | 70 (p.796) | RESPONSE filed by Alexander R. Deanda re: 66 (p.782) MOTION to Strike 65 (p.771) Notice (Other) (Mitchell, Jonathan) (Entered: 12/23/2022) |
| 12/23/2022 | 71 (p.807) | REPLY filed by Xavier Becerra, Jessica Swafford Marcella, United States of America re: 66 (p.782) MOTION to Strike 65 (p.771) Notice (Other) (Richer, Amber) (Entered: 12/23/2022) |
| 01/04/2023 | 72 (p.819) | ORDER denying 66 (p.782) Motion to Strike. (Ordered by Judge Matthew J. Kacsmaryk on 1/4/2023) (nht) (Entered: 01/04/2023) |
| 02/16/2023 | 73 (p.826) | NOTICE OF APPEAL as to 67 (p.793) Judgment to the Fifth Circuit by Xavier Becerra, Jessica Swafford Marcella, United States of America. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Richer, Amber) (Entered: 02/16/2023) |
| 02/27/2023 | 74 | USCA Case Number 23-10159 in USCA5 for 73 (p.826) Notice of Appeal, filed by Jessica Swafford Marcella, Xavier Becerra, United States of America. (nht) (Entered: 02/27/2023) |

# TAB 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| ALEXANDER R. DEANDA,      ) <br><br> *Plaintiff*,      ) <br><br> v.      ) <br><br> XAVIER BECERRA, in his official capacity as ) <br> Secretary of Health and Human Services; ) <br> JESSICA SWAFFORD MARCELLA, in her official ) <br> capacity as Deputy Assistant Secretary for ) <br> Population Affairs; UNITED STATES OF ) <br> AMERICA,      ) <br><br> *Defendants*.      ) | Civil Action No. 2:20-cv-92-Z |

<u>**DEFENDANTS' NOTICE OF APPEAL**</u>

Notice is hereby given that all Defendants in the above-named case appeal to the United

States Court of Appeals for the Fifth Circuit from this Court's Final Judgment, ECF No. 67,

entered in this action on December 20, 2022, as well as all prior orders and decisions that merge

into the judgment, including the Court's December 8, 2022 Memorandum Opinion and Order,

ECF No. 63, and the Court's January 4, 2023 Order, ECF No. 72.

Dated:  February 16, 2023                    Respectfully submitted,


                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General

                                            MICHELLE BENNETT
                                            Assistant Branch Director

                                            /s/ *Amber Richer*
                                            AMBER RICHER (CA Bar No. 253918)
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street NW
                                            Washington, D.C. 20530
                                            Tel: (202) 514-3489
                                            Email: amber.richer@usdoj.gov

                                            *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2023, I electronically transmitted the foregoing to the parties and the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

/s/ *Amber Richer*

AMBER RICHER (CA Bar No. 253918)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20530
Tel: (202) 514-3489
Email: amber.richer@usdoj.gov

**TAB 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



ALEXANDER R. DEANDA,           §
                               §
     Plaintiff,                §
                               §
v.                             §        2:20-CV-092-Z
                               §
XAVIER BECERRA, *et al.*,      §
                               §
     Defendants.               §

## OPINION AND ORDER

Before the Court are parties' competing motions for summary judgment. Plaintiff Alexander R. Deanda filed his Motion for Summary Judgment ("Motion") (ECF No. 50) on July 25, 2022. Defendants filed their Cross-Motion for Summary Judgment ("Cross-Motion") (ECF No. 52) on August 19, 2022. Having considered the motions, pleadings, and relevant law, the Court **GRANTS** Plaintiff's Motion and renders summary judgment in Plaintiff's favor on all claims. The Court **DENIES** Defendants' Cross-Motion.

### BACKGROUND

Congress enacted Title X of the Public Health Service ("PHS") Act, 42 U.S.C. §§ 300 *et seq.*, to "mak[e] comprehensive voluntary family planning services readily available to all persons desiring such services." Family Planning Services and Population Research Act of 1970, Pub. L. No. 91-572, § 2(1), 84 Stat. 1504 (1970). The PHS authorizes the U.S. Department of Health and Human Services ("HHS") to "make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents)." 42 U.S.C. § 300(a). In 1981, Congress amended the statute to include the current

requirement that, "[t]o the extent practical," participating entities "shall encourage family participation in projects assisted under this subsection." *Id.*; *see also* Pub. L. No. 97-35, § 931(b)(1), 95 Stat. 357 (1981). HHS regulations now provide that "Title X projects may not require consent of parents or guardians for the provision of services to minors[.]" 42 C.F.R. § 59.10(b); *see also* 86 Fed. Reg. 56,144, 56,166 (Oct. 7, 2021).

Plaintiff is a Christian who is "raising each of [his] daughters in accordance with Christian teaching on matters of sexuality, which requires unmarried children to practice abstinence and refrain from sexual intercourse until marriage." ECF No. 51-1 at 1. Texas Family Code § 151.001(a)(6) protects Plaintiff's free exercise of religion in this regard because it protects "the right to consent to the child's . . . medical and dental care, and psychiatric, psychological, and surgical treatment." Texas law also provides Plaintiff standing to sue for a violation of Section 151.001(a)(6). *See* TEX. FAM. CODE § 102.003(a)(1).

Plaintiff alleges Defendants' administration of Title X impedes this statutory right and his parental rights under the U.S. Constitution because Defendants: (1) fail to monitor grantees to ensure compliance; and (2) continue to fund grantees that violate Section 151.001(a)(6). ECF No. 1 at 5–7. Arguing Title X does not preempt "parental consent" laws, Plaintiff alleges his injures include, but are not limited to: (1) loss of his statutory rights under Section 151.001(a)(6); (2) the subversion of his authority as a parent; (3) loss of assurance that his children will be unable to access prescription contraception or other family planning services that facilitate sexual promiscuity and pre-marital sex; and (4) weakening of his ability to raise his children under the teachings of his Christian faith. ECF No. 51-1 at 2. Plaintiff asks this Court to declare that Section 151.001(a)(6) applies to all Title X grantees in Texas. *See* ECF No. 1 at 3–5. Plaintiff

23-10159.730

further asks the Court to enjoin Defendants from funding any Texas-based Title X grantee that violates Section 151.001(a)(6). *Id.* at 7.

### LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if its existence or non-existence "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he substantive law will identify which facts are material." *Id.* at 248. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "On cross-motions for summary judgment, [the Court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Texas v. Rettig*, 987 F.3d 518, 526 (5th Cir. 2021) (quoting *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010)).

When reviewing summary-judgment evidence, the court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). A court cannot make a credibility determination when considering conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If some evidence supports a disputed allegation, so that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

### ANALYSIS

The Court will address parties' standing and statute-of-limitations arguments before moving to their merits arguments.

23-10159.731

### A. Plaintiff Has Standing

The judicial power of federal courts is limited to certain "Cases" and "Controversies." U.S. CONST. art. III, § 2. The case-or-controversy requirement requires a plaintiff to establish he has standing to sue. *See Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018); *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) ("Every party that comes before a federal court must establish that it has standing to pursue its claims."). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

To have standing, the party invoking federal jurisdiction must establish he suffered: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) an injury that is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) an injury that is "likely" rather than "speculative[ly]" to be "redressed by a favorable decision." *Id.* at 560–61. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

### 1. Plaintiff satisfies the first *Lujan* factor.

The first *Lujan* factor considers whether a plaintiff has sustained an "injury in fact" that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. A "concrete" injury must be "de facto." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). That is, it must "actually exist" and be "real" rather than "abstract." *Id.* A "particularized" injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

One who seeks injunctive or declaratory relief must show an injury with "continuing, present adverse effects" or a "substantial likelihood that he will suffer injury in the future." *Bauer*

23-10159.732

*v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003); *see also TransUnion*, 141 S. Ct. at 2210 ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."). "[E]ven a small probability of injury is sufficient to create a case or controversy — to take a suit out of the category of the hypothetical — provided of course that the relief sought would, if granted, reduce the probability." *Village of Elk Grove Village v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993); *see also, e.g.*, *Massachusetts v. EPA*, 549 U.S. 498, 525 n.23 (2007); *Mo. Coal. for Env't v. FERC*, 544 F.3d 955, 957 (8th Cir. 2008); *Stewart v. Blackwell*, 444 F.3d 843, 855 (6th Cir. 2006), *vacated and superseded on other grounds*, 473 F.3d 692 (6th Cir. 2007); *Nat. Res. Def. Council v. EPA*, 464 F.3d 1, 7 (D.C. Cir. 2006); *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005); *Friends of Marolt Park v. U.S. Dep't of Transp.*, 382 F.3d 1088, 1095 (10th Cir. 2004).

A court should assess whether the alleged injury to the plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. *TransUnion*, 141 S. Ct. at 2204. "[A] plaintiff doesn't need to demonstrate that the level of harm he has suffered would be actionable under a similar, common-law cause of action. But he does need to show that the type of harm he's suffered is similar in kind to a type of harm that the common law has recognized as actionable." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822 (5th Cir. 2022); *see also Campaign Legal Ctr. v. Scott*, No. 22-50692, 2022 WL 4546109, at *8 (5th Cir. Sept. 16, 2022) (Ho., J, concurring) (stating evidence of injury required by *TransUnion* is not burdensome).

23-10159.733

a. *Plaintiff suffers from an injury in fact.*

"[T]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (internal marks omitted). When "a plaintiff's claim of injury in fact depends on legal rights conferred by statute, it is the particular statute and the rights it conveys that guide the standing determination." *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 552 (5th Cir. 2016) (quoting *Donoghue v. Bulldog Inv'rs Gen. P'ship*, 696 F.3d 170, 178 (2d Cir. 2012)). "Essentially, the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* (alteration in original). "Hence, the 'injury in fact' analysis for purposes of Article III is directly linked to the question of whether the plaintiff 'has suffered a cognizable statutory injury under the' statute in question." *Id.* (quoting *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006)). "Although Article III standing is a question of federal law, state law may create the asserted legal interest." *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 721 (10th Cir. 2008); *see also Diamond v. Charles*, 476 U.S. 54, 65 n.17 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 & n.3 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972).

Texas law confers Plaintiff the right to consent to his children's medical care and general standing to file suit for a violation of that right. *See* TEX. FAM. CODE §§ 102.003(a)(1) ("An original suit may be filed at any time by . . . a parent of the child . . . ."), 151.001 (A Texas parent may file a lawsuit for violating his "right to consent to . . . medical and dental care."). Plaintiff alleges the loss of his state-law right to consent to the medical treatment of his minor

23-10159.734

children constitutes an injury in fact that is concrete and particularized as well as actual and imminent. *See* ECF No. 51 at 10–11. The Court agrees that Plaintiff suffers an injury in fact.[1]

Plaintiff clearly suffers an injury in fact when compared to a hypothetical given in *TransUnion*. In *TransUnion*, the Supreme Court provided the following hypothetical: "Suppose first that a Maine citizen's land is polluted by a nearby factory." 141 S. Ct. at 2205. The citizen "sues the company, alleging that it violated a federal environmental law and damaged her property." *Id.* Then "[s]uppose also that a second plaintiff in Hawaii files a federal lawsuit alleging that the same company in Maine violated that same environmental law by polluting land in Maine." *Id.* The violation alleged "did not personally harm the plaintiff in Hawaii." *Id.* "Even if Congress affords both hypothetical plaintiffs a cause of action . . . to sue over the defendant's legal violation, Article III standing doctrine sharply distinguishes between those two scenarios." *Id.* at 2206. Although the first plaintiff possesses standing to sue "because the plaintiff has suffered concrete harm to her property," the second plaintiff lacks standing "because that plaintiff has not suffered any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* Plaintiff here is like the first plaintiff in the hypothetical. Plaintiff's injury in fact for which this Court has the power to remedy is the loss of his state-law parental-consent rights. Plaintiff is unlike the second plaintiff in the hypothetical. Somebody, such as a third party, suing for a violation of Plaintiff's state-law parental rights would be like the second plaintiff.

---

[1] When a father is told that his state-law right to consent to his child's medical treatment has been taken away or transferred to someone else, he need not wait for an actual medical situation to arise before suing to recover his right to consent. The violation occurs when the rights were taken away in the first instance, not when one acts contrary to the father's right to consent — a right which he would lack. And the violation continues to occur while the father lacks the parental consent to which he is entitled.

Aside from his state-law harm, Plaintiff suffers from harms specified by the U.S. Constitution. Standing may exist for such harm. *See id.* at 2204 (Traditional harms "may also include harms specified by the Constitution itself." (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)).[2] The First Amendment prohibits infringement of one's right to freely exercise his religion. *See* U.S. CONST. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."); *Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972) (holding Free Exercise Clause protects "the traditional interest of parents with respect to the religious upbringing of their children"). And the Fourteenth Amendment prohibits the abridgment of parental rights. *See* U.S. CONST. amend. XIV; *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996) ("Choices about . . . the upbringing of children are among associational rights this Court has ranked as 'of basic importance in our society,' rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." (quoting *Boddie v. Connecticut*, 401 U.S. 371, 376 (1971)). Plaintiff has thus shown "the type of harm he's suffered is similar in kind to a type of harm that the common law has recognized as actionable." *Perez*, 45 F.4th at 822.

      b.  *Plaintiff adequately alleges an injury in fact on his substantive due-process claim.*

Plaintiff alleges he suffers from three cognizable injuries under substantive due-process jurisprudence: (1) immediate, present-day injury by subverting Plaintiff's authority as a parent from Defendants' administration of the Title X program; (2) present-day injury from the loss of

---

[2] By citing *Summum* approvingly, *TransUnion* indicates there was sufficient *intangible* concrete harm when the city denied a religious organization's proposal for a religious monument in which a Ten Commandments monument already stood. *See Summum*, 555 U.S. at 465. This is true even though the respondent lost on the merits of its Free Speech claim. *Id.* at 481; *see also Spokeo*, 578 U.S. at 340 ("Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete."). Thus, it would be nonsensical to hold that an organization suffers concrete harm when a proposal for a monument is denied but a father has not suffered concrete harm when he is deprived of a statutory right to consent to his children's medical treatment.

23-10159.736

assurance that his children will be unable to access prescription contraction or other family-planning services; and (3) present-day injury from the increased risk of his children accessing birth control without his knowledge or consent. *See* ECF No. 51 at 14–16.

In support of his first two arguments, Plaintiff likens this case to two cases titled *Parents United for Better Schools v. School District of Philadelphia Board of Education. Id.* These two cases were brought by parents and an organization consisting of parents that sued to stop a condom-distribution program at public high schools. In the first of these cases, the Pennsylvania Commonwealth Court determined the plaintiffs — parents of minor children — possessed standing because they: (1) identified a substantial interest — *i.e.*, their prior express parental consent to medical treatment; (2) that interest was directly affected by the defendant's action; and (3) the consequences of that action affecting the substantial interest were immediate. *See Parents United for Better Schs., Inc. v. Sch. Dist. of Phila. Bd. of Educ.*, 646 A.2d 689, 691 (Pa. Commw. Ct. 1994) ("*PUBS I*"). Likewise, the Third Circuit later permitted the parents to challenge the condom-distribution program on the ground that the program subverted parental authority. *See generally Parents United for Better Schs., Inc. v. Sch. Dist. of Phila. Bd. of Educ.*, 148 F.3d 260 (3d Cir. 1998) ("*PUBS II*").

Defendants argue this case is distinguishable from the *PUBS* cases because the state court required the plaintiff organization to show "at least one member who has or will suffer a direct, immediate, and substantial injury to an interest as a result of a challenged action." ECF No. 53 at 24 (quoting *PUBS I*, 646 A.2d at 692)). The plaintiff organization could make this showing because many of its members were parents of children who attended schools where the challenged policy had been implemented. *See PUBS I*, 646 A.2d at 692. This burden — Defendants argue — is precisely the burden that Plaintiff must (and cannot) sustain. ECF No. 53 at 25.

23-10159.737

Here, the combined *PUBS I* and *II* cases *support* Plaintiff's standing. First, nothing in the state court's analysis turned on a finding that any of the parents' children obtained or used condoms without parental consent. Second, the state court found the plaintiff organization had standing *even though the parents could opt out* of the condom-distribution program. *See PUBS II*, 148 F.3d at 264–65. This is because consent is assumed if a parent does not opt out. *PUBS I*, 646 A.2d at 691. And third, "[t]he principle that parental consent must be secured before medical treatment provided is time honored and has been recognized by both the courts and the legislature." *Id.* Because Plaintiff cannot opt out of his daughters' ability to access contraception by Defendants and parental consent to access contraception is enumerated by statute, the *PUBS* cases support Plaintiff's standing.

Plaintiff also argues Defendant's actions inflict present-day injury by increasing the risk that Plaintiff's children might access birth control without his knowledge or consent. ECF No. 51 at 16. In *Massachusetts v. EPA*, the U.S. Supreme Court stated, "even a small probability of injury is sufficient to create a case or controversy — to take a suit out of the category of the hypothetical — provided of course that the relief sought would, if granted, reduce the probability." 549 U.S. at 525 n.23 (internal marks omitted). Defendants attempt to distinguish this case from *Massachusetts* by noting Plaintiff asserts a substantive due-process right, rather than a procedural due-process right. ECF No. 53 at 25–26. But the cases Plaintiff cites in support seldom turn on any sort of distinction between procedural and non-procedural rights. *See* ECF No. 51 at 16–17 (collecting cases); *see also, e.g.*, *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005) (finding plaintiff has standing to bring negligence claims "on behalf of a class of as-of-yet uninjured device implantees" due to increased disease risk); *Perez*, 45 F.4th at 824 ("For Article III purposes, *Spokeo* never distinguished between substantive and procedural statutory rights.").

23-10159.738

Just as one "accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy," one can also suffer a probabilistic injury in fact if the injury is concrete, particularized, imminent, and has some geographic and temporal nexus to the plaintiff. *Lujan*, 504 U.S. at 572 n.7. Although the causation and redressability components of standing are harder to establish when one is not directly subject to the challenged governmental action, standing jurisprudence does suggest that the injury in fact prong becomes tougher to establish in these types of cases.

Defendants' administration of Title X grants in Potter and Randall Counties satisfies the standard for "increased risk." ECF No. 23 at 20. Title X sub-recipients in Region VI, a region that includes the State of Texas, dispensed contraception to over 35,000 girls under the age of eighteen in 2021. *See* HHS OFFICE OF POPULATION AFFAIRS, 2021 Title X Family Planning Annual Report 12, Ex. 4 (Sept. 2021). All family-planning clinics in Texas that do *not* receive Title X funds must obtain parental consent to dispense contraception to a minor. *See* TEX. FAM. CODE § 151.001(a)(6). But Defendants issued written guidance instructing grant recipients that they may *not* require parental consent. *See* OPA Program Policy Notice 2014-01 (June 5, 2014). If even one Title X sub-recipient near Amarillo follows Defendants' guidance when interacting with a minor, that action increases Plaintiff's probability of harm.

Given the number of Title X grantees and sub-recipients in Region VI and the number of minor girls to whom they dispense contraception, the odds of this net "increased risk" occurring asymptotically approach 100% — thereby making Plaintiff's injury "imminent." Title X clinics are open most days and, therefore, they post an ongoing, continuous, and imminent risk to Plaintiff that is not part of a "chain" of speculative improbabilities. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–14 (2013); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–09 (1983). Such risk

23-10159.739

does not rely on excessive "guesswork." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 537 (5th Cir. 2019). Because Plaintiff alleges harm that is "traditionally recognized as providing a basis for a lawsuit in American courts," Plaintiff sufficiently alleges an injury in fact. 141 S. Ct. at 2206.

### 2. Plaintiff's injuries are fairly traceable to Defendant's conduct and likely to be redressed by the requested relief.

"[A] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014); *see also Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976) ("In other words, the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."). The "fairly traceable" and "redressability" components of the standing inquiry were initially articulated as "two facets of a single causation requirement." *Allen*, 468 U.S. at 753 n.19 (quoting CHARLES ALLEN WRIGHT, LAW OF FEDERAL COURTS § 13 (4th ed. 1983)). "To the extent there is a difference, it is that the former examines the causal connection between the assertedly unlawful conduct and the alleged injury, whereas the latter examines the causal connection between the alleged injury and the judicial relief requested." *Id.*

"[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Massachusetts*, 549 U.S. at 525 (quoting *Larson v. Valente*, 456 U.S. 228, 244 n.15 (1982)). And redressability need not be certain. A "substantial likelihood" of the requested relief redressing the alleged injury is enough to pass muster in standing analysis. *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 74–75 (1978). Redressability is

satisfied even if relief must filter downstream through third parties uncertain to comply with the result, provided the relief would either: (1) remove an obstacle for a nonparty to act in a way favorable to the plaintiff; or (2) influence a nonparty to act in such a way. *See, e.g.*, *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565–66 (2019); *Larson*, 456 U.S. at 242–44; *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 396–98 (5th Cir. 2015).

Defendants interpret Title X to preempt state laws requiring a medical practitioner to obtain parental consent before providing medical care to minor children. *See* ECF No. 24 at 4. Relevant HHS regulations provide "Title X projects may not require consent of parents or guardians for the provision of services to minors." *See* OPA Program Policy Notice 2014-01 (June 5, 2014). Furthermore, Defendants instruct sub-recipients that Title X project staff may not "notify a parent or guardian before or after a minor has requested and/or received Title X family planning services." 42 C.F.R. § 59.10(b).

Plaintiff's alleged injuries are traceable to Defendants' behavior and can be redressed by a declaratory judgment finding Defendants' actions unlawful or injunctive relief prohibiting Defendants from enforcing Title X in contravention of Plaintiff's parental rights. It is probable Defendants' continued funding of non-compliant grantees makes it more likely that grantees and sub-recipients will not comply with Section 151.001(a)(6). Conversely, if Defendants cease funding non-compliant grantees, it is substantially likely the clinics would act in a way that reduces the odds of Plaintiff's alleged future injury.[3] And it is well understood that in Texas, minors must have parental consent for birth control unless they go to a Title X clinic.[4] Because Plaintiff's injury

---

[3] Title X sub-recipients in Region VI — which includes Texas — depend on Defendants' grants for roughly fifteen percent of their total revenue. *See* HHS Office of Population Affairs, 2021 Title X Family Planning Annual Report 58, Ex. 32.

[4] *See, e.g.*, Texas Department of Health and Human Services, *Responsibilities for Treatment of Minors within the Texas Family Planning Program and Healthy Texas Women Program* at 1 ("In accordance with the Texas Family Code, Healthy Texas Women (HTW) and Family Planning Program (FPP) services must be delivered in a manner

in fact is fairly traceable to Defendants' actions and likely to be redressed by a favorable decision of this Court, Plaintiff has standing.[5]

### B. The Statute of Limitations Does Not Bar Plaintiff's Claims

Defendants argue 28 U.S.C. § 2401(a) bars Plaintiff's claims. ECF No. 53 at 16. Under Section 2401(a), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). "Section 2401(a) generally 'applies to all civil actions whether legal, equitable, or mixed.'" *Felter v. Kempthorne*, 473 F.3d 1255, 1259 (D.C. Cir. 2007) (quoting *Kendall v. Army Bd. for Corr. of Military Records*, 996 F.2d 362, 365 (D.C. Cir. 1993)). "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued." *In re Swift*, 129 F.3d 792, 795 (5th Cir. 1997); *see also Helton v. Clements*, 832 F.2d 332, 334–35 (5th Cir. 1987) ("[A] cause of action accrues the moment the plaintiff knows or has reason to know of the injury that is the basis of his complaint.").

Defendants insist Plaintiff "must show some direct, final agency action involving the particular plaintiff within six years of filing suit" to sustain this suit. ECF No. 53 at 17 (quoting *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997)). Generally, "on a facial challenge to a regulation, the limitations period begins to run when the

---

that complies with parental consent requirements for minors."); *Pregnant and Parenting Minors and Health Care*, TEXASLAWHELP (June 24, 2022) ("If you are a minor in Texas, you must have parental consent for birth control, unless you go to a Title X clinic. Title X clinics are available to any person of any age, but they are the only clinics in Texas where minors can get birth control without permission from their parents.").

[5] The Court has discretion to override that standing for prudential reasons — *e.g.*, the rules against litigating: (1) "generalized grievances"; (2) the "rights of a third party"; or (3) outside the "zone of interest." *See, e.g., Bennett v. Spear*, 520 U.S. 154, 162–66 (1997); *Allen*, 468 U.S. at 751; *Singleton v. Wulff*, 428 U.S. 106, 114 (1976). But this case does not implicate those categories. The Court therefore declines to invoke prudential reasons to void Plaintiff's standing on his claims. *See Cohens v. Virginia*, 6 Wheat. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.").

agency publishes the regulation in the Federal Register." *Dunn-McCampbell Royalty Int.*, 112 F.3d at 1287. But Plaintiff does not bring a facial challenge to an agency rule. ECF No. 51 at 9. Plaintiff only asks for a declaration of his rights under 28 U.S.C. § 2201, along with an injunction to ensure those rights are observed. *Id.*

Because Plaintiff only seeks prospective relief against the continued enforcement of unlawful statutes, rules, or policies, Section 2401(a) is inapplicable to his claims. *See, e.g., Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968). "When, as here, the challenged action is ongoing, the cause of action continues to accrue along with the allegedly unconstitutional conduct that gives rise to the plaintiff's injury and cannot be insulated by a statute of limitations." *Kelley v. Azar*, No. 4:20-CV-283-O, 2021 WL 4025804, at *8 (N.D. Tex. Feb. 25, 2021); *see also, e.g., McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 867 (5th Cir. 1993). In other words, Plaintiff's claims accrue continually as Defendants persist in enforcing unlawful statutes or agency rules in a manner that affects Plaintiff. *See, e.g., Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019) ("When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period commences) with each new injury."); *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997); *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989).[6]

---

[6] Staleness can bar claims in some cases. But "[w]here the challenged violation is a continuing one, the staleness concern disappears." *McGregor*, 3 F.3d at 867 (quoting *Havens Realty*, 455 U.S. at 380). There is no staleness concern in this litigation. Although Defendants correctly note that their administration of Title X is "pursuant to decades-old laws," Plaintiff's claims are not time-barred merely because his daughters were born in the wrong decade. ECF No. 53 at 18. Unlike *McGregor*, where there was only a "single violation followed by continuing consequences," Plaintiff alleges "an *ongoing* violation of his constitutional and statutory rights." 3 F.3d at 867; *see also* ECF No. 51 at 7.

23-10159.743

### C. The Title X Statute Does Not Preempt Section 151.001(a)(6)

Federal law preempts state law when: "(1) Congress expressly preempts state law; (2) [c]ongressional intent to preempt may be inferred from the existence of a pervasive federal regulatory scheme; or (3) state law conflicts with federal law or its purposes." *Frank v. Delta Airlines, Inc.*, 314 F.3d 195, 197 (5th Cir. 2002). These three forms of preemption are commonly known as: (1) express preemption; (2) field preemption; and (3) conflict preemption. "Pre-emption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.'" *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317 (1981) (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963)). Courts presume "against pre-emption in areas of traditional state regulation such as family law." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151 (2001).

Preemptive effect is "given only to those federal standards and policies that are set forth in, or necessarily follow from, the statutory text that was produced through the constitutionally required bicameral and presentment procedures." *Wyeth v. Levine*, 555 U.S. 555, 586 (2009) (Thomas, J., concurring). "[U]nenacted approvals, beliefs, and desires are not laws. Without a text that can, in light of those statements, plausibly be interpreted as *prescribing* federal pre-emption it is impossible" to find that state law is displaced. *P.R. Dep't of Consumer Affs. v. Isla Petrol. Corp.*, 485 U.S. 495, 501 (1988); *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) ("The question . . . is not what Congress 'would have wanted' but what Congress enacted . . . ."). This is because "a sweeping approach to pre-emption leads to the illegitimate — and thus, unconstitutional — invalidation of state laws." *Wyeth*, 555 U.S. at 604 (Thomas, J., concurring).

23-10159.744

The relevant part of Title X reads:

> The Secretary is authorized to make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents). To the extent practical, entities which receive grants or contracts under this subsection shall encourage family participation in projects assisted under this subsection.

42. U.S.C. § 300(a). The issue in this case is not whether 42 U.S.C. § 300(a) can or should be interpreted to independently require Title X participants to obtain parental consent before dispensing birth control or prescription contraception to minors. *See generally New York v. Heckler*, 719 F.2d 1191 (2d Cir. 1983) (holding Section 300(a) does not require Title X participants to obtain parental consent); *Planned Parenthood Fed'n of Am., Inc. v. Heckler*, 712 F.2d 650 (D.C. Cir. 1983) (same). Rather, the issue is whether Section 300(a) preempts a state-law parental-consent requirement.

    1.  Neither express preemption nor field preemption apply here.

Section 300(a)'s text does not overcome the presumption against preemption. Section 300(a) contains no express-preemption clause. The absence of such a provision is "powerful evidence" that Title X does not preempt state parental-consent laws. *Wyeth*, 555 U.S. at 575. Likewise, the scheme of the federal regulation is not "so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it," thereby creating field preemption. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

    2.  Conflict preemption does not apply here.

Conflict preemption exists when "compliance with both state and federal law is impossible" or when a "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Federal law prevails in either

23-10159.745

scenario. In assessing either scenario, however, courts "are reluctant to infer pre-emption." *Building & Construction Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 224 (1993).

"Evidence of pre-emptive purpose is sought in the text and structure of the statute at issue." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). A court should not evaluate conflict preemption "in a vacuum," without affording "meaning to an enacted statutory text." *Isla Petrol.*, 485 U.S. at 501; CALEB NELSON, STATUTORY INTERPRETATION 865 (2011) ("At a minimum, *Isla Petroleum* denies that questions about the preemptive effect of a federal statute are *automatically* within the statute's domain, so that courts can fairly disregard *any* aspect of state law that they imagine members of the enacting Congress would have wanted to displace."). Text should be "interpreted in its statutory and historical context and with appreciation for its importance to the [statute] as a whole." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 471 (2001). "[C]ontext always includes evident purpose." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 63 (2012). And "evident purpose always includes effectiveness." *Id.*

Defendants argue Title X "plainly leaves no room for states to impose parental consent requirements." ECF No. 53 at 27. Title X grantees must only "encourage family participation" in decision-making "to the extent practical." 42 U.S.C. § 300(a); 42 C.F.R. § 59.10(b). Accordingly, Defendants argue, "[r]equiring parental consent would render the 'to the extent practical' language meaningless and would contradict the plain meaning of the words 'encourage' and 'participation.'" ECF No. 53 at 27; *see also County of St. Charles v. Mo. Fam. Health Council*, 107 F.3d 682, 684–85 (8th Cir. 1997); *Jane Does 1 through 4 v. State of Utah Dep't of Health*, 776 F.2d 253, 255–56 (10th Cir. 1985); *Heckler*, 712 F.2d at 664 n.57; *Planned Parenthood Ass'n of Utah v. Matheson*,

23-10159.746

582 F. Supp. 1001, 1006 (D. Utah 1983); *Doe v. Pickett*, 480 F. Supp. 1218, 1220 (S.D. W.Va. 1979).

Plaintiff argues Section 300(a)'s requirement to "encourage family participation" only "to the extent practical" establishes a federally mandated minimum — a floor — for parental involvement. ECF No. 51 at 20. Plaintiff does not argue Section 300(a) imposes parental-consent or parental-notification requirements.[7] He only argues "there is nothing in federal law that purports to *prohibit* a Title X entity from obtaining parental consent." *Id.* Therefore, there cannot be a "conflict" between the requirements of Section 300(a) and Section 151.001(a)(6). *See id.* at 20, 21 ("There is *absolutely nothing* in the text of 42 U.S.C. § 300(a) that purports to preempt or override state or federal laws that require more extensive parental involvement, and there is nothing in 42 U.S.C. § 300(a) that purports to exempt Title X projects from those laws."). Moreover, Plaintiff argues Title X does not set out in clear and ambiguous language "that participating States are forbidden to enforce their parental-involvement laws against Title X projects." *Id.* at 22.

Just as Section 300(a) does not preempt Section 151.001(a)(6) by express or field preemption, Section 300(a) does not preempt Section 151.001(a)(6) by conflict preemption. Section 151.001(a)(6) does not make it impossible to comply "with both state and federal law." *ARC Am. Corp.*, 490 U.S. at 100 (quoting *Hines*, 312 U.S. at 67). To the contrary, the Title X grantee shall, "[t]o the extent practical, . . . encourage family participation" in relevant decision-making, as required by federal law. 42 U.S.C. § 300(a). And under Texas law, the grantee must obtain parental consent. It is therefore *not* impossible to comply with both federal and Texas law: the grantee must encourage (under federal law) family participation and obtain (under Texas law) parental consent. Obtaining parental consent does not prohibit the grantee from encouraging

---

[7] Plaintiff, however, "acknowledges that it is *possible* to construe 42 U.S.C. § 300(a) that way." ECF No. 51 at 20.

family participation.[8] *See, e.g.*, *Wyeth*, 555 U.S. at 568–71 (finding it possible to comply with FDA's warning-label requirements and strong warning-label requirements implemented by state judgment).

Likewise, Section 151.001(a)(6) does not stand as an obstacle to the accomplishment of Section 300(a)'s aims. Section 151.001(a)(6) is not "firmly rooted in policies very much related to, and to a large extent directly contrary to" Section 300(a). *Felder v. Casey*, 487 U.S. 131, 145 (1988). A law *not* "firmly rooted in policies very much related to, and to a large extent directly contrary to" Section 300(a)'s aims would *discourage* or *prohibit* parental involvement. The Texas law does not discourage or prohibit parental involvement. The Texas law instead requires parental involvement — which is perfectly consistent with encouraging parental involvement.

Although other courts have held Title X "preempts" state-imposed parental-notification and consent requirements, the Court finds those authorities unpersuasive. *See, e.g.*, *Milner v. Dep't of Navy*, 562 U.S. 562, 576 (2011) ("[W]e have no warrant to ignore clear statutory language on the ground that other courts have done so."). None of those authorities acknowledge the presumption against preemption.[9] None explain how Section 300(a) might preempt Section 151.001(a)(6). And none consider that the Title X statute only establishes a floor (rather

---

[8] It is also for this reason Defendant's reliance on the Fifth Circuit's decision in *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 327 (5th Cir. 2005) is unavailing. *See* ECF No. 53 at 28. Section 151.001(a)(6) cannot be read to impose inconsistent eligibility requirements on Title X because it is a generally applicable law and predates Title X's amendment to include "services for adolescents." *See* S.B. No. 168, 63rd Leg. R.S., 1973 Tex. Gen. Laws 1411; Pub. L. No. 95-613, § 1(a)(1), 92 Stat. 3093 (1978). But even if Section 151.006(a)(6) were construed to impose eligibility requirements on the Title X program, *Sanchez* states: "The mere fact that a state program imposes an additional 'modest impediment' to eligibility for federal funds does not provide a sufficient basis for preemption." 403 F.3d at 336–37. Furthermore, *Sanchez* requires the Court to "choose the interpretation of [Section 151.001(a)(6)] that has a chance of avoiding federal preemption." *Id.* at 342. "[S]uch a construction is reasonable and readily apparent" because Section 151.001(a)(6) can be read as simply establishing parental involvement for the Title X statute, which encourages the same. *Id.* at 41.

[9] *See Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 907 (2000) (Stevens, J., dissenting) (The presumption "serves as a limiting principle that prevents federal judges from running amok with our potentially boundless (and perhaps inadequately considered) doctrine of implied conflict pre-emption based on frustration of purposes.").

23-10159.748

than a ceiling) for parental involvement. These non-precedential opinions only ruminate on Congress's "purposes" and "intentions," citing committee reports along the way.[10] They do not rely on actual law of any sort. In any case, "[t]here is no text here . . . to which expressions of pre-emptive intent in legislative history might attach." *Isla Petrol.*, 485 U.S. at 501. And reliance on Title XX is similarly unpersuasive. Title XX — unlike Title X — contains an explicit and federally mandated parental-consent requirement. But because Plaintiff does not contend Title X imposes such a requirement, the absence of such a requirement does not cut against Plaintiff's argument that Title X is only a floor, rather than a ceiling.

"Only the written word is the law." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1737 (2020); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018) ("[L]egislative history is not law. 'It is the business of Congress to sum up its own debates in its legislation,' and once it enacts a statute, '[w]e do not inquire what the legislature meant; we ask only what the statute means.'" (quoting *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 396 (1951) (Jackson, J., concurring)) (second alteration in original)); *Magwood v. Patterson*, 561 U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent."). None of these cases

---

[10] These cases largely descend from *Planned Parenthood Federation of America, Inc. v. Heckler*. 712 F.2d 650 (D.C. Cir. 1983). In *Heckler*, the D.C. Circuit heavily relied on the 1977 Senate Committee Report accompanying Title X reauthorization. *See id.* at 660; S. Rep. No. 102, 95th Cong., 1st Sess. 20–26 (1977). The Senate Report only compares levels of patient confidentiality at standalone "family planning clinics" versus "comprehensive health care programs." *See* S. Rep. No. 102, 95th Cong., 1st Sess. 26. By contrast, the 1975 Senate Report stated, "the Committee believes that unmarried teenagers, where feasible, should be encouraged to involve their family in their decision about use of contraceptives." S. Rep. No. 29, 94th Cong., 1st Sess. 55 (1975); *see also* H.R. Rep. No. 158, 97th Cong., 1st Sess. 1981). And "family encouragement" provisions were added throughout the omnibus bill to other programs related to adolescent sexual health. *See, e.g.*, Pub. L. No. 97-35, § 955(a)(1) (1981). Accordingly, even if the Court were to rely on legislative history, the Court could not conclude that a state law requiring parental involvement would stand as an obstacle to the accomplishment of Section 300(a)'s aims. *Cf. Neese v. Becerra*, No. 2:22-CV-163-Z, 2022 WL 16902425, at *10 (N.D. Tex. Nov. 11, 2022) ("[W]hatever approach," cases like *Heckler* and its progeny "may have used," we may rely on them as "an integral part of our jurisprudence." (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 287 n.17 (1983)) (alteration in original)); *see also* NELSON, STATUTORY INTERPRETATION 860 (noting the modern Supreme Court has moved away from the type of "constitutional" preemption analysis rooted in the Supremacy Clause and employed in cases like *Heckler*, now favoring "statutory" preemption analysis, which hinges on a court's willingness to read a directive about preemption into the relevant statute).

23-10159.749

present an argument based on the text of Section 300(a). Therefore, the Court will not find "federal

pre-emption *in vacuo*, without a constitutional text or a federal statute to assert it." *Isla Petrol.*,

485 U.S. at 503.

And setting aside preemption arguments, conditions on the receipt of federal funds must

be spelled out in clear and unambiguous language. *See Will v. Mich. Dep't of Police*, 491 U.S. 58,

65 (1989); *South Dakota. v. Dole*, 483 U.S. 203, 207 (1987); *Pennhurst State Sch. and Hosp. v.

Halderman*, 451 U.S. 1, 17 (1981) ("There can, of course, be no knowing acceptance if a State is

unaware of the conditions or is unable to ascertain what is expected of it."). "Because Title X is

an exercise of the federal spending power, there must be a clear and unambiguous statement that

participating States are forbidden to enforce their parental-involvement laws against Title X

projects before the Texas laws can be deemed 'preempted' by the Title X statute." ECF No. 51

at 22. Section 300(a) provides no such statement.

Applying the presumption against preemption, and because "our federal system in general,

and the Supremacy Clause in particular, accords pre-emptive effect to only those policies that are

actually authorized by and effectuated through the statutory text," the Court holds Section 300(a)

does not preempt Section 151.001(a)(6). *Wyeth*, 555. U.S. at 602 (Thomas, J., concurring).

### D. Defendants' Administration of the Title X Program Violates the Constitutional Right of Parents to Direct the Upbringing of Their Children

The Due Process Clause of the Fourteenth Amendment provides heightened protection

against government interference with certain fundamental rights and liberty interests. *Reno v.

Flores*, 507 U.S. 292, 301–02 (1993). If a due-process challenge implicates a fundamental right or

liberty interest, the reviewing court must apply strict scrutiny. *Id.* Under strict scrutiny, States are

prohibited "from infringing fundamental liberty interests, unless the infringement is narrowly

tailored to serve a compelling state interest." *Lawrence v. Texas*, 539 U.S. 558, 593 (2003) (Scalia,

23-10159.750

J., dissenting). If a due-process challenge does not implicate a fundamental right or liberty interest, the law is reviewed under the rational-basis standard. *See, e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (holding only fundamental rights "deeply rooted in this Nation's history and tradition" qualify for anything other than rational-basis scrutiny (quoting *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977) (plurality op.)).

The Due Process Clause of the Fourteenth Amendment "has been held to guarantee some rights that are not mentioned in the Constitution, but any such right must be 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022) (quoting *Glucksberg*, 521 U.S. at 721). The right "to direct the education and upbringing of one's children" is one such right. *Glucksberg*, 521 U.S. at 720; *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925); *compare* Emily Buss, *"Parental" Rights*, 88 VA. L. REV. 635, 655 (2002) ("Among the contemporary claims for protected liberty interests, none has received more widespread and consistent endorsement than a parent's 'fundamental right' to control the upbringing of her children.") *with* MELISSA MOSCHELLA, TO WHOM DO CHILDREN BELONG? PARENTAL RIGHTS, CIVIC EDUCATION AND CHILDREN'S AUTONOMY 180 (2016) ("Strong protections for parental rights are a central component of any just political order whose laws and institutions aim to foster the well-being of its members in both present and future generations.").

"This natural parental right has been characterized as 'essential,' 'a basic civil right of man,' and 'far more precious than property rights.'" *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1976)); *May v. Anderson*, 345 U.S. 528, 533 (1953) (same). Our law did not create this right: it "merely recognizes and respects a bond that already exists by virtue of our human nature." *In re A.M.*, 630 S.W.3d 25, 25 (Tex. 2019)

23-10159.751

(Blacklock, J., concurring in denial of petition for review) (orig. proceeding) (mem. op.). "Like the inalienable rights of which the Declaration of Independence speaks, . . . . [w]e were endowed with it by our Creator." *Id.*; *see also* THE DECLARATION OF INDEPENDENCE ¶ 2 (U.S. 1776); WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND, BOOK I OF THE RIGHTS OF PERSONS 288 (Oxford 1st ed. 2016); THOMAS AQUINAS, SUMMA THEOLOGIAE II-II, Q.10, art. 12; Pope Pius XI, *Divini Illius Magistri* 32 (Dec. 31, 1929); ARISTOTLE, ETHICS Bk VIII Ch. XII. And our nation's jurisprudence and legal traditions acknowledge the same. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.); *see also Bellotti v. Baird*, 443 U.S. 622, 639 (1979) ("[D]eeply rooted in our Nation's history and tradition, is the belief that the parental role implies a substantial measure of authority over one's children."); *Parham v. J.R.*, 442 U.S. 584, 602 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children."); *Yoder*, 406 U.S. at 232 ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.").

Because a minor generally lacks legal authority to consent to their own care, our common law recognizes a parental right to consent to the medical treatment of one's minor child. *See, e.g., Wallis v. Spencer*, 202 F.3d 1126, 1141–42 (9th Cir. 2000); *Bonner v. Moran*, 126 F.2d 121, 122 (D.C. Cir. 1941) (stating "the general rule is that the consent of the parent is necessary for an operation on a child"); *Zoski v. Gaines*, 271 Mich. 1, 9 (Mich. 1935) (same). Texas, where Plaintiff resides, has long recognized this right. *See, e.g., Moss v. Rishworth*, 222 S.W. 225, 226–27 (Tex. [Comm'n Ap.] 1920, judgm't approved) ("The authorities are unanimous in holding that a surgeon is liable for operating upon a patient, unless he obtains the consent of the patient, if competent to

23-10159.752

give such consent, or, if not, of some one who, under the circumstances, would be legally authorized to give the requisite consent. . . . The law wisely reposes in the parent the care and custody of the minor child . . . .").

Similar rationales underly statutory rape laws, which have their origins in the Statutes of Westminster enacted in the 13th century.[11] *See* WILLIAM BLACKSTONE, COMMENTARIES OF THE LAW OF ENGLAND, BOOK IV OF PUBLIC WRONGS 140 (Oxford 1st ed. 2016) ("[C]onsent or non-consent is immaterial, as by reason of her tender years she is incapable of judgment and discretion."). Marriage laws were enacted for similar reasons. *Id.* at 292 ("The consent or concurrence of the parent to the marriage of his child under age, was also *directed* by our antient law to be obtained: but now it is absolutely *necessary*; for without it the contract is void.").

Although parental rights are not "beyond limitation," such rights do not completely disappear with respect to a minor child's sexual activity. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *see also Planned Parenthood of Se Pa. v. Casey*, 505 U.S. 833 (1992), *overruled on other grounds by Dobbs*, 142 S. Ct. 2228; *Hodgson v. Minnesota*, 853 F.2d 1452, 1464 (8th Cir. 1988 (en banc), *aff'd*, 497 U.S. 417 (1990) ("The Supreme Court has recognized the significant state interest in providing an opportunity for parents to supply essential medical and other information to a physician."). "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince*, 321 U.S. at 166; *see also Pierce*, 268 U.S. at 535 ("The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.").

---

[11] "This statute was part of the common law brought to the United States." *Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464, 494 n.9 (1981) (Brennan, J., dissenting).

1.  Parental rights in the care, custody, and control of their children include the right to direct a child's medical care — which includes the right to consent to contraception.

"The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." *Parham*, 442 U.S. at 602. "The unique role in our society of the family, the institution by which 'we inculcate and pass down many of our most cherished values, moral and cultural,' requires that constitutional principles be applied with sensitivity and flexibility to the special needs of parents and children." *Bellotti*, 443 U.S. at 634 (quoting *Moore*, 431 U.S. at 503–04 (plurality op.)). The rights of children cannot be equated with those of adults for at least three reasons: (1) "the peculiar vulnerability of children"; (2) "their inability to make critical decisions in an informed, mature manner"; and (3) "the importance of the parental role in child rearing." *Id.* For these reasons, "parental notice and consent are qualifications that typically may be imposed by the State on a minor's right to make important decisions." *Id.* at 640.

Courts have neither abandoned nor fundamentally altered the common-law rule that minors lack the capacity to wholly govern their affairs. Alterations to the common law generally occur for other, unrelated reasons. As one scholar notes:

> a close examination of the line of cases which govern minors' rights to consent to treatment, contraception, abortion, and sterilization, reveals that the changes in these rights have been driven not by a sense that minors are mature enough to make such decisions, but rather, by a belief that certain forms of treatment are so important that the law should facilitate access to them.

Michelle Oberman, *Turning Girls into Women: Re-Evaluating Modern Statutory Rape Law*, 85 J. CRIM. L. & CRIMINOLOGY 15, 49 (1994). For example, although all jurisdictions currently permit minors to consent to care for sexually transmitted diseases, "commentators and supporters interpret these statutes as an extension of the emergency treatment exception to the common law, rather than as a reflection of the minors' maturity and capacity to consent to their own care." *Id.* at 48.

23-10159.754

Cases considering minor's ability to consent to such care contain no "substantive discussion of a minor's maturity or capacity to contend with the consequences of sexual relationships." *Id.* at 50.

Although the Fifth Circuit has not addressed the precise intersection of parental rights and a minor's ability to access contraceptives, some courts have held parents lack a right to consent to the distribution of contraceptives to their minor children.[12] *See, e.g., Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256 (3d Cir. 2007); *Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980). The analysis employed in such cases largely turns on the voluntary nature of access to contraception. *See, e.g., Doe*, 615 F.2d at 1168 ("The State . . . has imposed no compulsory requirements or prohibitions which affect rights of the plaintiffs. It has merely established a voluntary birth control clinic.").

In *Anspach v. City of Philadelphia, Department of Public Health*, a minor visited a health center operated by the City of Philadelphia. 503 F.3d at 259. The minor "had recently engaged in sexual intercourse and feared she may be pregnant." *Id.* The minor provided her name and date of birth to the health center, thereby disclosing she was sixteen years old. *Id.* After seeing a social worker and a registered nurse, the health center provided the minor four tablets of "Nordette," a drug approved by the United States Food and Drug Administration as emergency contraception following sexual intercourse. *Id.* & n.3. The minor was to take two doses of Nordette: one in the presence of a nurse at the health center and one at home. *Id.* at 260. After taking a second dose of Nordette at home, as instructed by the health center, the minor "experienced severe stomach pains

---

[12] Relying on the "right of privacy," the Supreme Court has held the State may not impose a blanket prohibition on the distribution of contraceptives to minors. *See Carey v. Pop. Servs., Intern.*, 431 U.S. 678, 694 (1977). "That the constitutionally protected right of privacy extends to an individual's liberty to make choices regarding contraception does not, however, automatically invalidate every state regulation in this area." *Id.* at 685–86. The correctness of *Carey*'s holding on blanket bans of contraceptives is also in doubt insofar as it relies on *Eisenstadt v. Baird*, 405 U.S. 438 (1972), and *Griswold v. Connecticut*, 381 U.S. 479 (1965). *See Dobbs*, 142 S. Ct. at 2301 (Thomas, J., concurring) (urging the Court to reconsider *Griswold* because it is "demonstrably erroneous").

and began vomiting." *Id.* The minor's father found her laying on the floor of her room. *Id.* After

learning his daughter took emergency contraception, the father called their family physician, the

poison control center, and took the minor to an emergency room. *Id.* The minor's parents later

sued, alleging a substantive due-process violation based on state interference with family relations.

*Id.* at 261.

The Third Circuit rejected the parents' claim. The court reasoned courts have recognized a

parental liberty interest only where the behavior of a state actor compels interference with the

parent-child relationship. *Id.* Such cases "involve coercion." *Id.* at 262. Because "no one

prevented" the minor "from calling her parents before she took the pills she had requested," the

health center did not "coerce" the minor child to take the pills. *See id.* at 264–65. Accordingly, the

court determined "[t]he type of 'interference' that the Anspachs assert would impose a

*constitutional* obligation on state actors to contact parents of a minor or to encourage minors to

contact their parents." *Id.* at 262. "Either requirement would undermine the minor's right to privacy

and exceed the scope of the familial liberty interest protected under the Constitution." *Id.*

In *Doe v. Irwin*, a class of parents of minor children sued a publicly funded family planning

center. *See generally* 615 F.2d 1162. The parents claimed that the distribution of contraceptives to

minors without notice to the parents violated the parents' constitutional rights. *Id.* at 1165.

Although the center did not seek out or encourage minors to attend the center for contraceptive

services, the center permitted minors to visit "either with or without parental consent." *Id.* at 1163.

The family planning center's services included prescriptions of contraceptives that were

distributed to minors "both with and without parental knowledge or consent." *Id.* Despite not

explicitly encouraging minors to attend the family planning center for contraceptive services, the

center featured weekly "rap sessions" for minors. *Id.* These rap sessions discussed sexual activity

and methods of birth control, among other things. *Id.* The center would not serve a minor unless the child had first attended at least one weekly rap session. *Id.* at 1164. Upon attending a rap session and scheduling a regular visit with the family planning center, the center would prescribe female minors up to a three-month supply of birth control pills. *Id.*

The Sixth Circuit noted "[t]he Supreme Court has not squarely decided whether a state may impose a requirement of parental notice, as opposed to parental consent, as a condition of a minor's receiving an abortion." *Id.* at 1167 (citing *Bellotti*, 443 U.S. at 654 n.1 (Stevens, J., concurring)). "One fundamental difference," between the case before the Sixth Circuit and cases in which the state had interfered with the rights of parents or the rights of children was that "[i]n each of the Supreme Court cases the state was either requiring or prohibiting some activity." *Id.* at 1168. Because the state "imposed no compulsory requirements or prohibitions which affect rights of the plaintiffs," the court held "[t]he plaintiffs remain free to exercise their traditional care, custody and control over their unemancipated children." *Id.* Accordingly, the Sixth Circuit found "no deprivation of the liberty interest of parents in the practice of not notifying them of their children's voluntary decisions to participate in the activities of the [family planning center]." *Id.*

Unlike *Anspach* and *Irwin*, the United States Supreme Court's decision in *Troxel v. Granville* does not rely on a heavy distinction between "voluntary" and "compulsory" programs. *See generally* 530 U.S. 57 (plurality op.). In *Troxel*, a plurality of the United States Supreme Court addressed the constitutionality of a Washington state statute that permitted "any person" to petition a court for visitation rights "at any time," when such visitation would "serve the best interest of the child." *Id.* at 60 (plurality op.). The Washington Superior Court had granted visitation rights to the grandparents of two minor children in a manner contrary to the wishes of the children's mother. *Id.* at 61 (plurality op.). The Supreme Court held the statute unconstitutional as applied because it

23-10159.757

violated the mother's substantive due-process rights. *Id.* at 72 (plurality op.). The Supreme Court recognized parents have a liberty interest "in the care, custody, and control of their children." *Id.* at 65 (plurality op.). The essence of that liberty interest is the right of parents to "make decisions" concerning the reading of their children. *Id.* at 66 (plurality op.). Because the state court employed a "decisional framework" that "directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child," the Supreme Court determined "the [state] court's presumption failed to provide any protection for [the mother's] fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Id.* at 69–70 (plurality op.). In short, the state court substituted its judgment for that of the mother, thereby violating the mother's fundamental constitutional right. *See id.* at 72–73 (plurality op.).

The *Troxel* plurality was concerned that the statute authorized state courts to "disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests." *Id.* at 67 (plurality op.). The plurality did not fixate on the "mandatory" or "prohibitory" nature of the statute. Instead, they focused on the parent's fundamental right to make decisions for her child. *See id.* at 69 (plurality op.) ("The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughter's best interests."); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 276, 289 (5th Cir. 2001) ("The Court [in *Troxel*] found the statute offensive to the parental rights of the mother in that it unconstitutionally interfered with the mother's right to make decisions concerning the upbringing of her child.").

The Supreme Court's emphasis on parental choice and consent "suggests that the right is one of preemption; rather than an absolute right to a certain family relationship, family members

23-10159.758

have the right, when confronted with the state's attempt to make choices for them, to choose for themselves." *Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 8 (1st Cir. 1986). "Choices about . . . the upbringing of children are among associational rights this Court has ranked as 'of basic importance in our society,' rights sheltered by the Fourteenth Amendment against the State's unwarranted *usurpation, disregard, or disrespect*." *M.L.B.*, 519 U.S. at 116 (quoting *Boddie*, 401 U.S. at 376) (emphasis added).[13] "[I]n areas which form part of the proper competency of the family . . . the state has a general obligation to assist, but to do so in a way that respects rather than usurps or contradicts the authority of parents." MELISSA MOSCHELLA, TO WHOM DO CHILDREN BELONG? PARENTAL RIGHTS, CIVIC EDUCATION AND CHILDREN'S AUTONOMY 67 (2016).

There are many ways in which the government can infringe on parental rights without the explicit coercion of another. For example, a coercion requirement would presumably condone chemical castration of children in the absence of parental consent — so long as the treatment is "voluntary."[14] A coercion requirement could also prevent parents from becoming aware of what books their children are reading in school and deny them the right to exempt their children from an offensive reading curriculum. *See generally Mozert v. Hawkins Cnty. Pub. Schs.* 827 F.2d 1058 (6th Cir. 1987). These are just a few examples that demonstrate coercion is not required before

---

[13] Then-Governor Ronald Reagan took this view of parental rights when he vetoed legislation granting teenagers access to contraception: "[This bill] represented the unwarranted intrusion into the prerogatives of parents . . . and would endanger the traditional vital role of the family structure in our society . . . ." Oberman, *Turning Girls into Women: Re-Evaluating Modern Statutory Rape Law*, 85 J. CRIM. L. & CRIMINOLOGY at 50 n.196 (quoting Neil Bodine, *Minors & Contraceptives: A Constitutional Issue*, 3 ECOLOGY L.Q. 859, 860 (1973)).

[14] At least one court has held parents possess a constitutional right to chemically castrate their children. *See, e.g., Eknes-Tucker v. Marshall*, No. 2:22-CV-184-LCB, 2022 WL 1521889, at *8 (M.D. Ala. May 13, 2022). It is difficult to reconcile how parental rights could include the right to give children puberty blockers, but not the right to consent to the distribution of contraception. To the extent that substantive due process might plausibly protect both, they are easily distinguishable. The right to give children puberty blockers is not "deeply rooted," whereas there is virtually no support for the proposition that federally funded clinics can give children birth control without parental consent before the 1970s.

23-10159.759

one violates parental rights. A coercion requirement would lead to these (and other) absurd results.[15]

Contraception is a serious matter — both medically and for parents' rights to control the upbringing and education of their children. Several popular methods of birth control carry serious side effects.[16] The courts that have denied parental consent rights apparently presume contraceptive drugs are "no big deal." In *Anspach*, for instance, the Third Circuit relied on a case from the Supreme Judicial Court of Massachusetts where that court distinguished abortion-related parental-consent requirements from contraception, noting "abortion involves a medical procedure, while obtaining a condom does not." 503 F.3d at 268 (citing *Curtis v. Sch. Comm. of Falmouth*, 652 N.E.2d 580, 586 n.9 (Mass. 1995)).

Parental consent does not depend on the particular form of contraception[17] or the environment in which the contraception is distributed. *See Mann v. City of San Diego*, 907 F.3d 1154, 1162 (9th Cir. 2018) ("A parent's due process right to notice and consent is not dependent on the particular procedures involved in the examination, or the environment in which the examinations occur, or whether the procedure is invasive, or whether the child demonstrably

---

[15] This case does not implicate — and parties do not address — statutes and jurisprudence relevant to bypass protocols in abortion cases. Neither 42 U.S.C. § 300(a) nor Texas Family Code § 151.001(a)(6) address emergency contraception scenarios where bypass protocols may be implicated. Furthermore, though prior Affordable Care Act litigation debated which drugs were or were not "abortifacient," both Plaintiff and Defendants appear to agree that only contraceptive medicine is at issue in the case *sub judice*. *See, e.g., Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 724 F.3d 377, 390 n.1 (3d Cir. 2013) (Jordan, J., dissenting), *rev'd and remanded sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014).

[16] *See, e.g., Are Birth Control Pills Safe?*, PLANNED PARENTHOOD, https://www.plannedparenthood.org/learn/birth-control/birth-control-pill/how-safe-is-the-birth-control-pill ("Complications are rare, but they can be serious . . . In very rare cases, they can lead to death."); *Birth Control Side Effects: Risk and Long-Term Safety of the Pill*, HEALTHLINE (Aug. 3, 2018), https://www.healthline.com/health/birth-control-side-effects ("According to the American Cancer Society, taking birth control pills may increase your risk of breast cancer or cervical cancer over time. The longer you use them, the higher the risk.").

[17] Reliance on condoms — male or female — make up only 19% of the contraceptives distributed to female family planning users in Region VI. *See* HHS Office of Population Affairs, 2021 Title X Family Planning Annual Report 35. By contrast, female sterilization, intrauterine devices, hormonal implants, and hormonal injections make up over half of all distributions. *Id.* And more than four thousand females under the age of 15 received hormonal implants or hormonal injections in 2021. *Id.* at 32.

23-10159.760

protests the examinations."). Other courts have therefore reached conclusions contrary to *Anspach* and *Curtis*. In *Alfonso v. Fernandez*, for instance, a New York court held a high school condom-distribution program violated parental rights to rear children as parents see fit. *See generally* 195 A.D.2d 46 (1993). Although the high school program was "wholly voluntary," such voluntariness did not "constitute proof that the petitioners [were] not being forced to surrender a parenting right — specifically, to influence and guide the sexual activity of their children without State interference." *See id.* at 54, 56 ("[R]egulations which authorize condom distribution without prior parental consent or opt out are *contrary to the common law* and of no effect." (emphasis added)).

Additionally, omitting parental consent gives insufficient weight to the undesirability of teenage promiscuity. *Cf. Michael M.*, 450 U.S. at 471–72 ("The statute at issue here protects women from sexual intercourse at an age when those consequences are particularly severe."). Requiring coercion ignores that minors under the age of consent — provided they are sexually active — are often victims of statutory rape. *See* TEX. PENAL CODE § 22.011(a), (c). Treating information that a minor was raped as "confidential" drastically disrespects and disregards parental rights. And the voluntary-compulsory dichotomy ignores that the use of contraception (just like abortion) violates traditional tenets of many faiths, including the Christian faith Plaintiff practices.[18]

For centuries, the common law held minors were incapable of giving consent to make important life decisions. No Supreme Court case has disposed of this deeply rooted right of parents to make important life decisions for their children. One cannot find the Third and Sixth Circuits'

---

[18] *See, e.g.*, JEROME, AGAINST JOVINIAN 19 ("Does [Onan] imagine that we approve of any sexual intercourse except for the procreation of children?"); CATECHISM OF THE CATHOLIC CHURCH 2399 ("Legitimate intentions on the part of the spouses do not justify recourse to morally unacceptable means (for example, direct sterilization or contraception)"); Pope Paul VI, *Humanae Vitae* 14 (July 25, 1968) (describing sexual intercourse which is deliberately contraceptive as "intrinsically wrong"). Of course, Christianity also teaches fornication is illicit. "Moreover, it is a grave scandal when there is corruption of the young." CATECHISM OF THE CATHOLIC CHURCH 2353.

23-10159.761

voluntary-compulsory distinction in any controlling precedent or the history of parental rights in this nation or pre-dating it. A voluntary-compulsory distinction fails to protect the precious and fundamental liberty interests of parents. Accordingly, the Court will not read such a distinction into our jurisprudence, the Fourteenth Amendment, the common law, or the whole of parental rights as bestowed by something greater. Instead, the Court holds the right of parents to consent to the use of contraceptives is "deeply rooted in this Nation's history and tradition," whether framed as "voluntary" or "compulsory." *Dobbs*, 142 S. Ct. at 2242 (quoting *Glucksberg*, 521 U.S. at 702).

2.  No countervailing interest justifies the government's disregard for Plaintiff's parental rights.

Because the Court has held the right of parents to consent to their minor children's use of contraceptives is deeply rooted in this Nation's history and tradition, the Court must next determine whether infringement of this right is narrowly tailored to advance a compelling governmental interest. *See Flores*, 507 U.S. at 302 (reaffirming due process "forbids the government to infringe certain 'fundamental' liberty interests *at all*, . . . unless the infringement is narrowly tailored to serve a compelling state interest"). The Court finds no compelling governmental interest justifies Defendants' disregard of Plaintiff's parental rights in this case.

Defendants do not attempt to identify any such interest. Defendants instead insist rational-basis review applies. *See* ECF No. 53 at 35–37.[19] In doing so, Defendants assert Title X's goal of "promot[ing] minors' reproductive health" is "not merely legitimate but 'substantial.'" *Id.* at 35. Even if so, a substantial governmental interest is not a compelling governmental interest. *Cf. Doe I*

---

[19] Defendants cite *Littlefield* in support of the proposition that a rational-basis test applies when reviewing claims for alleged violations of parental rights to direct a child's upbringing. ECF No. 53 at 35–37. However, *Littlefield* explicitly reserves this standard for parental rights "concerning public education" and "in the public school context." 268 F.3d at 291.

23-10159.762

*v. Landry*, 909 F.3d 99, 109 (5th Cir. 2018) (explaining how a "substantial governmental interest" relates to intermediate scrutiny on a First Amendment free-speech challenge).

Even if Defendants possessed a compelling governmental interest, their actions would be unnecessary to achieve that interest. In *Alfonso* — for example — the New York court agreed "the State has a compelling interest in controlling AIDS, which presents a public health concern of the highest order." 195 A.D.2d at 53. But when considering whether it would be difficult for students to acquire condoms without the high school condom-distribution program at issue, the court reasoned "[t]he answer must clearly be no." *Id.* at 58. To be sure, Defendants do not identify controlling AIDS as one of the governmental interests Title X advances. Again, Defendants do not attempt to identify any compelling governmental interest advanced by not requiring parental consent before a state entity may provide minor children contraception. The interest Defendants do advance concerns the undesirability of adolescent pregnancy and the consequences thereof, an interest this Court implicitly considered above when analyzing the need for parental involvement. *See* ECF No. 52 at 36. Accordingly, no countervailing compelling governmental interest justifies Defendants' intrusion of Plaintiff's parental rights.

CONCLUSION

Defendants' administration of the Title X program violates the constitutional right of parents to direct the upbringing of their children and Texas Family Code § 151.006(a)(6). For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion and renders summary judgment for Plaintiff on all claims. The Court **DENIES** Defendants' Cross-Motion. The Court **DENIES** all other relief not expressly stated herein. The Court **ORDERS** parties to submit competing proposed judgments **within 7 days** of the date of this Opinion and Order.

23-10159.763

**SO ORDERED**.

December 8, 2022

_____

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

23-10159.764

**TAB 4**



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

ALEXANDER R. DEANDA,                    §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §          2:20-CV-092-Z
                                        §
XAVIER BECERRA, *et al.*,               §
                                        §
        Defendants.                     §

## FINAL JUDGMENT

Judgment is rendered in favor of Plaintiff Alexander R. Deanda, and against Defendants

Xavier Becerra, in his official capacity as Secretary of Health and Human Services, Jessica

Swafford Marcella, in her official capacity as Deputy Assistant Secretary for Population Affairs,

and the United States of America, on Plaintiff's claims that Defendants are violating Plaintiff's

rights under Section 151.001(a)(6) of the Texas Family Code and the Due Process Clause of the

Fourteenth Amendment in their administration of the Title X program.

Judgment is rendered in favor of Defendants Xavier Becerra, in his official capacity as

Secretary of Health and Human Services, Jessica Swafford Marcella, in her official capacity as

Deputy Assistant Secretary for Population Affairs, and the United States of America, and against

Plaintiff on Plaintiff's claim that Defendants are violating his rights under the Religious Freedom

Restoration Act in their administration of the Title X program.

The Court awards the following relief:

1. The Court **DECLARES** that Defendants' administration of the Title X program violates Plaintiff's rights under Section 151.001(a)(6) of the Texas Family Code, as there is nothing in 42 U.S.C. § 300(a) that purports to preempt state laws requiring parental consent or notification before distributing contraceptive drugs or devices to minors.

2. The Court **DECLARES** that Defendants' administration of the Title X program violates Plaintiff's fundamental right to control and direct the upbringing of his minor children, which is protected by the Due Process Clause of the Fourteenth Amendment, as protected by the Supreme Court of the United States.

3. The Court **HOLDS UNLAWFUL** and **SETS ASIDE** the second sentence of 42 C.F.R. § 59.10(b) as "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," and "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A)–(C).

All other relief not expressly granted herein is **DENIED**.

**SO ORDERED**.

December _____, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

23-10159.794

**TAB 5**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

ALEXANDER R. DEANDA,                §
                                    §
    Plaintiff,                      §
                                    §
v.                                  §        2:20-CV-092-Z
                                    §
XAVIER BECERRA, *et al.*,           §
                                    §
    Defendants.                     §

## ORDER

Before the Court is Defendants' Opposed Motion to Strike Notice of Plaintiff's Proposed Final Judgment ("Motion") (ECF No. 66), filed on December 20, 2022. Having considered the Motion, briefing, and relevant law, the Court **DENIES** the Motion.

### BACKGROUND

The Court's December 8 Order granted summary judgment to Plaintiff on all claims. *See* ECF No. 63. In the same Order, the Court ordered parties to submit competing proposed judgments. *Id.* at 35. After considering those proposals, the Court issued final judgment on December 20, 2022. ECF No. 67. In that judgment, the Court vacated the second sentence of 42 C.F.R. § 59.10(b) under Section 706(2) of the Administrative Procedure Act ("APA"). *Id.* at 2. Minutes before the District Clerk entered the Court's judgment, Defendants filed the instant Motion. Defendants argue the APA remedy is inappropriate for four reasons: (1) the Court's December 8 Order denied "all other relief not expressly granted herein"; (2) Plaintiff waived any claim for APA remedies by failing to litigate an APA claim; (3) Federal Rule of Civil Procedure 54(c) does not support Plaintiff's claim for APA remedies; and (4) the request for APA

relief would unduly prejudice Defendants. ECF No. 66 at 3–6. The Court notified parties it would
— if necessary — revise the final judgment based on parties' briefing on the Motion. ECF No. 68.

ANALYSIS

### A. The Federal Rules of Civil Procedure Do Not Authorize the Court to "Strike" Plaintiff's Filing

Federal Rule of Civil Procedure 12(f) provides that a district court "may strike from a
pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."
Defendants have not argued that Plaintiff's proposed final judgment falls within any of these
categories. Plaintiff has every right to submit a proposal for final judgment. That remains the case
even if the Court believes the proposal is unwarranted. Rule 12(f) "cannot be used to deprive
[Plaintiff] of the opportunity to present his requests and arguments" to the Court. ECF No. 70
at 10. This is reason enough to deny the Motion. But the Court will explain why it need not revise
the final judgment.

### B. The December 8 Order's "Mother Hubbard Clause" Does Not Foreclose Relief to Which Plaintiff Is Otherwise Entitled

Defendants first argue the December 8 Order precludes Plaintiff's proposed APA relief
because the Order denies "all other relief not expressly stated herein." *Id.* at 3 (citing ECF No. 63
at 35). This clause — sometimes known as a "Mother Hubbard clause" — "mean[s] only that the
relief requested *in the motion* — not all the relief requested by anyone in the case — and not
granted by the order is denied." *Farm Bureau Mut. Ins. Co. v. Rogers*, 455 S.W.3d 161, 164 (Tex.
2015) (internal marks omitted); *see also Klein v. Walker*, No. 1:14-CV-00509-RC-ZJH, 2016 WL
9242333, at *6 n.3 (E.D. Tex. Oct. 18, 2016), *report and recommendation adopted*, No. 1:14-CV-
00509-RC-ZJH, 2016 WL 7320103 (E.D. Tex. Dec. 16, 2016), *aff'd*, 708 F. App'x 158 (5th Cir.
2017) ("Because of the catch-all nature of a Mother Hubbard clause . . . Courts need[] to closely

2

analyze the trial court's order granting summary judgment in order to determine whether the order was actually intended to be final."). In *Rodgers*, for example, the Supreme Court of Texas held that a summary judgment order with a Mother Hubbard clause did not "implicitly dispose of claims not expressly mentioned in the order, including claims for attorney's fees." *Id.* at 164.

Here, the Court's use of the term "relief" concerned only the relief involved with granting or denying a motion for summary judgment — not the relief the Court might award when entering final judgment. The Court made no decisions about the appropriate *remedy* for Plaintiff or what the scope of those remedies should be. And in any case, there can be no doubt that the December 8 Order was not intended to be final because the Order directed parties to submit competing proposed judgments. ECF No. 63 at 35. Therefore, the Court's use of a Mother Hubbard clause in the December 8 Order does not foreclose appropriate remedies to which Plaintiff is entitled. *See* FED. R. CIV. P. 54(c) ("A . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.").

### C.  Plaintiff's Failure to Litigate an APA Claim Does Not Waive Appropriate Relief

Defendants argue Plaintiff raises a "new claim" by requesting vacatur of the 42 C.F.R. § 59.10(b)'s second sentence. ECF No. 66 at 3. But as Plaintiff explains, he is not asserting a "new claim." ECF No. 70 at 4. Rather, he "is merely requesting vacatur as a *remedy* for the claims on which he has already prevailed." ECF No. 70 at 4. "[A] plaintiff's failure to request appropriate relief does not prevent the award of available relief." *Laird v. Integrated Res., Inc.*, 897 F.2d 826, 832 (1990). "[E]xcept in the case of a default judgment, the Court is bound to grant whatever relief the facts show is necessary or appropriate." *Burton v. State Farm Mut. Auto. Ins. Co.*, 335 F.2d 317, 320 (5th Cir. 1964); *see also Smoot v. State Farm Mut. Auto. Ins. Co.*, 299 F.2d 525, 530 (5th Cir. 1962) ("The scope and nature of the relief depends on the facts established"); FED. R. CIV.

3

P. 54(c). "The relief must be based on what is alleged in the pleadings and justified by plaintiff's

proof, which the opposing party has had an opportunity to challenge." *Lasslett v. Tetra Tech, Inc.*,

No. DR-13-CV-072-AM-CW, 2015 WL 13805181, at *3 (W.D. Tex. Sept. 30, 2015) (quoting

WRIGHT & MILLER, 10 FED. PRAC. & PROC. CIV. § 2662 (3d ed.)).

Here, the facts show the APA relief granted in the final judgment is necessary or

appropriate. The second sentence of 42 C.F.R. § 59.10(b) states that "Title X projects may not

require consent of parents or guardians for the provision of services to minors, nor can any Title X

project staff notify a parent or guardian before or after a minor has requested and/or received

Title X family planning services." The Court explicitly considered this regulation when holding

Plaintiff's injuries "are fairly traceable to Defendants' conduct and likely to be redressed by the

requested relief." ECF No. 63 at 12 (internal marks omitted). And the Court held Defendants'

administration of the Title X program violates both Plaintiff's rights under Section 151.001(a)(6)

of the Texas Family Code and Plaintiff's fundamental right to control and direct the upbringing of

his minor children under the Fourteenth Amendment of the United States Constitution. *See* ECF

Nos. 63 at 22, 67 at 2.

Consequently, it follows necessarily that the second sentence of Section 59.10(b) is "not in

accordance with law," "contrary to constitutional right, power, privilege or immunity, and

"in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A)–(C). And "there is no doubt that an

Article III court 'may administer complete relief between the parties, even [if] this involves the

determination of legal rights which otherwise would not be within the range of its authority.'"

*Health Freedom Def. Fund, Inc. v. Biden*, No. 8:21-CV-1693-KKM-AEP, 2022 WL 1134138, at

*21 (M.D. Fla. Apr. 18, 2022) (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507

(1928)). Additionally, Plaintiff cannot be blamed for omitting a challenge to Section 59.10(b) from

his complaint. This is because the second sentence of Section 59.10(b) was not adopted until well after the deadline for amending the pleadings. *See* 86 Fed. Reg. 56,144, 56,166 (Oct. 7, 2021); ECF No. 25 at 1 (setting January 16, 2021, deadline for amendment of pleadings). Still, Defendants ask the Court to not provide complete relief to Plaintiff because they adopted an unlawful regulation that relates to the core of this litigation almost ten months after the deadline for amendment of pleadings had passed. But the Court will not shirk its obligations under Fifth Circuit precedent and the federal rules on that basis.

### D.  Plaintiff Has Proven Himself Entitled to the APA Remedy

Defendants admit Rule 54(c) provides that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." ECF No. 66 at 5. Nevertheless, Defendants argue Plaintiff is not entitled to relief for claims he "never brought, never supported with evidence, and never prevailed upon." *Id.* Rather, Plaintiff must "*prove* himself entitled" to APA remedies. *Id.* (quoting *Driggers v. Bus. Men's Assurance Co.*, 219 F.2d 292, 299 (5th Cir. 1955) (emphasis theirs)).

As the Court has explained, it is not a "new claim" to request appropriate relief for claims Plaintiff has already prevailed on. The Court's conclusion that Section 59.10(b) is unlawful is inescapable because of the holdings in the December 8 Order. The APA *requires* the Court to "set aside" unlawful agency action. 5 U.S.C. § 706(2).  Therefore, the Court disagrees that Plaintiff "has failed to show that he is entitled to such relief." ECF No. 66 at 5.

### E.  APA Relief Does Not Prejudice Defendants

Finally, Defendants argue Plaintiff's APA arguments have not been "tested adversarially" or "developed with meaningful notice to the defendant." *Id.* at 7 (quoting *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015)). Had Defendants been on notice that

Plaintiff was challenging the regulation, they "would have submitted to the Court the administrative record relied on by the agency in promulgating the regulation and defended the agency's reasoning in adopting the rule." *Id.* The Court finds this argument unpersuasive.

To begin, Defendants do not explain how the administrative record would affect the Court's preemption and constitutional analysis. Plaintiff "is not seeking vacatur under the arbitrary-or-capricious test, or under any prong of 5 U.S.C. § 706 that would implicate the factual record or the agency's reasoning process." ECF No. 70 at 8. In other words, Defendants' arguments on summary judgment could not have been saved by a list of reasons why the agency believed adopting the rule was a good idea. *See, e.g.*, *I.N.S. v. Chadha*, 462 U.S. 919, 944 (1983) ("[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution."). Additionally, Defendants were on notice of the relevance of Section 59.10(b) as to this case because it was cited in their summary judgment briefing at least six times. *See* ECF Nos. 53, 62. In fact, Defendants cited the regulation as "[c]onsistent with [the] line of authority" relied upon in their briefing for Plaintiff's state law claim. ECF No. 53 at 15. The Court explained why it found those authorities unpersuasive. *See* ECF No. 63 at 20–22. And Court explained why distributing contraception to minor children without obtaining parental consent violates Plaintiff's "rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996). Thus, it cannot reasonably be argued that the constitutional merits of Section 59.10(b) have not been "tested adversarially" when the regulation authorizes the very conduct that lies at the heart of this litigation. And Defendants also had the opportunity to respond to Plaintiff's arguments for vacatur before the Court rendered final judgment. Therefore, Defendants have not been prejudiced.

6

**CONCLUSION**

It follows necessarily from the December 8 Order that the second sentence of 42 C.F.R. § 59.10(b) is unlawful. Therefore, Plaintiff is entitled to vacatur. For that reason and the reasons stated above, the Court **DENIES** the Motion and declines to revise the final judgment rendered in this case.

**SO ORDERED**.

January 4, 2023.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

23-10159.825

**TAB 6**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **Alexander R. Deanda**, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **Alex M. Azar II**, in his official capacity as Secretary of Health and Human Services; **Diane Foley**, in her official capacity as Deputy Assistant Secretary for Population Affairs; **United States of America**, <br><br> Defendants. | Case No. 2:20-cv-00092 |

**COMPLAINT—CLASS ACTION**

Parents have a constitutional right to direct the upbringing of their children. And the Religious Freedom Restoration Act prevents the government from interfering with the ability of parents to raise their children in accordance with their own religious values. The federal government, however, is subverting these constitutional and statutory rights in its Title X program, which funds projects that distribute contraception and family-planning services to minors without parental notification or consent—and in violation of Texas statutes that require parental consent before dispensing prescription contraception to minors. Plaintiff Alexander R. Deanda and his proposed classes sue to enjoin the defendants from funding Title X projects that provide contraception or other family-planning services to minors without parental consent.

**JURISDICTION AND VENUE**

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.    Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3.    Plaintiff Alexander R. Deanda resides in Randall County, Texas.

4.    Defendant Alex M. Azar II is the U.S. Secretary of Health and Human Services. His office is located at 200 Independence Avenue SW, Washington, D.C. 20201. Secretary Azar is sued in his official capacity.

5.    Defendant Diane Foley is the Deputy Assistant Secretary for Population Affairs in the Department of Health and Human Services. Dr. Foley directs the Office of Population Affairs in the Department of Health and Human Services, which administers the Title X program. Dr. Foley is sued in her official capacity.

6.    Defendant United States of America is the federal government of the United States of America.

## TEXAS PARENTAL-CONSENT LAWS

7.    The law of Texas gives parents the right to consent to their child's medical and dental care, and psychiatric, psychological, and surgical treatment. *See* Tex. Family Code § 151.001(6) (attached as Exhibit 1).

8.    The law of Texas establishes some exceptions to this rule. In certain emergency situations in which the parent cannot be contacted, a non-parent may consent to a child's medical, dental, psychological, and surgical treatment. *See* Tex. Family Code § 32.001 (attached as Exhibit 2). And some children may consent to their own medical, dental, psychological, and surgical treatment in certain limited situations. *See* Tex. Family Code § 32.003 (attached as Exhibit 2). For example, minors on active military duty may consent to their own medical, dental, psychological, and surgical treatment without parental involvement. *See* Tex. Family Code § 32.003(1) (attached

as Exhibit 2). So may emancipated minors who are over 16 years of age. *See* <u>Tex. Family Code § 32.003(2)</u> (attached as Exhibit 2).

9.    But outside of these statutory exceptions in section 32.003, there is no provision of Texas law that allows children to receive prescription contraception without parental consent, and the rule of parental consent in section 151.001(6) of the Texas Family Code remains fully applicable to the distribution of prescription contraception by any person or entity in the state of Texas.

10.   Any Title X project that distributes prescription contraception to minors without parental consent is therefore acting in violation of Texas law, unless the minor falls within the exceptions listed in chapter 32 of the Texas Family Code.

### THE TITLE X PROGRAM

11.   The Title X program authorizes the Secretary of Health and Human Services to award grants and contracts to entities that provide family-planning services. *See* <u>42 U.S.C. §§ 300</u> et seq.

12.   Nothing in the Title X statute authorizes or requires the recipients of Title X funds to dispense family-planning services to minors without parental consent, and nothing in the Title X statute purports to preempt the Texas laws that require parental consent before minors can receive prescription contraception.

13.   Instead, the statute requires recipients of Title X funds to "encourage family participation in projects assisted," and to do so "to the extent practical." <u>42 U.S.C. § 300(a)</u>. The full text of section 300(a) provides:

> The Secretary is authorized to make grants to and enter into contracts with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents). To the extent practical, entities which receive grants or contracts under this subsection shall encourage family participation in projects assisted under this subsection.

42 U.S.C. § 300(a).

14. This statutory language establishes a *floor* for Title X funding recipients: Every recipient of a Title X grant or contract must, "to the extent practical . . . encourage family participation" in Title X projects. An entity that fails to "encourage family participation" in Title X projects is categorically eligible to receive a Title X grant or contract, and the Secretary violates the Title X statute if he provides grants or contracts to such an entity.

15. But nothing in this statutory language prohibits Title X funding recipients from going *beyond* a mere policy of "encouraging family participation," and nothing in the statute prevents Title X projects from establishing a categorical policy of notifying or seeking consent from parents before dispensing prescription contraception or other family-planning services to minors.

16. More importantly, there is nothing in 42 U.S.C. § 300(a) that purports to preempt or override state or federal laws that require more extensive parental involvement, and there is nothing in 42 U.S.C. § 300(a) that purports to exempt Title X projects from those laws. *See Maryland v. Louisiana,* 451 U.S. 725, 746 (1981) ("Consideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law.").

17. Finally, the Supreme Court has long held that conditions on the receipt of federal funds must be spelled out in clear and unambiguous language. *See Pennhurst State Sch. and Hosp. v. Halderman,* 451 U.S. 1, 17 (1981) ("[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously."); *South Dakota v. Dole,* 483 U.S. 203, 207 (1987) (same); *Will v. Michigan Dep't of Police,* 491 U.S. 58, 65 (1989) ("Congress should make its intention 'clear and manifest' . . . if it intends to impose a condition on the grant of federal moneys" (citation omitted); *see also NFIB v. Sebelius,* 567 U.S. 519, 576–77 (2012) (opinion of Roberts, C.J., joined by Breyer and Kagan, JJ.); *id.* at 676 (Scalia, Kennedy, Thomas, and Alito,

JJ., dissenting). Because Title X is an exercise of the federal spending power, there must be a clear and unambiguous statement that participating States are forbidden to enforce their parental-involvement laws against Title X projects before the Texas laws can be deemed "preempted" by the Title X statute.

18.  Nevertheless, the defendants have funded and continue to fund Title X projects in Texas that do not seek or obtain parental consent before dispensing prescription contraception and other family-planning services to unemancipated minors, apparently on the assumption that Title X projects need not comply with state parental-consent laws.

## ALLEGATIONS RELATED TO ARTICLE III STANDING

19.  Plaintiff Alexander R. Deanda is a father of three daughters under the age of 18.

20.  Mr. Deanda is a Christian, and he is raising each of his daughters in accordance with Christian teaching on matters of sexuality, which requires unmarried children to practice abstinence and refrain from sexual intercourse until marriage.

21.  Mr. Deanda wishes to be informed if any of his children are accessing or attempting to access prescription contraception and other family-planning services. And he does not want his children to obtain or use these drugs or services unless he consents, in accordance with his statutory rights as a parent under section 151.001(6) of the Texas Family Code.

22.  The law of Texas protects Mr. Deanda's rights as a parent—and the rights of every other parent in Texas—by prohibiting individuals or entities from distributing prescription contraception to minors without parental consent. *See* Tex. Family Code § 151.001(6); Tex. Family Code § 32.003.

23.  The defendants, however, are flouting the law of Texas by making prescription contraception (and other family-planning services) available to Mr. Deanda's

daughters and the children of every other parent in Texas, without their knowledge or involvement.

24.   By administering a federal program that offers prescription contraception and other family-planning services to children, and by enabling children to obtain these drugs and services without parental consent, the defendants are inflicting injury in fact on Mr. Deanda and every parent in the United States who wishes to be informed if their children are accessing or attempting to access prescription contraception and other family-planning services, or who wishes to prevent their children from obtaining or using these drugs or services without their consent. These injuries include, but are not limited to: (a) The loss of their statutory rights as parents under 151.001(6) of the Texas Family Code, as they no longer have the right secured by Texas law to consent before their children use or obtain prescription contraception; (b) The subversion of their authority as parents, as their children now have the ability to use or obtain prescription contraception or other family-planning services behind their backs and without parental knowledge or permission; (c) The loss of assurance that their children will be unable to access prescription contraception or other family-planning services that facilitate sexual promiscuity and pre-marital sex; and (d) the weakening of their ability to raise their children in accordance with the teachings of the Christian faith, which prohibits pre-marital sexual activity regardless of whether contraception or family-planning devices are used.

25.   Each of these injuries is traceable to the defendants' administration of the Title X program, which distributes prescription contraception or other family-planning services to minors without parental consent, and in violation of Texas laws that require parental consent before prescription contraception is dispensed to minors.

26.    Each of these injuries is likely to be redressed by the requested relief, which will enjoin the defendants from directly or indirectly funding any family-planning projects that fail to obtain parental consent before distributing family-planning services to minors, or that violate a state's parental-involvement laws in any manner.

## CLAIM NO. 1—THE DEFENDANTS' ADMINISTRATION OF THE TITLE X PROGRAM VIOLATES SECTION 151.001(6) OF THE TEXAS FAMILY CODE

27.    Texas law prohibits individuals and entities from distributing prescription contraception to minors without first obtaining parental consent, subject to limited exceptions. *See* Tex. Family Code § 151.001(6); Tex. Family Code § 32.003.

28.    The defendants' administration of the Title X program violates Texas law by funding projects that refuse to comply with section 151.001(6) of the Texas Family Code.

29.    Nothing in 42 U.S.C. § 300(a) or any other provision of federal law preempts the Texas statutes that require parental consent to a child's medical, dental, psychological, and surgical treatment. *See* paragraphs 12–16.

30.    The Court should therefore declare that section 151.001(6) of the Texas Family Code remains valid and enforceable against those who administer the Title X program in Texas, and that nothing in the Title X statute or any other provision of federal law preempts section 151.001(6) of the Texas Family Code in whole or in part.

31.    The Court should also enjoin the defendants from directly or indirectly funding any family-planning project in Texas that fails to comply with section 151.001(6) of the Texas Family Code, or from awarding grants or entering into contracts with any entity that assists a family-planning project in Texas that fails to comply with section 151.001(6) of the Texas Family Code.

32.    Mr. Deanda brings this claim on behalf of every parent in Texas who wishes to be informed if their children are accessing or attempting to access prescription contraception, or who wishes to prevent their children from obtaining or using these drugs without their consent.

## CLAIM NO. 2—THE DEFENDANTS' ADMINISTRATION OF THE TITLE X PROGRAM VIOLATES THE CONSTITUTIONAL RIGHT OF PARENTS TO DIRECT THE UPBRINGING OF THEIR CHILDREN

33.    Parents have a constitutional right to direct the upbringing of their children. *See Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923).

34.    The defendants' administration of the Title X program violates the constitutional right of parents to direct the upbringing of their children by making prescription contraception and other family-planning services available to children without the consent of their parents.

35.    The Court should therefore declare that the Title X program, as currently administered, violates the constitutional right of parents to direct the upbringing of their children.

36.    The Court should also enjoin the defendants from directly or indirectly funding any family-planning project in the United States that fails to obtain parental consent before distributing prescription contraception or other family-planning services to minors, or from awarding grants or entering into contracts with any entity that assists a family-planning project in the United States that fails to obtain parental consent before distributing prescription contraception or other family-planning services to minors.

37.  Mr. Deanda brings this claim on behalf of every parent in the United States who wishes to be informed if their children are accessing or attempting to access prescription contraception or other family-planning services, or who wishes to prevent their children from obtaining or using these drugs or services without their consent.

## CLAIM NO. 3—THE DEFENDANTS' ADMINISTRATION OF THE TITLE X PROGRAM VIOLATES THE RELIGIOUS FREEDOM RESTORATION ACT

38.  The Religious Freedom Restoration Act prohibits the government from substantially burdening the exercise of religion, unless that burden furthers a "compelling governmental interest" and is the "least restrictive means" of doing so. 42 U.S.C. § 2000bb-1.

39.  The Religious Freedom Restoration Act "was designed to provide very broad protection for religious liberty," and it goes "far beyond what [the Supreme] Court has held is constitutionally required." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014).

40.  The defendants' administration of the Title X program substantially burdens the exercise of religion by subverting the ability of parents to raise their children in accordance with Christian beliefs on matters of sexuality, which require unmarried children to practice abstinence and refrain from sexual intercourse until marriage, and by enabling children to access to prescription contraception and other family-planning services that facilitate sexual promiscuity and pre-marital sex when their parents object to this behavior.

41.  There is no compelling governmental interest in allowing children to obtain prescription contraception and other family-planning services without their parents' knowledge or consent. Although the government may have a compelling interest in overriding parental objections to medically necessary health-care services, there is no compelling governmental interest in overriding parental objections when a child seeks

access to drugs or devices that serve only to facilitate sexual promiscuity and pre-marital sex.

42.    The Court should therefore declare that the Title X program, as currently administered, violates the Religious Freedom Restoration Act.

43.    The Court should also enjoin the defendants from directly or indirectly funding any family-planning project in the United States that fails to obtain parental consent before distributing prescription contraception or other family-planning ser-vices to minors, or from awarding grants or entering into contracts with any entity that assists a family-planning project in the United States that fails to obtain parental consent before distributing prescription contraception or other family-planning ser-vices to minors.

44.    Mr. Deanda brings this claim on behalf of every parent in the United States who is attempting to raise their children in accordance with religious beliefs that re-quire unmarried individuals to practice abstinence and refrain from sexual intercourse until marriage.

## CLASS-ACTION ALLEGATIONS

45.    Mr. Deanda brings this class action under Rule 23(b)(2) of the federal rules of civil procedure.

46.    The first class consists of all parents in Texas who wish to be informed if their children are accessing or attempting to access prescription contraception, or who wish to prevent their children from obtaining or using these drugs without their con-sent.

47.    The second class consists of all parents in the United States who wish to be informed if their children are accessing or attempting to access prescription contra-ception or other family-planning services, or who wish to prevent their children from obtaining or using these drugs or services without their consent.

48.   The third class consists of all parents in the United States who: (1) are attempting to raise their children in accordance with religious beliefs that require unmarried individuals to practice abstinence and refrain from sexual intercourse until marriage; and (2) who wish to be informed if their children are accessing or attempting to access prescription contraception or other family-planning services, or who wish to prevent their children from obtaining or using these drugs or services without their consent.

49.   The number of persons in each of the proposed classes makes joinder of the individual class members impractical.

50.   There are questions of law common to each of the classes. The legal question common to the first class is whether the defendants' administration of the Title X program violates section 151.001(6) of the Texas Family Code. The legal question common to the second class is whether the defendants' administration of the Title X program violates the constitutional right of parents to direct the upbrining of their children. The legal question common to the third class is whether the defendants' administration of the Title X program violates the Religious Freedom Restoration Act.

51.   Mr. Deanda's claims are typical of other members of each of the proposed classes.

52.   Mr. Deanda adequately represents the interests of the class, and he has no interests antagonistic to the class.

53.   A class action is appropriate under Rule 23(b)(2) because the defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## DEMAND FOR RELIEF

54.   Mr. Deanda respectfully requests that the court:

a.   certify the classes described in paragraphs 46–48;

b.   declare that defendants' administration of the Title X program violates
     section 151.001(6) of the Texas Family Code, the constitutional right
     of parents to direct the upbringing of their children, and the Religious
     Freedom Restoration Act;

c.   award the injunctive relief described in paragraphs 31, 35, and 43;

d.   award costs and attorneys' fees under 42 U.S.C. § 1988;

e.   award all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

H. Dustin Fillmore III                  /s/ Jonathan F. Mitchell
Texas Bar No. 06996010                  Jonathan F. Mitchell
Charles W. Fillmore                     Texas Bar No. 24075463
Texas Bar No. 00785861                  Mitchell Law PLLC
The Fillmore Law Firm, LLP              111 Congress Avenue, Suite 400
1200 Summit Avenue, Suite 860           Austin, Texas 78701
Fort Worth, Texas 76102                 (512) 686-3940 (phone)
(817) 332-2351 (phone)                  (512) 686-3941 (fax)
(817) 870-1859 (fax)                    jonathan@mitchell.law
dusty@fillmorefirm.com
chad@fillmorefirm.com                   Alex Yarbrough
                                        Texas Bar No. 24079615
                                        Riney & Mayfield LLP
                                        320 South Polk Street, Suite 600
                                        Amarillo, Texas 79101
                                        (806) 468-3202 (phone)
                                        (806) 376-4509 (fax)
                                        ayarbrough@rineymayfield.com

                                        *Counsel for Plaintiff*
Dated: April 10, 2020                   *and the Proposed Classes*

TEXAS FAMILY CODE

TITLE 5. THE PARENT-CHILD RELATIONSHIP AND THE SUIT AFFECTING
THE PARENT-CHILD RELATIONSHIP

SUBTITLE B. SUITS AFFECTING THE PARENT-CHILD RELATIONSHIP

CHAPTER 151. RIGHTS AND DUTIES IN PARENT-CHILD RELATIONSHIP

**Sec. 151.001. RIGHTS AND DUTIES OF PARENT.**

(a) A parent of a child has the following rights and duties:

(1) the right to have physical possession, to direct the moral and religious training, and to designate the residence of the child;

(2) the duty of care, control, protection, and reasonable discipline of the child;

(3) the duty to support the child, including providing the child with clothing, food, shelter, medical and dental care, and education;

(4) the duty, except when a guardian of the child's estate has been appointed, to manage the estate of the child, including the right as an agent of the child to act in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government;

(5) except as provided by Section 264.0111, the right to the services and earnings of the child;

(6) the right to consent to the child's marriage, enlistment in the armed forces of the United States, medical and dental care, and psychiatric, psychological, and surgical treatment;

(7) the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

(8) the right to receive and give receipt for payments for the support of the child and to hold or disburse funds for the benefit of the child;

(9) the right to inherit from and through the child;

(10) the right to make decisions concerning the child's education; and

(11) any other right or duty existing between a parent and child by virtue of law.

(b) The duty of a parent to support his or her child exists while the child is an unemancipated minor and continues as long as the child is fully enrolled in a secondary school in a program leading toward a high school diploma and complies with attendance requirements described by Section 154.002(a)(2).

(c) A parent who fails to discharge the duty of support is liable to a person who provides necessaries to those to whom support is owed.

(d) The rights and duties of a parent are subject to:

(1) a court order affecting the rights and duties;

(2) an affidavit of relinquishment of parental rights; and

(3) an affidavit by the parent designating another person or agency to act as managing conservator.

(e) Only the following persons may use corporal punishment for the reasonable discipline of a child:

(1) a parent or grandparent of the child; (2) a stepparent of the child who has the duty of control and reasonable discipline of the child; and

(3) an individual who is a guardian of the child and who has the duty of control and reasonable discipline of the child.

Added by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995. Amended by Acts 1995, 74th Leg., ch. 751, Sec. 23, eff. Sept. 1, 1995. Renumbered from Sec. 151.003 by Acts 2001, 77th Leg., ch. 821, Sec. 2.13, eff. June 14, 2001. Amended by Acts 2001, 77th Leg., ch. 964, Sec. 2, eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 1036, Sec. 3, eff. Sept. 1, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 924 (H.B. 383), Sec. 1, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 972 (S.B. 228), Sec. 6, eff. September 1, 2007.

Leg., ch. 821, Sec. 2.13, eff. June 14, 2001.

TEXAS FAMILY CODE

TITLE 2. CHILD IN RELATION TO THE FAMILY

SUBTITLE A. LIMITATIONS OF MINORITY

CHAPTER 32. CONSENT TO TREATMENT OF CHILD BY NON-PARENT OR CHILD

SUBCHAPTER A. CONSENT TO MEDICAL, DENTAL, PSYCHOLOGICAL, AND SURGICAL TREATMENT

**Sec. 32.001. CONSENT BY NON-PARENT.**

(a) The following persons may consent to medical, dental, psychological, and surgical treatment of a child when the person having the right to consent as otherwise provided by law cannot be contacted and that person has not given actual notice to the contrary:

(1) a grandparent of the child;

(2) an adult brother or sister of the child;

(3) an adult aunt or uncle of the child;

(4) an educational institution in which the child is enrolled that has received written authorization to consent from a person having the right to consent;

(5) an adult who has actual care, control, and possession of the child and has written authorization to consent from a person having the right to consent;

(6) a court having jurisdiction over a suit affecting the parent-child relationship of which the child is the subject;

(7) an adult responsible for the actual care, control, and possession of a child under the jurisdiction of a juvenile court or committed by a juvenile court to the care of an agency of the state or county; or

(8) a peace officer who has lawfully taken custody of a minor, if the peace officer has reasonable grounds to believe the minor is in need of immediate medical treatment.

(b) Except as otherwise provided by this subsection, the Texas Juvenile Justice Department may consent to the medical, dental, psychological, and surgical treatment of a child committed to the department under Title 3 when the person having the right to consent has been contacted and that person has not given actual notice to the contrary. Consent for

medical, dental, psychological, and surgical treatment of a child for whom the Department of Family and Protective Services has been appointed managing conservator and who is committed to the Texas Juvenile Justice Department is governed by Sections 266.004, 266.009, and 266.010.

(c) This section does not apply to consent for the immunization of a child.

(d) A person who consents to the medical treatment of a minor under Subsection (a)(7) or (8) is immune from liability for damages resulting from the examination or treatment of the minor, except to the extent of the person's own acts of negligence. A physician or dentist licensed to practice in this state, or a hospital or medical facility at which a minor is treated is immune from liability for damages resulting from the examination or treatment of a minor under this section, except to the extent of the person's own acts of negligence.

Amended by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995; Acts 1995, 74th Leg., ch. 751, Sec. 5, eff. Sept. 1, 1995.

Amended by:

Acts 2009, 81st Leg., R.S., Ch. 108 (H.B. 1629), Sec. 1, eff. May 23, 2009.

Acts 2015, 84th Leg., R.S., Ch. 734 (H.B. 1549), Sec. 37, eff. September 1, 2015.

## Sec. 32.002. CONSENT FORM.

(a) Consent to medical treatment under this subchapter must be in writing, signed by the person giving consent, and given to the doctor, hospital, or other medical facility that administers the treatment.

(b) The consent must include:

(1) the name of the child;

(2) the name of one or both parents, if known, and the name of any managing conservator or guardian of the child;

(3) the name of the person giving consent and the person's relationship to the child;

(4) a statement of the nature of the medical treatment to be given; and

(5) the date the treatment is to begin.

Amended by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995.

**Sec. 32.003. CONSENT TO TREATMENT BY CHILD.**

(a) A child may consent to medical, dental, psychological, and surgical treatment for the child by a licensed physician or dentist if the child:

(1) is on active duty with the armed services of the United States of America;

(2) is:

(A) 16 years of age or older and resides separate and apart from the child's parents, managing conservator, or guardian, with or without the consent of the parents, managing conservator, or guardian and regardless of the duration of the residence; and

(B) managing the child's own financial affairs, regardless of the source of the income;

(3) consents to the diagnosis and treatment of an infectious, contagious, or communicable disease that is required by law or a rule to be reported by the licensed physician or dentist to a local health officer or the Texas Department of Health, including all diseases within the scope of Section 81.041, Health and Safety Code;

(4) is unmarried and pregnant and consents to hospital, medical, or surgical treatment, other than abortion, related to the pregnancy;

(5) consents to examination and treatment for drug or chemical addiction, drug or chemical dependency, or any other condition directly related to drug or chemical use;

(6) is unmarried, is the parent of a child, and has actual custody of his or her child and consents to medical, dental, psychological, or surgical treatment for the child; or

(7) is serving a term of confinement in a facility operated by or under contract with the Texas Department of Criminal Justice, unless the treatment would constitute a prohibited practice under Section 164.052(a)(19), Occupations Code.

(b) Consent by a child to medical, dental, psychological, and surgical treatment under this section is not subject to disaffirmance because of minority.

(c) Consent of the parents, managing conservator, or guardian of a child is not necessary in order to authorize hospital, medical, surgical, or dental care under this section.

(d) A licensed physician, dentist, or psychologist may, with or without the consent of a child who is a patient, advise the parents, managing conservator, or guardian of the child of the treatment given to or needed by the child.

(e) A physician, dentist, psychologist, hospital, or medical facility is not liable for the examination and treatment of a child under this section except for the provider's or the facility's own acts of negligence.

(f) A physician, dentist, psychologist, hospital, or medical facility may rely on the written statement of the child containing the grounds on which the child has capacity to consent to the child's medical treatment.

Amended by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995; Acts 1995, 74th Leg., ch. 751, Sec. 6, eff. Sept. 1, 1995; Acts 2001, 77th Leg., ch. 821, Sec. 2.01, eff. June 14, 2001.

Amended by:

Acts 2007, 80th Leg., R.S., Ch. 1227 (H.B. 2389), Sec. 2, eff. June 15, 2007.

**Sec. 32.004. CONSENT TO COUNSELING.**

(a) A child may consent to counseling for:

(1) suicide prevention;

(2) chemical addiction or dependency; or

(3) sexual, physical, or emotional abuse.

(b) A licensed or certified physician, psychologist, counselor, or social worker having reasonable grounds to believe that a child has been sexually, physically, or emotionally abused, is contemplating suicide, or is suffering from a chemical or drug addiction or dependency may:

(1) counsel the child without the consent of the child's parents or, if applicable, managing conservator or guardian;

(2) with or without the consent of the child who is a client, advise the child's parents or, if applicable, managing conservator or guardian of the treatment given to or needed by the child; and

(3) rely on the written statement of the child containing the grounds on which the child has capacity to consent to the child's own treatment under this section.

(c) Unless consent is obtained as otherwise allowed by law, a physician, psychologist, counselor, or social worker may not counsel a child if consent is prohibited by a court order.

(d) A physician, psychologist, counselor, or social worker counseling a child under this section is not liable for damages except for damages resulting from the person's negligence or wilful misconduct.

(e) A parent, or, if applicable, managing conservator or guardian, who has not consented to counseling treatment of the child is not obligated to compensate a physician, psychologist, counselor, or social worker for counseling services rendered under this section.

Amended by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995.

### Sec. 32.005. EXAMINATION WITHOUT CONSENT OF ABUSE OR NEGLECT OF CHILD.

(a) Except as provided by Subsection (c), a physician, dentist, or psychologist having reasonable grounds to believe that a child's physical or mental condition has been adversely affected by abuse or neglect may examine the child without the consent of the child, the child's parents, or other person authorized to consent to treatment under this subchapter.

(b) An examination under this section may include X-rays, blood tests, photographs, and penetration of tissue necessary to accomplish those tests.

(c) Unless consent is obtained as otherwise allowed by law, a physician, dentist, or psychologist may not examine a child:

(1) 16 years of age or older who refuses to consent; or

(2) for whom consent is prohibited by a court order.

(d) A physician, dentist, or psychologist examining a child under this section is not liable for damages except for damages resulting from the physician's or dentist's negligence.

Amended by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995; Acts 1997, 75th Leg., ch. 575, Sec. 1, eff. Sept. 1, 1997. SUBCHAPTER B. IMMUNIZATION

### Sec. 32.101. WHO MAY CONSENT TO IMMUNIZATION OF CHILD.

(a) In addition to persons authorized to consent to immunization under Chapter 151 and Chapter 153, the following persons may consent to the immunization of a child:

(1) a guardian of the child; and

(2) a person authorized under the law of another state or a court order to consent for the child.

(b) If the persons listed in Subsection (a) are not available and the authority to consent is not denied under Subsection (c), consent to the immunization of a child may be given by:

(1) a grandparent of the child;

(2) an adult brother or sister of the child;

(3) an adult aunt or uncle of the child;

(4) a stepparent of the child;

(5) an educational institution in which the child is enrolled that has written authorization to consent for the child from a parent, managing conservator, guardian, or other person who under the law of another state or a court order may consent for the child;

(6) another adult who has actual care, control, and possession of the child and has written authorization to consent for the child from a parent, managing conservator, guardian, or other person who, under the law of another state or a court order, may consent for the child;

(7) a court having jurisdiction of a suit affecting the parent-child relationship of which the minor is the subject; (8) an adult having actual care, control, and possession of the child under an order of a juvenile court or by commitment by a juvenile court to the care of an agency of the state or county; or

(9) an adult having actual care, control, and possession of the child as the child's primary caregiver.

(c) A person otherwise authorized to consent under Subsection (a) may not consent for the child if the person has actual knowledge that a parent, managing conservator, guardian of the child, or other person who under the law of another state or a court order may consent for the child:

(1) has expressly refused to give consent to the immunization;

(2) has been told not to consent for the child; or

(3) has withdrawn a prior written authorization for the person to consent.

(d) The Texas Juvenile Justice Department may consent to the immunization of a child committed to it if a parent, managing conservator, or guardian of the minor or other person who, under the law of another state or court order, may consent for the minor has been contacted and:

(1) refuses to consent; and

(2) does not expressly deny to the department the authority to consent for the child.

(e) A person who consents under this section shall provide the health care provider with sufficient and accurate health history and other information about the minor for whom the consent is given and, if necessary, sufficient and accurate health history and information about the minor's family to enable the person who may consent to the minor's immunization and the health care provider to determine adequately the risks and benefits inherent in the proposed immunization and to determine whether immunization is advisable.

(f) Consent to immunization must meet the requirements of Section 32.002(a).

Amended by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995; Acts 1997, 75th Leg., ch. 165, Sec. 7.09(a), eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 62, Sec. 6.02, eff. Sept. 1, 1999.

Amended by:

Acts 2015, 84th Leg., R.S., Ch. 734 (H.B. 1549), Sec. 38, eff. September 1, 2015.

## Sec. 32.1011. CONSENT TO IMMUNIZATION BY CHILD.

(a) Notwithstanding Section 32.003 or 32.101, a child may consent to the child's own immunization for a disease if:

(1) the child:

(A) is pregnant; or

(B) is the parent of a child and has actual custody of that child; and

(2) the Centers for Disease Control and Prevention recommend or authorize the initial dose of an immunization for that disease to be administered before seven years of age.

(b) Consent to immunization under this section must meet the requirements of Section 32.002(a).

(c) Consent by a child to immunization under this section is not subject to disaffirmance because of minority.

(d) A health care provider or facility may rely on the written statement of the child containing the grounds on which the child has capacity to consent to the child's immunization under this section.

(e) To the extent of any conflict between this section and Section 32.003, this section controls.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1313 (S.B. 63), Sec. 1, eff. June 14, 2013.

## Sec. 32.102. INFORMED CONSENT TO IMMUNIZATION.

(a) A person authorized to consent to the immunization of a child has the responsibility to ensure that the consent, if given, is an informed consent. The person authorized to consent is not required to be present when the immunization of the child is requested if a consent form that meets the requirements of Section 32.002 has been given to the health care provider.

(b) The responsibility of a health care provider to provide information to a person consenting to immunization is the same as the provider's responsibility to a parent.

(c) As part of the information given in the counseling for informed consent, the health care provider shall provide information to inform the person authorized to consent to immunization of the procedures available under the National Childhood Vaccine Injury Act of 1986 (42 U.S.C. Section 300aa-1 et seq.) to seek possible recovery for unreimbursed expenses for certain injuries arising out of the administration of certain vaccines.

Amended by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995. Renumbered from Sec. 32.103 and amended by Acts 1997, 75th Leg., ch. 165, Sec. 7.09(b), (d), eff. Sept. 1, 1997.

## Sec. 32.103. LIMITED LIABILITY FOR IMMUNIZATION.

(a) In the absence of wilful misconduct or gross negligence, a health care provider who accepts the health history and other information given by a person who is delegated the authority to consent to the immunization of a child during the informed consent counseling is not liable for an adverse reaction to an immunization or for other injuries to the child resulting from factual errors in the health history or information given by the person to the health care provider.

(b) A person consenting to immunization of a child, a physician, nurse, or other health care provider, or a public health clinic, hospital, or other medical facility is not liable for damages arising from an immunization administered to a child authorized under this

subchapter except for injuries resulting from the person's or facility's own acts of negligence.

Amended by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995. Renumbered from Sec. 32.104 by Acts 1997, 75th Leg., ch. 165, Sec. 7.09(e), eff. Sept. 1, 1997.

## SUBCHAPTER C. MISCELLANEOUS PROVISIONS

## Sec. 32.201. EMERGENCY SHELTER OR CARE FOR MINORS.

(a) An emergency shelter facility may provide shelter and care to a minor and the minor's child or children, if any.

(b) An emergency shelter facility may provide shelter or care only during an emergency constituting an immediate danger to the physical health or safety of the minor or the minor's child or children.

(c) Shelter or care provided under this section may not be provided after the 15th day after the date the shelter or care is commenced unless:

(1) the facility receives consent to continue services from the minor in accordance with Section 32.202; or

(2) the minor has qualified for financial assistance under Chapter 31, Human Resources Code, and is on the waiting list for housing assistance.

Amended by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995; Acts 2003, 78th Leg., ch. 192, Sec. 1, eff. June 2, 2003.

## Sec. 32.202. CONSENT TO EMERGENCY SHELTER OR CARE BY MINOR.

(a) A minor may consent to emergency shelter or care to be provided to the minor or the minor's child or children, if any, under Section 32.201(c) if the minor is:

(1) 16 years of age or older and:

(A) resides separate and apart from the minor's parent, managing conservator, or guardian, regardless of whether the parent, managing conservator, or guardian consents to the residence and regardless of the duration of the residence; and

(B) manages the minor's own financial affairs, regardless of the source of income; or

(2) unmarried and is pregnant or is the parent of a child.

(b) Consent by a minor to emergency shelter or care under this section is not subject to disaffirmance because of minority. (c) An emergency shelter facility may, with or without the consent of the minor's parent, managing conservator, or guardian, provide emergency shelter or care to the minor or the minor's child or children under Section 32.201(c).

(d) An emergency shelter facility is not liable for providing emergency shelter or care to the minor or the minor's child or children if the minor consents as provided by this section, except that the facility is liable for the facility's own acts of negligence.

(e) An emergency shelter facility may rely on the minor's written statement containing the grounds on which the minor has capacity to consent to emergency shelter or care.

(f) To the extent of any conflict between this section and Section 32.003, Section 32.003 prevails.

Added by Acts 2003, 78th Leg., ch. 192, Sec. 2, eff. June 2, 2003.

## Sec. 32.203. CONSENT BY MINOR TO HOUSING OR CARE PROVIDED THROUGH TRANSITIONAL LIVING PROGRAM.

(a) In this section, "transitional living program" means a residential services program for children provided in a residential child-care facility licensed or certified by the Department of Family and Protective Services under Chapter 42, Human Resources Code, that:

(1) is designed to provide basic life skills training and the opportunity to practice those skills, with a goal of basic life skills development toward independent living; and

(2) is not an independent living program. (b) A minor may consent to housing or care provided to the minor or the minor's child or children, if any, through a transitional living program if the minor is:

(1) 16 years of age or older and:

(A) resides separate and apart from the minor's parent, managing conservator, or guardian, regardless of whether the parent, managing conservator, or guardian consents to the residence and regardless of the duration of the residence; and

(B) manages the minor's own financial affairs, regardless of the source of income; or

(2) unmarried and is pregnant or is the parent of a child.

(c) Consent by a minor to housing or care under this section is not subject to disaffirmance because of minority.

(d) A transitional living program may, with or without the consent of the parent, managing conservator, or guardian, provide housing or care to the minor or the minor's child or children.

(e) A transitional living program must attempt to notify the minor's parent, managing conservator, or guardian regarding the minor's location.

(f) A transitional living program is not liable for providing housing or care to the minor or the minor's child or children if the minor consents as provided by this section, except that the program is liable for the program's own acts of negligence.

(g) A transitional living program may rely on a minor's written statement containing the grounds on which the minor has capacity to consent to housing or care provided through the program.

(h) To the extent of any conflict between this section and Section 32.003, Section 32.003 prevails.

Added by Acts 2013, 83rd Leg., R.S., Ch. 587 (S.B. 717), Sec. 1, eff. June 14, 2013.

**TAB 7**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **Alexander R. Deanda**, | |
| Plaintiff, | |
| v. | Case No. 2:20-cv-00092-Z |
| **Xavier Becerra**, et al., | |
| Defendants. | |

### DECLARATION OF ALEXANDER R. DEANDA

I, Alexander R. Deanda, declare as follows:

1.  My name is Alexander R. Deanda. I am over 21 years old and fully competent to make this declaration.

2.  I have personal knowledge of each of the facts stated in this declaration, and everything stated in this declaration is true and correct.

3.  I am the father of three daughters under the age of 18.

4.  I am a Christian, and I am raising each of my daughters in accordance with Christian teaching on matters of sexuality, which requires unmarried children to practice abstinence and refrain from sexual intercourse until marriage.

5.  I wish to be informed if any of my children are accessing or attempting to access prescription contraception and other family-planning services. And I do not want my children to obtain or use these drugs or services unless I consent, in accordance with my statutory rights as a parent under section 151.001(6) of the Texas Family Code.

6.  The law of Texas protects my rights as a parent by prohibiting individuals or entities from distributing prescription contraception to minors without parental consent. *See* Tex. Family Code § 151.001(6); Tex. Family Code § 32.003.

DECLARATION OF ALEXANDER R. DEANDA                                    Page 1 of 2

7. The defendants' administration of the Title X program, however, is flouting the law of Texas by making prescription contraception (and other family-planning services) available to the children of every parent in Texas without their knowledge or involvement.

8. By administering a federal program that offers prescription contraception and other family-planning services to children, and by enabling children to obtain these drugs and services without parental consent, the defendants are inflicting injury on me and every parent in the United States who wishes to be informed if their children are accessing or attempting to access prescription contraception and other family-planning services, or who wishes to prevent their children from obtaining or using these drugs or services without their consent.

9. These injuries include, but are not limited to: (a) The loss of our statutory rights as parents under 151.001(6) of the Texas Family Code, as we no longer have the right secured by Texas law to consent before our children use or obtain prescription contraception; (b) The subversion of our authority as parents, as our children now have the ability to use or obtain prescription contraception or other family-planning services behind our backs and without parental knowledge or permission; (c) The loss of assurance that our children will be unable to access prescription contraception or other family-planning services that facilitate sexual promiscuity and pre-marital sex; and (d) the weakening of our ability to raise our children in accordance with the teachings of the Christian faith, which prohibits pre-marital sexual activity regardless of whether contraception or family-planning devices are used.

This concludes my sworn statement. I declare under penalty of perjury that the facts stated in this declaration are true and correct.

*Alex Deanda*
Alex Deanda (Jul 23, 2021 21:36 CDT)

ALEXANDER R. DEANDA

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Courtney L. Dixon*
Courtney L. Dixon