# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 23-10159

ALEXANDER R. DEANDA, on Behalf of Himself
and Others Similarly Situated,

*Plaintiff-Appellee,*

v.

XAVIER BECERRA, in his official capacity as Secretary of Health and Human
Services; JESSICA SWAFFORD MARCELLA, in her official capacity as Deputy
Assistant Secretary for Population Affairs; UNITED STATES OF AMERICA,

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS, AMARILLO IN CASE NO. 2:20-CV-92
HONORABLE MATTHEW J. KACSMARYK, U.S. DISTRICT JUDGE

---

**BRIEF OF *AMICI CURIAE* JANE'S DUE PROCESS, ADVOCATES
FOR YOUTH, AND 133 OTHER ORGANIZATIONS COMMITTED TO
ADVANCING REPRODUCTIVE HEALTH, RIGHTS, AND ACCESS FOR
YOUNG PEOPLE IN SUPPORT OF DEFENDANTS-APPELLANTS**

---

HILLARY SCHNELLER
*Counsel of Record*
AMY MYRICK
MEETRA MEHDIZADEH
CENTER FOR REPRODUCTIVE RIGHTS
*Attorneys for Amici Curiae*
199 Water Street, 22nd Floor
New York, New York 10038
(917) 637-3777

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. Amici curiae certify that they have no outstanding shares or debt securities in the hands of the public, and they have no parent companies. No publicly held company has a 10% or greater ownership interest in any of the amici curiae. Amici curiae are unaware of any persons with any interest in the outcome of this litigation other than the signatories to this brief and their counsel, and those identified in the party and amicus briefs filed in this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiff-Appellee**
Alexander R. Deanda

**Counsel to Plaintiff-Appellee**
Jonathan F. Mitchell
Charles W. Fillmore
Douglas Bryan Hughes
H. Dustin Fillmore III
W. Heath Hendricks
Alex Lee Yarbrough

**Defendant-Appellants**
Xavier Becerra
Jessica Swafford Marcella
United States of America

**Counsel to Defendant-Appellants**
Abby Christine Wright

Courtney Dixon
Amber Justine Richer

**Amici Curiae**
Jane's Due Process
Advocates for Youth
AAUW IL
Abortion Access Front
Abortion Coalition for Telemedicine Access (ACT Access)
Abortion Freedom Fund
ACLU of Illinois and its Judicial Bypass Coordination Project
Act Now: End AIDS (ANEA) Coalition
AIDS Action Baltimore
AIDS Foundation Chicago
AIDS United
All-Options
American Humanist Association
American Medical Student Association
American Society for Emergency Contraception
Apiary for Practical Support
Association of Maternal & Child Health Programs
Avow Texas
AWAKE TN
Big Bend Reproductive Coalition
Blue Mountain Clinic
Brookside Women's Medical Center DBA Austin Women's Health Center
California Latinas for Reproductive Justice
carafem
CARE Colorado
Carolina Abortion Fund
Catholics for Choice
Cedar River Clinics
Center for HIV Law and Policy (CHLP)
CenterLink: The Community of LGBTQ Centers
Chicago Abortion Fund
Choice Network
Cicada Collective
Cobalt
Collective Power for Reproductive Justice
Contraceptive Access Initiative (CAI)

DC Abortion Fund
EducateUS: SIECUS In Action
Faith Choice Ohio
Feminist Campus
FL National Organization for Women
Florida Access Network
Forward Midwifery
Fòs Feminista
Frontera Fund
Fund Abortion Not Police
Gen-Z for Change
Grandmothers for Reproductive Rights (GRR!)
Greater Orlando National Organization for Women
Healthy and Free Tennessee
Healthy Teen Network
Ibis Reproductive Health
If/When/How: Lawyering for Reproductive Justice
Illinois Handmaids
Ipas
Just The Pill/Abortion Delivered
Lambda Legal Defense and Education Fund, Inc.
Legal Voice
Louisiana Coalition for Reproductive Freedom
Maryland Coalition Against Sexual Assault
Maryland NOW
Massachusetts Minors Abortion Access Panel
Medical Students for Choice
Men4Choice Advocacy
Michigan Organization on Adolescent Sexual Health (MOASH)
Midwest Access Coalition
Mountain Maryland Alliance for Reproductive Freedom
Mountain State Justice, Inc.
MOVE Texas Civic Fund
Music City Doulas
NARAL Pro-Choice America
National Center for Youth Law
National Council of Jewish Women
National council of Jewish Women Maryland Action Team
National Health Law Program
National Institute for Reproductive Health

National Latina Institute for Reproductive Justice
National LGBTQ+ Bar Association
National Network of Abortion Funds
National Organization for Women Foundation
National Partnership for Women & Families
National Women's Political Caucus
NCJW CNS
Noise for Now
Older Women Embracing Life
PAI
Pegasus Health Justice Center
Physicians for Reproductive Health
Plan C
Planned Parenthood Federation of America
Positive Women's Network
Pro-Choice Connecticut
Pro-Choice Maryland
Pro-Choice North Carolina
Pro-Choice Washington
Progress Texas Institute
ProgressNow New Mexico
PWN-USA Greater Houston Area Texas Strike Force
Religious Coalition for Reproductive Choice
Reproaction
Reproductive Health Access Project
Reproductive Justice Collective NY
Reproductive Rights Coalition
RHEDI (Reproductive Health Education in Family Medicine)
Rhia Ventures
Right By You
Sex Workers Educating & Empowering Texans (SWEET)
She Votes Illinois
SHERO Mississippi
Shout Your Abortion
SIECUS: Sex Ed for Social Change
SisterReach and SisterReach Illinois
Somos Tejas
South Texans for Reproductive Justice
State Innovation Exchange (SiX)
Supermajority

Tampa Bay Abortion Fund
Texas Equal Access Fund
Texas Freedom Network
The National Women's Health Network
The Women's Law Center of Maryland
The Womxn Project
Trust Women Foundation
2+ Abortions Worldwide
UCSF Bixby Center for Global Reproductive Health
UltraViolet
Unite for Reproductive & Gender Equity (URGE)
Utah Abortion Fund
VoteProChoice
We Testify
West Virginia Focus: Reproductive Education and Equity (WV FREE)
Women's Law Project
Youth Reproductive Equity

**<u>Counsel to Amici Curiae</u>**
Hillary Schneller
Amy Myrick
Meetra Mehdizadeh

Dated: May 1, 2023

<em><u>/s/ Hillary Schneller</u></em>
Hillary Schneller

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... vii

INTERESTS OF AMICI ..........................................................................1

SUMMARY OF ARGUMENT ................................................................2

ARGUMENT ...........................................................................................3

   I.   The Ability of Minors to Independently and Confidentially Consent to Contraceptive Access is Critical for Their Well-Being. ..........................................3

     A.    Mandated parental involvement deters young people from seeking or obtaining necessary healthcare with consequent harms to their sexual and reproductive health. ....................................................................3

     B.    Title X clinics fill an essential need for confidential contraceptive access.. ...................................................................................7

   II.    Minors in Texas Who Rely on Title X for Independent and Confidential Access to Contraception are Facing Real and Immediate Harms in Texas Under the District Court's Judgment. .............................................................9

     A.    Minors in Texas who seek contraception cannot always obtain the consent of parents or guardians. ..........................................................10

     B.    Title X clinics have been essential in preserving access to contraception for minors in Texas who face real and immediate harms under the District Court's judgment. .........................................................13

     C.    Unlike young people who need and have lost independent and confidential access to contraception, a parent who objects to contraception is not harmed by the mere existence of a Title X program that provides voluntary services ..................................................................16

CONCLUSION ......................................................................................18

APPENDIX OF AMICI .................................................................... A-1

# TABLE OF AUTHORITIES

Advocates for Youth, *Behind the Counter: Findings from the 2022 Oral Contraceptives Access Survey* (2022), https://www.advocatesforyouth.org/wp-content/uploads/2022/09/BehindTheCounter-OralContraceptivesAccessReport-2022-1.pdf .................................................................................... 4, 6, 7

Advocates for Youth, *Independent Access to Confidential Health Services: Vital for Young People to Develop Healthy Lives* (Jul. 5, 2016), https://www.advocatesforyouth.org/resources/policy-advocacy/independent-access-to-confidential-health-services/ ...........................................5, 18

Brooke Whitfield et al., *Minors' Experiences Accessing Confidential Contraception in Texas*, 72 J. Adolescent Health 591(2023)....................... passim

Kate Coleman-Minahan et al., *Availability of Confidential Services for Teens Declined After the 2011-2013 Changes to Publicly Funded Family Planning Programs in Texas*, 66 J. Adolescent Health 719 (2020) ..................................8, 9

National Sexual Violence Resource Center, *What is the connection between Housing Inequality, Sexual Violence, and White Supremacy?* (Mar. 8, 2023), https://www.nsvrc.org/blogs/saam/what-connection-between-housing-inequality-sexual-violence-and-white-supremacy ................................................................5

Planned Parenthood, *What are the benefits of the birth control pill?*, https://www.plannedparenthood.org/learn/birth-control/birth-control-pill/what-are-the-benefits-of-the-birth-control-pill (last visited Apr. 26, 2023)....................3

Priya R. Pathak and Adriana Chou, *Confidential Care for Adolescents in the U.S. Health Care System*, 6 J. Patient-Centered Res. & Revs. 46 (2019).................7, 8

Sanjana Pampati et al., *Confidentiality matters but how do we improve implementation in adolescent sexual and reproductive health care?*, 65 J. Adolescent Health 315 (2019) ...........................................................5, 7

Tina Schuh et al., *Knowledge of Adolescent Consent and Confidentiality Laws and Use of Sexual and Reproductive Health Care among Adolescents*, U. Chi. Ctr. for Interdisc. Inquiry and Innovation in Sexual and Reprod. Health (Feb. 2019), https://ci3.uchicago.edu/wp-content/uploads/2020/09/Ci3-Research-Brief-MHU-Confidentiality-Feb-2019.pdf ...............................................................5

Vina Smith-Ramakrishnan, *Advancing Contraceptive Equity: Policy Priorities for 2023*, Century Found. (Mar. 16, 2023), https://tcf.org/content/report/advancing-contraceptive-equity-policy-priorities-for-2023/...................................................3

# INTERESTS OF AMICI[1]

Amici are organizations committed to advancing the reproductive rights and health of all people, regardless of age. Many amici work with and alongside young people to protect, advance, and increase access to reproductive health rights and services, and to facilitate young peoples' agency over their lives and futures. Some amici are based in Texas and have experienced first-hand the impacts of losing, for the vast majority of people under 18, the only option in the state for independent, confidential access to contraception. Amicus curiae Jane's Due Process talks with young people every day who cannot involve parents or guardians in their decisions to seek reproductive healthcare including prescription birth control, some of whom shared their experiences for this amicus brief. Amicus curiae Advocates for Youth, and other amici, have conducted research that documents the many barriers that young people face when trying to obtain contraception, and the harms that flow from mandated parental involvement in the process. All amici work to advance reproductive health and rights throughout the life course (full list in appendix). Amici are well-suited to convey how the District Court's order and judgment have

---

[1] No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than amici, their members, or their counsel contributed money intended to fund preparing or submitting the brief. All parties received notice and have consented to the timely filing of this amicus brief.

stripped young people in Texas of the ability to make decisions about their lives and futures by accessing reliable, affordable contraception at Title X clinics.

## SUMMARY OF ARGUMENT

Mandatory parental involvement delays or prevents many young people from accessing prescription birth control when they desire, which subjects them to sexual and reproductive health harms including unintended pregnancy. Independent, confidential access is essential for young people to obtain birth control, allowing them to make decisions about their lives, health, and futures. This is demonstrably true in Texas.

In the wake of the District Court's judgment, young people in Texas and those who work with them to facilitate sexual and reproductive health reflect on the impact of losing independent and confidential access to birth control. Young people under 18 in Texas have a range of reasons for being unable to access birth control if parental consent is required. Title X clinics have long been the only option for the vast majority of minors seeking independent, confidential services in the state. The District Court's judgment in *Deanda* subjects minors in Texas to far-reaching harms from losing the ability to access birth control without proof of parental consent. In stark contrast, the parent who has challenged Title X's administration is not harmed simply because Title X clinics exist and confidentially serve young people who rely on them for essential health care services.

# ARGUMENT

## I.    The Ability of Minors to Independently and Confidentially Consent to Contraceptive Access is Critical for Their Well-Being.

Mandatory parental involvement delays or prevents many young people from accessing prescription birth control, for reasons ranging from parents who are unavailable, to shame and stigma around discussing birth control, to parental refusal to consent based on strict religious beliefs, cultural differences, or other factors. Young people who cannot access birth control when they desire face the risk and reality of harms to their sexual and reproductive health. When independent, confidential access is available, young people are more likely to seek and obtain birth control, allowing them to proactively make decisions about their health and futures.

### A. Mandated parental involvement deters young people from seeking or obtaining necessary healthcare with consequent harms to their sexual and reproductive health.

People under 18 seek contraception for a variety of reasons, including to prevent pregnancy or to prevent or treat acne, fibroids, polycystic ovary syndrome (PCOS), endometrial and ovarian cancers, and more.[2] However, systemic barriers often prevent teens from accessing contraception. Research demonstrates that lack

---

[2] *See* Vina Smith-Ramakrishnan, *Advancing Contraceptive Equity: Policy Priorities for 2023*, Century Found. (Mar. 16, 2023), https://tcf.org/content/report/advancing-contraceptive-equity-policy-priorities-for-2023/; *see also* Planned Parenthood, *What are the benefits of the birth control pill?*, https://www.plannedparenthood.org/learn/birth-control/birth-control-pill/what-are-the-benefits-of-the-birth-control-pill (last visited Apr. 26, 2023).

of financial resources, transportation, health insurance, or inability to make and attend an appointment due to school or employment prevents many from obtaining a prescription for oral contraception.[3] In a recent survey of young people designed to explore issues around birth control access, the vast majority of the 243 national respondents (88%) indicated they experienced at least one barrier to obtaining a prescription for oral contraception when they were young.[4] In fact, 75% of all survey participants reported experiencing multiple barriers, including logistical, financial, personal, legal, social, and/or cultural factors.[5]

In addition to and combined with other impediments, mandated parental involvement is a significant barrier to contraception access for young people. Many young people voluntarily discuss contraception with their parents or guardians.[6] But some who seek parental guidance find that their parents do not want to address the subject, do not understand why contraception access is both time-sensitive and critical for their health, or will not undertake the necessary steps to make and facilitate an appointment to obtain a prescription. Others cannot involve their parents

---

[3] Advocates for Youth, *Behind the Counter: Findings from the 2022 Oral Contraceptives Access Survey*, 9 (2022), https://www.advocatesforyouth.org/wp-content/uploads/2022/09/BehindTheCounter-OralContraceptivesAccessReport-2022-1.pdf.
[4] *Id.* at 8.
[5] *Id.*
[6] *Id.* at 13.

4

for fear that they would be at risk of violence or be forced to leave their homes.[7] Sexual abuse is a reason that some young people cannot consult with parents, and may cut off contact; according to the National Sexual Violence Research Center, almost 42% of homeless youth (ages 14-24) have experienced child sexual abuse prior to running away.[8] For still others, parents and guardians are simply unable to provide consent. It is essential that these youth be able to independently and confidentially access contraceptive care.

Mandated parental consent for contraception will deter some young people from seeking services, or they may use less effective contraception or no contraception at all.[9] In one recent national survey, 63% of respondents who were not able to obtain a birth control prescription reported that they delayed seeking oral

---

[7] Advocates for Youth, *Independent Access to Confidential Health Services: Vital for Young People to Develop Healthy Lives* (Jul. 5, 2016), https://www.advocatesforyouth.org/resources/policy-advocacy/independent-access-to-confidential-health-services/.

[8] National Sexual Violence Resource Center, *What is the connection between Housing Inequality, Sexual Violence, and White Supremacy?* (Mar. 8, 2023), https://www.nsvrc.org/blogs/saam/what-connection-between-housing-inequality-sexual-violence-and-white-supremacy.

[9] Brooke Whitfield et al., *Minors' Experiences Accessing Confidential Contraception in Texas*, 72 J. Adolescent Health 591, 591-92 (2023); *see also* Tina Schuh et al., *Knowledge of Adolescent Consent and Confidentiality Laws and Use of Sexual and Reproductive Health Care among Adolescents*, U. Chi. Ctr. for Interdisc. Inquiry and Innovation in Sexual and Reprod. Health (Feb. 2019), https://ci3.uchicago.edu/wp-content/uploads/2020/09/Ci3-Research-Brief-MHU-Confidentiality-Feb-2019.pdf ("Specifically related to sexual and reproductive health (SRH) care access, young people's fears and concerns around confidentiality and consent are linked to lower use of contraceptives and higher adolescent pregnancy rates."); Sanjana Pampati et al., *Confidentiality matters but how do we improve implementation in adolescent sexual and reproductive health care?*, 65 J. Adolescent Health 315, 316 (2019) ("Numerous studies have found adolescents may forgo care, including SRH care, due to confidentiality concerns, such as disclosure of sexual activity or sexual orientation to parents.").

contraceptives because of concerns about parental involvement.[10] For example, one respondent reported that, though she wanted to take birth control as a teenager, she was deterred by fear of her parents finding out and being angry with her. As a result, she "used condoms and had several very stressful pregnancy scares between the ages of 15 and 19."[11]

In Texas in particular, needing to involve parents has prevented or delayed many young people from accessing contraception. A study of young people's experiences seeking birth control in the state found that some participants who tried to discuss contraception "felt their parents evaded or shut down the conversation."[12] One 17-year-old participant had been trying to access contraception for three years and had raised the topic with her mother. Although her mother was "open to the conversation," she delayed making an appointment for her daughter. The teen told researchers, "I do not think she wants to understand that her daughter actually needs [contraception] for the sole purpose of birth control to prevent pregnancies."[13] Other study participants who tried involving their parents in discussions around contraception found that the parents were uncomfortable discussing sex, or were themselves unfamiliar with the benefits of contraception. Another 17-year-old who

---

[10] Advocates for Youth, *Behind the Counter*, *supra* note 3, at 13.

[11] *Id.* at 14.

[12] Whitfield et al., *supra* note 9, at 593.

[13] *Id.*

participated in the study said that her mother "was shutting [the conversation about contraception] down saying it was unnatural, so that is why I cannot go to her about any of these questions."[14]

When young people cannot access contraception because of barriers including needing to involve parents, they experience harms including anxiety about unintended pregnancy, or the need to respond to a pregnancy that they want to end. For example, among national youth survey respondents who could not obtain a prescription for birth control, "58% reported experiencing a pregnancy scare as a result; 45% reported using emergency contraception because they had sex without using birth control; one-in-five (20%) shared that they experienced an unintended pregnancy as a result, and 16% reported seeking an abortion."[15]

### B. Title X clinics fill an essential need for confidential contraceptive access.

Young people who believe that a provider will keep their information confidential are more willing to share sensitive medical information and to seek health care—including contraceptive care—than those who do not believe that their information will be kept confidential.[16] Yet many young people have reported that

---

[14] *Id.*

[15] Advocates for Youth, *Behind the Counter, supra* note 3, at 15.

[16] *See* Priya R. Pathak and Adriana Chou, *Confidential Care for Adolescents in the U.S. Health Care System*, 6 J. Patient-Centered Res. & Revs. 46 (2019); *see also* Pampati et al., *supra* note 9, at 315 ("Multiple studies have found associations between confidentiality practices and receipt of recommended services.") (citations omitted).

they would not feel comfortable speaking to their pediatrician about their need for contraception, particularly if their parents take them to the appointments and stay in the room with them. One 17-year-old reported that she "never get[s] any alone time with my doctors" and that even if she did have the opportunity to speak to her physician about contraception, she believed that the physician would tell her mother. Although she had been sexually active for more than three years and wanted to discuss using a more effective method of contraception, she did not discuss it with her doctor.[17]

Title X clinics have robust privacy and confidentiality protections and fill an essential need for young people who are then able to seek and obtain birth control.[18] Indeed, when state-level changes to funding for reproductive health programs in the 2011 Texas legislative session resulted in almost 80% of providers who had been Title X recipients losing these funds, the impact on minors was immediate and drastic.[19] Loss of applicable Title X funding meant that providers could no longer serve minors confidentially, but instead had to obtain parental consent for prescription birth control. As one clinical director noted, "When that law first went into effect…we lost over 1,000 clients because we had hundreds of teenagers and

---

[17] Whitfield et al., *supra* note 9, at 595.
[18] Pathak and Chou, *supra* note 16, at 46-50.
[19] Kate Coleman-Minahan et al., *Availability of Confidential Services for Teens Declined After the 2011-2013 Changes to Publicly Funded Family Planning Programs in Texas*, 66 J. Adolescent Health 719, 721 (2020).

they just disappeared. Because for us to be able to give them their birth control refills, we had to have their parents come in and sign for them, and they wouldn't do it."[20] Some providers who could no longer serve young people under 18 responded by referring them to the few remaining recipients of Title X funding in the state, their only option for continuing to receive confidential care.[21]

Research and experience in Texas are thus conclusive: independent and confidential access to contraception enables minors to use services when they would otherwise be unable, lessening one of multiple barriers that teens face when seeking to proactively prevent pregnancy and safeguard their sexual and reproductive health.

## II.     Minors in Texas Who Rely on Title X for Independent and Confidential Access to Contraception are Facing Real and Immediate Harms in Texas Under the District Court's Judgment.

Federally-funded Title X clinics have for many years been the only option for the overwhelming majority of minors in Texas seeking independent, confidential services.[22] After the District Court vacated the Title X regulation requiring confidential contraception care, young people in the state, and those who work with them to facilitate birth control access, began grappling with the far-reaching impacts. They shared their experiences and stories with amicus curiae Jane's Due Process ("JDP").

---

[20] *Id.*

[21] *Id.* at 721-22.

[22] Whitfield et al., *supra* note 9, at 592.

**A. Minors in Texas who seek contraception cannot always obtain the consent of parents or guardians.**

People who spoke about access to birth control in Texas reflected on the circumstances that made parental involvement impossible. HK Gray,[23] age 20, recalled being unable to reach her parents because they were facing severe life challenges:

> At 16, I was at my 6-week postpartum checkup when my OBGYN suggested I get a copper IUD. We both agreed this was the best option for me but I needed parental consent in order to receive it. This wasn't something that I was going to be able to get. My mom had just got sent away to serve a rehabilitation program in prison and I had lost contact with my dad since he was homeless. Either one of them would have consented to my birth control if they were in different circumstances at the time but because of the situation, I was unable to get the birth control my OBGYN recommended. Unable to access birth control because of these barriers led to an unintended pregnancy when I was 17 and my daughter was just nine months old. This unintended pregnancy resulted in an abortion. There are hundreds of orphan de factos, just like I was, living in Texas. These teens are left with limited options when it comes to birth control because they don't have access to their parents and thus don't have access to their consent.

"S.N."[24] is a 15-year-old Texas student who shared that although her parents are present in her life, she cannot involve them in decisions about birth control because of socio-cultural barriers and stigma around reproductive health choices. These factors can pose a heavy burden on young people and cause them to feel

---

[23] Identified by abbreviation by request, in order to maintain privacy.
[24] Minors are identified by initials only.

unable to disrupt family expectations, contributing to stress, shame, anxiety, and isolation. In S.N.'s words:

> There's another layer to this issue that often goes unnoticed—the cultural barrier that prevents many teenagers from taking control of their reproductive health. As first-generation Americans, many of my friends and I come from families with different cultural backgrounds, making it extremely challenging, if not impossible, to discuss reproductive health and birth control. Our parents do not fully understand why we need birth control or even what it is, and often, my friends and I feel uncomfortable or ashamed to talk about these topics due to the cultural stigma. This lack of a support system can leave us feeling isolated and powerless, with no clear path to take control of our health and future. If I needed birth control for any reason, I wouldn't be able to confide in my family or even my own mother due to cultural barriers. The reality is that many of my peers share this experience, which leaves us with no one but ourselves to look out for our futures. And that is why access to confidential and free birth control is incredibly important.

Young people also encounter resistance from parents who do not want them to be sexually active and believe that access to birth control will make them more likely to engage in sex, even when they seek birth control for health reasons, or because they want agency over their sexual and reproductive health. Graci D'Amour, the Senior Manager of Direct Services at JDP, spoke to "A.W." on the JDP textline. In Graci's words:

> She reached out about getting confidential birth control because of her painful periods. She disclosed that her doctors had found a cyst in one of her ovaries which made her cycles extremely painful. The doctor recommended several times that she get on birth control to ease the menstrual pains. However, her parents refused to consent because they didn't want her to have sex. Most commonly, teens want to be proactive in preventing pregnancy, especially after the *Dobbs v. Jackson*

decision. Having free and assured confidentiality improves their chances of preventing an unwanted pregnancy and being forced to travel out of state for an abortion.

Olivia Julianna, 20, echoed that young people often need birth control to help regulate hormonal issues, as was her experience suffering from severe PCOS at age 12 until oral contraceptives mitigated the symptoms when she was almost 15. While her parents consented to the treatment, she knows many others would not because of concerns about their children having sex. As she noted,

> Thanks to having access to birth control medication, I was able to feel like a normal teenager and not a kid who was bogged down with medical problems that I could not control. There are many parents with kids that have PCOS, other menstrual disorders, and menstrual pain, who will not consent to birth control, even when it is not being prescribed to prevent pregnancy. Regardless of the reason a young person is seeking birth control, they deserve to be able to access it. If parental consent is a barrier for them, they still deserve access to birth control and relief from their pain and/or worries.

"Sammie,"[25] now age 20, reinforced that having a sense of control over her present and future prompted her to seek birth control, even though doing so would have harmed her relationship with her parents at the time:

> At 17 I had known that when the time came, an IUD was going to be my birth control of choice due to its low maintenance and high efficacy. I had done extensive research into different birth control options because I knew that I didn't want to risk unplanned pregnancy interfering with my career. Minors deserve to have bodily autonomy and the ability to make important decisions about their future, as an unplanned pregnancy can irreversibly alter the course of one's life, particularly if you live in a state where abortion isn't legal.

---

[25] Identified by first name by request, in order to maintain privacy.

For all these reasons, ranging from parental unavailability, to stigma, to fraught family relationships, to outright refusal to allow access, young people in Texas require an option for independent, confidential access to prescription birth control in order to remain safe and healthy.

> **B. Title X clinics have been essential in preserving access to contraception for minors in Texas who face real and immediate harms under the District Court's judgment.**

People who discussed barriers to involving parents or guardians in contraception decisions stated that Title X providers allowed them to obtain birth control when no other options were available, and spoke to the clear benefits they experienced for their health and well-being. For example, "Sammie" noted that independent, confidential access at a Title X clinic both gave her a sense of agency over her reproductive health, and also averted harm to her relationship with her parents during a critical time:

> When I booked an appointment to get an IUD through a Title X clinic, I felt that it was an important step in ensuring the financial, emotional, social, and professional security of my future. Because of my IUD, I didn't have a pregnancy interfere with my plans to go to college and then law school. I didn't have to face the financial and emotional burden of deciding what to do with an unplanned pregnancy had one occurred. I have thrived in college and am on track to go to a top tier law school – I've even started tutoring people on the LSAT (Law School Admission Test). I came from a relatively wealthy area and a fortunate background, and I still benefited greatly from the ability to make autonomous decisions about my body and future. Title X also allowed me to do this without harming my relationship with my parents, since I

13

was able to make intimate decisions about my life without making all of us more uncomfortable and feeling like my privacy was being invaded – a decision that they understand and agree with today.

For young people facing additional complexities with family life that make it impossible to reach parents or guardians, access at a Title X clinic is similarly critical. Eleanor Grano, the Director of Advocacy and Partnerships at JDP, has advised people who work with minors involved in CPS cases. She spoke with a guardian ad litem who shared that the minor they were representing was having difficulties getting their preferred birth control at a Medicaid clinic through Texas's STAR Health Program, a program for minors involved in CPS cases. Eleanor provided education to the volunteer guardian ad litem about how any Texas teen can easily access low-cost confidential birth control of their choice at Title X clinics and how to create an appointment. The next day, the volunteer guardian ad litem shared with Eleanor that the minor they represented was immediately able to schedule an appointment and received their preferred birth control at a Title X clinic with ease. In Eleanor's words:

> Title X is an important program for all teens, but especially minors involved in CPS cases. Title X allows foster youth to confidentially choose the birth control that is best for them and not have to worry about delays as a result of the bureaucratic Medicaid reimbursement process for expensive contraceptive options.

Both those who work with young people and minors themselves discussed the impact of losing the sole option for independent, confidential access to contraception

14

in Texas following the district court's order.  Kimya Forouzan is a textline counselor with JDP who speaks with texters who needed help finding birth control and information about the methods available to them. When texters stated that they were not able to tell their parents, but they wanted information to determine the best option for them and access to care, Kimya would previously look up Title X clinics near to the texter where they could get free, confidential care. Following the District Court's order and judgment, these options no longer exist, and Kimya cannot provide minors with the resources they seek.

Given the web of restrictions on reproductive health care in Texas, JDP volunteer Nimisha Srikanth who works in the Bryan and College Station areas noted that more and more minors were seeking confidential birth control options, often without success. In Nimisha's words,

> We have seen an influx of young people scrambling to find confidential and stable birth control options after recent laws regarding access to reproductive healthcare passed in Texas. Many young people have been relying on emergency contraception on top of or in replacement of hormonal birth control pills. Those using emergency contraception and not on a form of hormonal birth control have stated that they do not know how to get on birth control without their parents noticing on their insurance or affording it without insurance. This makes planning their reproductive healthcare more stressful than it needs to be and an added burden in their already hectic and stressful lives. Therefore, accessing free and confidential birth control through Title X clinics in Texas is essential in helping young people gain autonomy over their healthcare and reduce additional stressors in their lives.

Speaking as a young person experiencing these stressors, "N.W." is a high school student who volunteers with JDP. N.W. related that one of her friends, who is 16, had many questions about how he and his girlfriend could access birth control given that it was not possible to obtain her parents' consent. N.W. had told him about a nearby Title X provider where confidential access was available. After the District Court's judgment, she would need to tell him that there were simply no options. In her words:

> You shouldn't have to wait until you are eighteen to protect yourself from an unwanted pregnancy. In this instance it is easy to say, "Well these are teenagers, they don't have complete medical freedom anyway, and they shouldn't be having sex, they should listen to their parents and be responsible." However, the teenage years are full of rebellion and arguments between parents, the child is not always going to listen to their parents, and they shouldn't have to when they are being prevented from resources that could help to save their lives. It is also important to note that the individuals who are, or I guess "were," using Title X Clinics to gain confidential and affordable birth control were taking initiative for their own futures, coming from all different backgrounds and situations. I am just one voice, but I ask that you consider all of these young people, with ambition and responsibility, who you are setting up for failure.

### C. Unlike young people who need and have lost independent and confidential access to contraception, a parent who objects to contraception is not harmed by the mere existence of a Title X program that provides voluntary services.

The accounts from impacted people convey the immediate harms that have ensued from losing, for the vast majority of minors, the only option for independent, confidential prescription contraceptive access in Texas. Young people must go

without birth control, experiencing anxiety about their sexual and reproductive health, painful heath conditions, the risk and reality of unintended pregnancy, and loss of agency over their futures. Every day they are seeking access to critical healthcare, only to find that it is unavailable because they simply cannot involve parents or guardians in their decision-making.

In stark contrast, the lone parent who has challenged Title X's administration asserts that he is harmed solely because Title X clinics exist and confidentially serve young people who choose to voluntarily visit them, which somehow diminishes his parental authority, takes away his assurance that his children will be unable to access birth control, and increases the possibility that his children will access birth control without his knowledge or consent. *See* ROA.736-37. As defendant-appellants assert, the plaintiff has not even alleged that his children would ever seek or obtain contraception at a Title X clinic, with his involvement or without. Appellant's Br. 19. And of course, if the plaintiff fears such events, he is free to discuss his objections to contraception with his children and discourage them from seeking access. Indeed, further supporting that parents who object to contraception are not harmed by the mere existence of Title X clinics, studies show that allowing young people to access health services confidentially does not deter them from involving parents in healthcare decisions or from discussing their decisions with their parents.[26]

---

[26] *See* Advocates for Youth, *Independent Access*, *supra* note 7.

It is not the plaintiff who is harmed by the Title X program. Instead, it is the District Court's order and judgment that harm young people across the state, in circumstances that have nothing to do with the plaintiff's theoretical personal fears, and everything to do with their own complex lives, who face the reality of losing control over their reproductive health and futures.

## CONCLUSION

For the reasons discussed above, the Court should reverse.


Dated: May 1, 2023

Respectfully submitted,


 */s/ Hillary Schneller*
Hillary Schneller
Amy Myrick
Meetra Mehdizadeh
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3777
hschneller@reprorights.org
amyrick@reprorights.org
mmehdizadeh@reprorights.org

## APPENDIX OF AMICI

**Jane's Due Process**; Austin, TX

**Advocates for Youth**; Washington, DC

**AAUW IL**; Illinois

**Abortion Access Front**; New York, NY

**Abortion Coalition for Telemedicine Access (ACT Access)**; New York, NY

**Abortion Freedom Fund**; Saratoga, CA

**ACLU of Illinois and its Judicial Bypass Coordination Project**; Chicago, IL

**Act Now: End AIDS (ANEA) Coalition**; New York, NY

**AIDS Action Baltimore**; Baltimore, MD

**AIDS Foundation Chicago**; Chicago, IL

**AIDS United**; Washington, DC

**All-Options**; Oakland, CA

**American Humanist Association**; Washington, DC

**American Medical Student Association**;    McLean, VA

**American Society for Emergency Contraception**; Lawrenceville, NJ

**Apiary for Practical Support**; New York, NY

**Association of Maternal & Child Health Programs**; Washington, DC

**Avow Texas**; Houston, Texas

**AWAKE TN**; Nashville, TN

**Big Bend Reproductive Coalition**; Marfa, TX

**Blue Mountain Clinic**; Missoula, MT

**Brookside Women's Medical Center DBA Austin Women's Health Center**; Austin, TX

**California Latinas for Reproductive Justice**; Los Angeles, California

**carafem**; Washington, DC

**CARE Colorado**; Pueblo, Colorado

**Carolina Abortion Fund**; the Carolinas

**Catholics for Choice**; Washington, DC

**Cedar River Clinics**; Yakima, WA

**Center for HIV Law and Policy (CHLP)**; National

**CenterLink: The Community of LGBTQ Centers**; Ft. Lauderdale, FL

**Chicago Abortion Fund**; Chicago IL

**Choice Network**; Columbus, Ohio

**Cicada Collective**; Denton, TX

**Cobalt**; Colorado

**Collective Power for Reproductive Justice**; Amherst, MA

**Contraceptive Access Initiative (CAI)**; Washington, DC

**DC Abortion Fund**; Washington, DC

**EducateUS: SIECUS In Action**; Washington, DC

**Faith Choice Ohio**; Columbus, OH

**Feminist Campus**; Arlington, VA

**FL National Organization for Women**; Orlando, FL

**Florida Access Network**; Orlando, FL

**Forward Midwifery**; Washington, DC

**Fòs Feminista**; New York, NY

**Frontera Fund**; Rio Grande Valley, TX

**Fund Abortion Not Police**; Brooklyn, NY

**Gen-Z for Change**; Delaware

**Grandmothers for Reproductive Rights (GRR!)**; Bath, ME

**Greater Orlando National Organization for Women**; Orlando, FL

**Healthy and Free Tennessee**; Nashville, TN

**Healthy Teen Network**; Takoma Park, MD

**Ibis Reproductive Health**; Cambridge, MA

**If/When/How: Lawyering for Reproductive Justice**; Oakland, CA

**Illinois Handmaids**; Lisle, IL

**Ipas**; Chapel Hill, NC

**Just The Pill/Abortion Delivered**; Minnesota

**Lambda Legal Defense and Education Fund, Inc**.; New York, NY

**Legal Voice**; Seattle, WA

**Louisiana Coalition for Reproductive Freedom**; Louisiana

**Maryland Coalition Against Sexual Assault**; Silver Spring, MD

**Maryland NOW**; Silver Spring, MD

**Massachusetts Minors Abortion Access Panel**; Boston, MA

**Medical Students for Choice**; Philadelphia, PA

**Men4Choice Advocacy**; Chicago, IL

**Michigan Organization on Adolescent Sexual Health (MOASH)**; Michigan

**Midwest Access Coalition**; Chicago, IL

**Mountain Maryland Alliance for Reproductive Freedom**;    Allegany and Garrett Counties, MD

**Mountain State Justice, Inc.**; West Virginia

**MOVE Texas Civic Fund**; San Antonio, TX

**Music City Doulas**; Nashville, TN

**NARAL Pro-Choice America**; Washington, DC

**National Center for Youth Law**; Oakland, CA

**National Council of Jewish Women**; Washington, DC

**National council of Jewish Women Maryland Action Team**; Bethesda MD

**National Health Law Program**; Los Angeles, CA

**National Institute for Reproductive Health**; New York, NY

**National Latina Institute for Reproductive Justice**; New York City, NY

**National LGBTQ+ Bar Association**; Washington, DC

**National Network of Abortion Funds**; Boston, MA

**National Organization for Women Foundation**; Washington, DC

**National Partnership for Women & Families**; Washington, DC

**National Women's Political Caucus**; Washington DC

**NCJW CNS**; Illinois

**Noise for Now**; Santa Fe, NM

**Older Women Embracing Life**; Baltimore City, Maryland

**PAI**; Washington, DC

**Pegasus Health Justice Center**; Dallas, TX

**Physicians for Reproductive Health**; Hartsdale, NY

**Plan C**; Washington, DC

**Planned Parenthood Federation of America**; New York, NY

**Positive Women's Network**; Oakland, CA

**Pro-Choice Connecticut**; Connecticut

**Pro-Choice Maryland**; Annapolis, MD

**Pro-Choice North Carolina**; Durham, NC

**Pro-Choice Washington**; Seattle, WA

**Progress Texas Institute**; Dallas, TX

**ProgressNow New Mexico**; Albuquerque, NM

**PWN-USA Greater Houston Area Texas Strike Force**; Houston, TX

**Religious Coalition for Reproductive Choice**; Washington, DC

**Reproaction**; Washington, DC

**Reproductive Health Access Project**; National

**Reproductive Justice Collective NY**; New York, NY

**Reproductive Rights Coalition**; Charlotte, NC

**RHEDI (Reproductive Health Education in Family Medicine)**; Bronx, NY

**Rhia Ventures**; San Francisco, CA

**Right By You**; St. Louis, MO

**Sex Workers Educating & Empowering Texans (SWEET)**; Austin, TX

**She Votes Illinois**; Chicago, IL

**SHERO Mississippi**; Jackson, MS

**Shout Your Abortion**; Seattle, WA

**SIECUS: Sex Ed for Social Change**; Washington DC

**SisterReach and SisterReach Illinois**; Memphis, TN; and Chicago, IL

**Somos Tejas**; Dallas, TX

**South Texans for Reproductive Justice**; McAllen, TX

**State Innovation Exchange (SiX)**; Madison, WI

**Supermajority**; New York, NY

**Tampa Bay Abortion Fund**; Tampa, FL

**Texas Equal Access Fund**; Dallas, TX

**Texas Freedom Network**; Austin, TX

**The National Women's Health Network**; Washington, DC

**The Women's Law Center of Maryland**;   Towson, MD

**The Womxn Project**; Rhode Island

**Trust Women Foundation**; Wichita, KS

**2+ Abortions Worldwide**; San Diego, CA

**UCSF Bixby Center for Global Reproductive Health**; San Francisco, CA

**UltraViolet**; Washington, DC

**Unite for Reproductive & Gender Equity (URGE)**; Washington, DC

**Utah Abortion Fund**; Salt Lake City, UT

**VoteProChoice**; New York, NY

**We Testify**; New York, NY

**West Virginia Focus: Reproductive Education and Equity (WV FREE)**; Charleston, WV

**Women's Law Project**; Philadelphia, PA

**Youth Reproductive Equity**; Chicago, IL

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2023, a true and correct copy of the foregoing Brief was served via the court's CM/ECF system.

Dated: May 1, 2023

*/s/ Hillary Schneller*
Hillary Schneller

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 4585 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, font size 14, except the footnotes, which are in 12-point Times New Roman font.

Dated: May 1, 2023

*/s/ Hillary Schneller*
Hillary Schneller