No. 23-10159

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

ALEXANDER R. DEANDA,

Plaintiff-Appellee,

v.

XAVIER BECERRA, in his official capacity as Secretary, United States Department of Health and Human Services; JESSICA SWAFFORD MARCELLA, in her official capacity as Deputy Assistant Secretary for Population Affairs; and UNITED STATES OF AMERICA,

Defendants-Appellants,

---

## BRIEF OF EVERY BODY TEXAS AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS-APPELLANTS

---

Elizabeth G. Myers
Jennifer R. Ecklund
Thompson Coburn LLP
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201

Counsel for Amicus Curiae
Every Body Texas

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiff-Appellee:**                    Alexander R. Deanda

**Counsel for Plaintiff-**
**Appellee:**                              Jonathan F. Mitchell
                                           Mitchell Law PLLC
                                           111 Congress Avenue, Suite 400
                                           Austin, TX 78701
                                           Tel. (512) 686-3940
                                           jonathan@mitchell.law

| | |
|---|---|
| **Defendants-Appellants:** | Xavier Becerra, in his official capacity as Secretary, U.S. Department of Health and Human Services<br>Jessica Swafford Marcella, in her official capacity as Deputy Assistant Secretary for Population Affairs<br>United States of America |
| **Counsel for Defendants-Appellants:** | Brian M. Boynton, Principal Deputy Assistant Attorney General<br>Courtney L. Dixon, Appellate Staff<br>Abby C. Wright, Appellate Staff<br>U.S. Department of Justice, Civil Division, 950 Pennsylvania Avenue NW<br>Washington, DC 20530<br>courtney.l.dixon@usdoj.gov<br>Tel. (202) 353-8189<br>abby.wright@usdoj.gov<br>Tel. (202) 514-0664 |
| **Amicus Curiae:** | National family Planning & Reproductive Health Association, Inc. |
| **Counsel for Amicus Curiae:** | Counsel of Record<br>Brigitte Amiri<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>(212) 549-2633<br>ctejada@aclu.org<br>bamiri@aclu.org<br><br>Robin Summers<br>National Family Planning & Reproductive Health Association<br>1025 Vermont Ave. NW, Suite 800<br>Washington, DC 20005<br>(202) 293-3114 |

rsummers@nfprha.org


Adriana Pirion
David Donatti
ACLU Foundation Of Texas, Inc.
5225 Katy Freeway, Suite 350
Houston, TX 77007
(713) 942-8146
apinon@aclutx.org
ddonatti@aclutx.org

**Amicus Curiae:**                        Every Body Texas


**Counsel for Amicus Curiae:**    Elizabeth G. Myers
Jennifer R. Ecklund
Thompson Coburn LLP
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, amicus curiae Every Body Texas states that it is a nonprofit organization organized under the laws of Texas. It has no parent corporation and no publicly held corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS..........................................................i

CORPORATE DISCLOSURE STATEMENT ........................................................ iv

TABLE OF AUTHORITIES ................................................................................ vi

RULE 29 STATEMENT OF COMPLIANCE ...................................................... viii

INTEREST OF AMICUS CURIAE ...................................................................... ix

SUMMARY OF ARGUMENT.................................................................................1

ARGUMENT .........................................................................................................3

I.   For decades the Legislative and Executive Branches have required that
     adolescents be able to access confidential family planning services under Title X............3

II.  The district court's improper remedy upends decades of settled expectations and
     requirements regarding how and when administrative policies and rules may be
     changed. ........................................................................................................6

     A.  Statutory remedies require a successful statutory claim.................................7

     B.  Appellee did not prevail on any APA claim in the court below.....................8

     C.  The district court's improper inference of an APA claim is contrary to decades of
         settled law.............................................................................................13

CONCLUSION .....................................................................................................18

CERTIFICATE OF SERVICE AND COMPLIANCE .............................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Matter of Cassidy*,
    892 F.2d 637 (7th Cir. 1990) ...................................................................12

*Cnty. of St. Charles, Mo. v. Missouri Fam. Health Council*,
    107 F.3d 682 (8th Cir. 1997) .....................................................................5

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
    45 F.4th 846 (5th Cir. 2002).......................................................................6

*Davis v. Wakelee*,
    156 U.S. 680 (1895)...................................................................................13

*Dolezilek v. C.I.R.*,
    212 F.2d 458 (D.C. Cir. 1954)....................................................................7

*Ergo Sci., Inc. v. Martin*,
    73 F.3d 595 (5th Cir. 1996) ......................................................................10

*FleetBoston Fin. Corp. v. United States*,
    483 F.3d 1345 (Fed. Cir. 2007)..................................................................8

*Fornesa v. Fifth Third Mortgage Co.*,
    897 F.3d 624 (5th Cir. 2018) ....................................................................10

*Fort Bend County v. U.S. Army Corps of Engineers*,
    59 F.4th 180 (5th Cir. 2023) .....................................................................13

*Jane Does 1 through 4 v. State of Utah Dep't of Health*,
    776 F.2d 253 (10th Cir. 1985) ...................................................................5

*Martinez v. Pompeo*,
    977 F.3d 457 (5th Cir. 2020) (per curiam)..............................................14

*Mercy Hosp. of Laredo v. Heckler*,
    777 F.2d 1028 (5th Cir. 1985) .................................................................15

*Planned Parenthood Fed'n of Am., Inc. v. Heckler*,
    712 F.2d 650 (D.C. Cir. 1983)....................................................................4

*State of N.Y. v. Heckler*,
    719 F.2d 1191 (2d Cir. 1983).....................................................................5

*Tesoro Ref. & Mktg. Co. v. FERC,*
    552 F.3d 868 (D.C. Cir. 2009) ........................................................... 15

*U.S. ex rel. Tex. Portland Cement Co. v. McCord,*
    233 U.S. 157 (1914) ............................................................................. 7

*U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Tex.,*
    944 F.2d 253 (5th Cir. 1991) ............................................................. 12

*Von Hoffburg v. Alexander,*
    615 F.2d 633 (5th Cir. 1980) ....................................................... 14, 15

*In re Willy,*
    831 F.2d 545 (5th Cir. 1987) ............................................................. 14

**Statutes**

5 U.S.C. § 704 .......................................................................................... 13

42 U.S.C. §300 et. seq. ................................................................... *passim*

Administrative Procedures Act ....................................................... *passim*

Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49, 444,
    466 (2022) ............................................................................................. 3

**Other Authorities**

42 C.F.R. ......................................................................................... 3, 5, 16

45 CFR §75.352 ....................................................................................... 16

49 Fed. Reg. 38,117-18 (Sept. 27, 1984) ................................................. 5

Rule 59.10(b) ................................................................................. *passim*

## RULE 29 STATEMENT OF COMPLIANCE

All parties have consented to the filing of this brief.  No counsel for a party authored any party of this brief.  No party, party's counsel, or any person other than the amicus curiae, its members, or its counsel contributed money that was intended to finance the preparation or submission of this brief.

## INTEREST OF AMICUS CURIAE

Every Body Texas ("EBTX")[1] is a statewide Title X Family Planning Administrator for Texas.  Each year, it distributes millions of Title X family planning dollars to fund clinics across the state, keeping them open and accessible for Texans.  The organization was founded in 1977 to advocate for increased access to high-quality sexual and reproductive healthcare for all.  In 2013, following a lengthy application process, EBTX was named the primary Title X Family Planning Administrator for Texas and it has served in that role ever since.  EBTX was the single largest recipient of Title X grant funds in 2022,[2] and it supports a network of over 31 agencies with more than 154 clinic sites across the state, serving more than 180,000 clients annually.[3]

---

[1] EBTX is the d/b/a for Women's Health and Family Planning Association of Texas.

[2] *See* list of Fiscal Year 2022 Title X Service Grant Awards, *available at* https://opa.hhs.gov/grant-programs/title-x-service-grants/current-title-x-service-grantees/fy2022-title-X-service-grant-awards (last visited May 1, 2023).

[3] Five other clinic locations in Texas also received Title X funds in 2022, but they are direct grantees, not sub-grantees of EBTX.  *See id.*

## SUMMARY OF ARGUMENT

For over 40 years, adolescents have been empowered under Title X of the Public Health Service Act, 42 U.S.C. § 300(a) *et. seq.*, to access confidential family planning services from healthcare providers when needed.  That access is mandated by the specific words chosen by Congress in Title X, it has been the policy promulgated by the Department of Health and Human Services (HHS) since 1984, and it has been uniformly recognized by every U.S. Court of Appeals that has considered the issue to prohibit any effort – at the federal or state level – to require parental consent for teens to obtain contraception.

In this case, however, without any actual claim under the Administrative Procedures Act (APA) before it, the district court invoked Section 706(2) of the APA to "set aside" the 2021 HHS rule that formalized its longstanding policy of encouraging, but not requiring, family involvement for adolescents seeking care from Title X providers.  The district court's decision and judgment purporting to vacate the second sentence of Rule 59.10(b) is foreclosed by decades of settled law and this Court's prior decisions.  It also lacks the most basic foundation required to challenge an administrative regulation under our system of laws and sets a dangerous precedent that could permit anyone, anywhere to wreak havoc and chaos across a wide array of administrative rules and regulations without first following the requirements our legal system demands for the administration of justice.

For all of the reasons explained in Appellants' Brief, the district court's judgment should be reversed *in toto*. However, at a minimum and as explained in detail below, the district court's judgment setting aside any portion of Rule 59.10(b) must be reversed because there was no APA claim before the district court – indeed, Appellee specifically disavowed such a claim – and any invocation of an APA remedy requires a successful APA claim, which Appellee did not and cannot prove.

# ARGUMENT

I.     **For decades the Legislative and Executive Branches have required that adolescents be able to access confidential family planning services under Title X.**

Title X, officially named the "Family Planning Program" was created in 1970 as part of the Public Health Service Act.  42 U.S.C. § 300(a).  Under that law, HHS is authorized to "make grants . . . with public or nonprofit private entities to assist in the establishment and operation of voluntary family planning projects which shall offer a broad range of acceptable and effective family planning methods and services (including natural family planning methods, infertility services, and services for adolescents)."  Congress further mandated that Title X grants and contracts "shall be made in accordance with such regulations as the Secretary [of HHS] may promulgate."  *Id*.

Services that are considered "family planning" for Title X purposes include: contraceptive services, including counseling on reproductive life goals; basic infertility services; counseling on achieving pregnancy; preconception health services; STI testing and treatment (including HIV/AIDS); and related preventive health services, such as breast and cervical cancer screening.[4]    The program

---

[4] Title X funds specifically cannot be used for abortions and none of EBTX's sub-grantees perform abortions.  Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49, 444, 466 (2022); 42 CFR §59.5(a)(5).

prioritizes serving people and families with low incomes and is implemented through grants to thousands of clinical sites, including public health departments and non-profit health centers.[5]

For nearly four decades, Title X services have also included confidential care for adolescents when needed.  Since 1981, the statute has included an instruction that "[t]o the extent practical, entities which receive grants or contracts under this subsection shall encourage family participation in projects assisted under this subsection."[6]  42 U.S.C. § 300(a).  In 1983, HHS promulgated a rule that sought to impose certain parental notification and consent requirements for adolescent services, which was challenged by certain Title X grantees and the state of New York as violative of the statutory directive.[7]  Later that year, both the D.C. Circuit Court of Appeals and the Second Circuit Court of Appeals, ruled in favor of the plaintiffs and enjoined the rule as exceeding the Secretary's statutory authority because it required, rather than encouraged, parental consent.  *Planned Parenthood Fed'n of*

---

[5] *See* Office of Population Affairs, Title X Family Planning Directory, *available at* https://opa.hhs.gov/sites/default/files/2023-04/40716_Title_X_Directory_March_2023_RELEASE_508.pdf (last visited May 1, 2023).

[6] This sentence was the sole amendment to Title X in 1981.

[7] The rule, among other requirements, directed Title X grantees to notify (with limited exceptions) a parent or guardian within 10 working days of initially prescribing contraceptive services and to comply with any state parental notification or consent laws related to the provision of family services.

*Am., Inc. v. Heckler,* 712 F.2d 650 (D.C. Cir. 1983); *State of N.Y. v. Heckler*, 719 F.2d 1191 (2d Cir. 1983).

Other courts (including the Tenth and Eighth Circuit Courts of Appeals) thereafter also considered whether Title X projects are subject to state laws that require parental consent, and also concluded that such laws conflict with Title X and are therefore preempted. *E.g.*, *Jane Does 1 through 4 v. State of Utah Dep't of Health*, 776 F.2d 253 (10th Cir. 1985); *Cnty. of St. Charles, Mo. v. Missouri Fam. Health Council*, 107 F.3d 682 (8th Cir. 1997). Consistent with this unanimous body of law and with no further amendments by Congress following any of those decisions, from 1984 on, HHS maintained a clear policy requiring that minors be able to receive services confidentially at Title X projects. *See, e.g.*, 49 Fed. Reg. 38,117-18 (Sept. 27, 1984) (promulgating a final rule that removed the previously proposed parental notifications before they took effect). Then, following its rulemaking process, HHS formally adopted 42 C.F.R. § 59.10(b) on October 4, 2021, which states:

> To the extent practical, Title X projects shall encourage family participation. However, Title X projects may not require consent of parents or guardians for the provision of services to minors, nor can any Title X project staff notify a parent or guardian before or after a minor has requested and/or received Title X family planning services.

Despite this longstanding legal history and clear statutory text and mandate from Congress, Appellee filed a declaratory judgment claim in 2020 in the district court below, asserting that HHS's longstanding policy of encouraging but not requiring parental consent for adolescents to obtain contraception violated Texas law and his constitutional rights to parent his teenage daughters. *See* ROA 23-10159.13-14. However, Appellee has never challenged Rule 59.10(b), which was adopted after he filed his lawsuit, in either an administrative procedure or before the district court. Instead, he specifically disavowed that he was bringing any kind of APA claim in this case or seeking that any rule be set aside. ROA 23-10159.395-96.

## II. The district court's improper remedy upends decades of settled expectations and requirements regarding how and when administrative policies and rules may be changed.

The district court's granting judgment in favor of Appellee is fatally flawed in myriad ways.[8] This brief focuses specifically on the remedy awarded by the district court.[9] In addition to entering two declaratory judgments in favor of Appellee on

---

[8] The Appellants' Brief persuasively explains these other flaws and EBTX will not retread all of the reasons Appellee's claims lack merit here.

[9] EBTX acknowledges that there is some debate about whether Section 706(2) creates a remedy or merely mandates a particular type of judicial review in certain circumstances. *See* John Harrison, Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies, 37 YALE J. ON REG. BULL. 37 (2020); *see also* Appellants' Brief at 50-51. For purposes of this brief, EBTX assumes that this Court's conclusion that vacatur under Section 706(2) is a remedy is correct. *See, e.g., Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2002). But the existence of a specific remedy under one

claims that were before it (which are improper for all of the reasons discussed by Appellants), the district court also held unlawful and set aside the second sentence of Rule 59.10(b), invoking Section 706(2)(A)-(C) of the APA.  ROA 23-10159.794.

The district court took this unusual action despite the facts that: (1) Appellee never pleaded an APA claim in this case or made any appropriate administrative challenge to Rule 59.10(b); (2) Appellee specifically disavowed that he was pursuing such a claim; and (3) the district court granted summary judgment to Appellee **in reliance** on this disavowal.  *See* ROA 23-10159.763.  But the APA's statutory remedies, like all statutory remedies, are limited to successful claims under the statute itself.  The district court's purported granting of an APA remedy in the abstract was both improper and unprecedented.

### A.    Statutory remedies require a successful statutory claim.

It is axiomatic that "[o]ne who seeks to avail himself of a special statutory remedy must comply with the conditions and time limits prescribed by the statute." *Dolezilek v. C.I.R.*, 212 F.2d 458, 460 (D.C. Cir. 1954); *see also U.S. ex rel. Tex. Portland Cement Co. v. McCord*, 233 U.S. 157, 162 (1914) ("The statute thus creates a new liability and gives a special remedy for it, and upon well-settled principles the limitations upon such liability become a part of the right conferred, and compliance

---

statute does not create a general remedy available for any and all claims asserted, regardless of source.

with them is made essential to the assertion and benefit of the liability itself."); *FleetBoston Fin. Corp. v. United States*, 483 F.3d 1345, 1349 (Fed. Cir. 2007) (affirming trial court determination that "FleetBoston was not eligible for that statutory remedy because it had not complied with the special requirements for relief under that provision"). To the extent vacatur under Section 706(2) is an available remedy, it is only a remedy available for a successful APA claim. No such claim was pleaded or litigated here.

**B.    Appellee did not prevail on any APA claim in the court below.**

Appellee did not bring a claim under the APA, and no provision of the APA is mentioned in his Complaint. ROA 23-10159.10-21. The Complaint does not seek any APA relief, and does not mention vacatur of any agency rule as a remedy – neither the phrase "set aside" nor the terms "vacatur" or "vacate" appears there. ROA 23-10159.20-21. And despite reaching for the specific remedy that the APA provides, the trial court did not enter judgment for Appellee on an APA claim. ROA 23-10159.819-25.

These omissions in pleading were not the result of inadequate diligence on Appellee's part; they were intentional. His own summary judgement argument demonstrates that it was essential to Appellee's strategy to bring a pure constitutional challenge seeking only prospective injunctive relief because he believed such a claim would not be barred by the APA's statute of limitations:

> [Appellee] is asking only for declaratory and injunctive
> relief to stop these unlawful acts from continuing; **he is
> not seeking any backward-looking relief to remedy or
> undo an action that occurred in the past**. The statute of
> limitations is simply inapplicable to claims that seek only
> prospective relief against the continued enforcement of an
> unlawful agency rule or policy.

ROA 23-10159.394 (emphasis added).  Appellee went even further in his summary

judgment motion, definitively imploring that "Mr. Deanda has not brought a 'facial

challenge' (or any type of 'challenge') to an agency rule, **and he is not asking this

court to 'hold unlawful or set aside' any agency rule under Section 706 of the

APA**."  ROA 23-10159.706; *see also* 23-10159.743.  The district court expressly

relied on this disavowal in granting summary judgment to Appellee:

> But Plaintiff does not bring a facial challenge to an agency
> rule.  Plaintiff only asks for a declaration of his rights
> under 28 U.S.C. § 2201, along with an injunction to ensure
> those rights are observed.
>
> Because Plaintiff only seeks prospective relief against the
> continued enforcement of unlawful statutes, rules, or
> policies, Section 2401(a) [the APA statute of limitations]
> is inapplicable to his claims.

ROA 23-10159.743.

After the district court granted Appellee summary judgment, he then adopted

exactly the opposite position, and in his proposed final judgment requested precisely

the remedy he previously disavowed – the backward looking, "set aside" remedy of

vacatur.  ROA 23-10159.776.  The district court gave Appellee that remedy, even

after its own acknowledgment that an APA claim could not be sustained on its merits.  ROA 23-10159.793-94.  Appellee did not merely hide the ball; he handed the ball back to the referee and said he did not want to play, stepped out of bounds, moved down the field on the sidelines, stepped into the endzone, and then asked the referee to throw him the ball.  The district court then credited him a touchdown.

Equity does not permit this kind of gamesmanship, and to allow it would damage the legitimacy of the judicial system.  Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996).  The doctrine "has three elements: (1) the party against whom estoppel is sought has asserted a position plainly inconsistent with a prior position, (2) a court accepted the prior position, and (3) the party did not act inadvertently." *Fornesa v. Fifth Third Mortgage Co.*, 897 F.3d 624, 627 (5th Cir. 2018).  All three of these elements are easily met here.

First, Appellee's proposed final judgment, which asked the district court to enter judgment that it "**HOLDS UNLAWFUL** and **SETS ASIDE**" an agency rule under Section 706 of the APA, is plainly inconsistent with his prior statement to the same court that "he is not asking the Court to 'hold unlawful or set aside' any agency rule under Section 706 of the APA."  ROA 23-10159.607.  The contradiction here is

not a matter of interpretation.  Appellee's requested relief is exactly what he assured the district court he was not asking for in nearly identical words.

Second, as noted above, the district court actually accepted Appellee's first argument that he was seeking only prospective injunctive relief, and not making an APA challenge seeking to set aside an agency rule, and ***on that basis*** decided that Appellee's claims were not subject to the APA statute of limitations.   ROA 23-10159.742-43.  Finally, it is simply not plausible that Appellee's prior inconsistent position was inadvertent.   The prior inconsistent position was a calculated and intentional part of his argument for evading a limitations defense to an APA claim.

EBTX acknowledges that Appellants did not specifically use the words "judicial estoppel" as a basis for precluding the relief Appellee ultimately obtained in the district court.  But Appellants had only five days from Appellee's notice of filing of his proposed final judgment (filed Dec. 15, 2022) until the district court entered judgment (Dec. 20, 2022), and that was the **only** time during which the direct inconsistency existed.[10]   Appellants also raised each and every element of judicial estoppel (without using those terms) in their briefing in support of their motion to strike Appellee's proposed final judgment (which raised related waiver defenses),

---

[10] To prohibit consideration of this equitable doctrine because Appellee's conduct dramatically truncated the period during which Appellants could consider how to respond would reward Appellee for his gamesmanship and further undermine the legitimacy of the judicial system.

so there is no prejudice to Appellee. ROA 23-10159.785-86. Moreover, this Court may consider the issue of judicial estoppel *sua sponte* in a particularly egregious case. *U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Tex.*, 944 F.2d 253, 258 (5th Cir. 1991) (citing *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990)). This is such a case.

In *Cassidy*, the Seventh Circuit case this Court cited for the proposition that *sua sponte* exercises of judicial estoppel are permissible, a party asked a court to specifically rule on a defense, obtained the desired ruling, and then argued in a later proceeding that the prior court had erred in issuing the ruling, in an effort to delay the judicial process. *Cassidy*, 892 F.2d at 641. The court applied judicial estoppel to protect judicial integrity. *Id.* The critical factors were the clear and unequivocal nature of the contradiction and the strategic litigation purpose underlying the inconsistency. *See id.*

Appellee's conduct in the district court is at least as egregious as the conduct at issue in *Cassidy*, since the litigant's inequitable strategy in *Cassidy* was implied, not express. Here, the inconsistency is unambiguous, and the strategy behind the inconsistency is spelled out in Appellee's own arguments below. His prior position was taken to avoid one of Appellants' defenses under the APA, and it was jettisoned to obtain exactly the relief Appellee had forsworn to avoid that defense. This kind of egregious abuse of the judicial process should not be countenanced by any court.

If this Court does not reverse the district court *in toto*, it should at least reverse the grant of any APA remedies under the doctrine of judicial estoppel to protect judicial integrity. Appellee must not be permitted to, "simply because his interests have changed, assume a contrary position." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895).

### C. The district court's improper inference of an APA claim is contrary to decades of settled law.

By improperly inferring an APA claim that was not pleaded or proved, and was actually disavowed, the district court also disregarded HHS's rulemaking authority, deprived HHS of the ability to defend its broad powers of rulemaking, and ignored settled precedent that requires a party challenging agency rules to exhaust their administrative remedies before seeking judicial review. This is especially relevant to agencies like EBTX and the clinics it funds through Title X. Their entire purpose and work in furtherance of the federal statute can be impacted and upended by determinations that are not based on the settled legal and regulatory frameworks, impacting hundreds of thousands of lives.

The threshold question of a district court's jurisdiction over an APA claim "requires the complaint meet the requirements of 5 U.S.C. § 704." *Fort Bend County v. U.S. Army Corps of Engineers*, 59 F.4th 180, 192 (5th Cir. 2023) (citing *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018)). "Section 704 provides for judicial review only of '[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *Id.* (holding the parties

could not rely on Takings Clause to plead APA claims); *see also Martinez v. Pompeo*, 977 F.3d 457, 460 (5th Cir. 2020) (per curiam) ("[a] legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of the opportunity to pursue that remedy."). Here, those issues were not raised or briefed precisely because no APA claim was alleged.

Moreover, to bring, maintain, and prevail on a claim under the APA, Appellee was required to exhaust his administrative remedies. As this Court has long recognized, "[n]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. *In re Willy*, 831 F.2d 545, 546 (5th Cir. 1987), *aff'd sub nom. Willy v. Coastal Corp.*, 503 U.S. 131 (1992) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)); *see also Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980) ("Under the rule requiring exhaustion of administrative remedies prior to judicial review, a party may not ask a court to rule on an adverse administrative determination until he has availed himself of all possible remedies within the agency itself."). Appellee nowhere alleged or offered any evidence that he ever pursued any administrative remedies with respect to his claims. Instead, he claimed that he was not challenging any HHS rule under the APA.

- 14 -

In addition to being a condition precedent that deprived the court below of jurisdiction and the ability to enter an APA remedy, the exhaustion of remedies doctrine's "major purpose . . . is to prevent the courts from interfering with the administrative process until it has reached a conclusion." *Von Hoffburg*, 615 F.2d at 637; *see also Tesoro Ref. & Mktg. Co. v. FERC*, 552 F.3d 868, 875 (D.C. Cir. 2009) ("One of the purposes of the exhaustion doctrine is 'protecting administrative agency authority.'").  "When administrative channels are bypassed, subsequent judicial review may be hindered by the litigant's failure to allow the agency to make a factual record, exercise its discretion, or apply its expertise." *Von Hoffburg*, 615 F.2d at 637. Additionally, "notions of administrative autonomy require that an agency be given the opportunity to discover and correct its own errors before a court is called to render judgment."  *Id.*  And "frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."  *Id.*; *see also Mercy Hosp. of Laredo v. Heckler*, 777 F.2d 1028, 1033 (5th Cir. 1985).

The district court's decision to vacate a portion of a final HHS rule that was not challenged under the APA by Appellee is precisely the kind of "deliberate flouting of administrative processes" that this Court warns against.  Overnight, a single district court judge purported to eliminate a portion of a rule that had gone through the designated rulemaking process, had never been challenged by Appellee

before the agency, and specifically was not challenged by Appellee before the district court. If the district court's judgment below is allowed to stand, any of the 673 district judges across the country would similarly be imbued with the power to vacate any agency rule with no notice, no limitations, no development of a factual record, no review of the relevant agency record, and no requirement that any agency first be given the opportunity to respond to any complaints about its own rules. Such upending of the administrative process is both unprecedented and improper.

### III. EBTX is charged with ensuring that all of its sub-recipients comply with federal law and HHS's policies and rules and the district court's purported vacatur of an HHS Rule with no advance notice threatens EBTX with chaotic and competing obligations.

All recipients of Title X funds, including subrecipients and service sites operating under the Title X recipient project, "must comply with the expectations regarding the provision of family planning services that can be found in the statute [42 U.S.C. §300 et. seq.], the implementing regulations [42 CFR Part 59, Subpart A], and any applicable legislative mandates, and are expected to comply with additional program guidance." HHS Office of Population Affairs, Title X Program Handbook, July 2022 at 7, *available at* https://opa.hhs.gov/sites/default/files/2022-07/title-x-program-handbook-july-2022-508.pdf (last visited May 1, 2023). As a statewide administrator for Texas, EBTX must also monitor and oversee its sub-recipients to ensure their compliance with federal law, regulations, and agency policies and directives. *Id*. at 22-24; *see also* 45 CFR §75.352.

EBTX currently supports a network of over 31 agencies with more than 154 clinic sites across the state, and relies on the normal order of the administrative process to both understand and implement Title X's requirements. It must make staffing, resource allocations, and sub-grant decisions in reliance on HHS's rules and policies, often months or years in advance.

Since 2013, EBTX has followed the longstanding requirements to ensure that its sub-recipients (1) encourage family participation for minor patients to the extent practical but (2) do not deny services to minors who cannot involve a parent or guardian in their decision making processes. The district court's decision in this case to vacate the second sentence of Rule 59.10(b) when no challenge was made before the agency and no APA claim was asserted by Appellee, if upheld, would require EBTX and all of its sub-recipients to significantly change multiple levels of operations, ignore decades of settled legal precedent, and deny care to thousands of adolescents in direct violation of Congress's express mandates.

Such massive shifts are never easy. Nor does EBTX believe that any such shift is necessary in this case given the settled law on all of the relevant issue and the many fatal legal flaws in Plaintiff's claims. *See generally* Appellants' Brief. But to the extent any shift is actually required, it should come only through an orderly process of transparency, first with a challenge at the agency level and then with full briefing and development of an appropriate record. None of that happened here. As

a matter of settled law, fundamental fairness, and simply functional government, the district court's judgment cannot stand. To permit otherwise would be to imbue the judiciary with a power it does not have and to ignore the rule of law.

## CONCLUSION

The district court's decision upends decades of settled law, clear Congressional mandates, and unambiguous executive and regulatory direction without any reference to any actual legal claim before it. To affirm the district court's judgment in this case would require this Court to abandon its own precedent, reward blatant gamesmanship and misrepresentations by Appellee to the district court, and ignore the settled and proper authority exercised by HHS, at Congress's direction, for over 40 years. It would also wreak havoc on the settled expectations of EBTX and its hundreds of subgrantees, and the rights of millions of Texas adolescents. Regardless of political affiliation or view, our judicial system mandates adherence to the settled doctrines that govern the evaluation of claims before the courts.

EBTX respectfully submits that no district court has the power to ignore clear and longstanding directives from all three branches of the government or to fashion a remedy outside of the actual claims properly before it. The district court's judgment should be reversed.

Dated: May 1, 2023

Respectfully submitted,

*/s/Jennifer R. Ecklund*

**THOMPSON COBURN LLP**
Jennifer R. Ecklund
Texas Bar No. 24045626
jecklund@thompsoncoburn.com

Elizabeth G. Myers
Texas Bar No. 24047767
emyers@thompsoncoburn.com

2100 Ross Avenue, Suite 3200
Dallas, Texas 75201
Telephone: 972/629-7100
Facsimile: 972/629-7171

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that on May 1, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit via the Court's CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, I hereby certify that according to the word count feature of the word processing program used to prepare this brief, the brief contains 4,259 words and complies with the typeface requirements and length limits of Rules 27, 29, and 32(a)(5)-(7) and the corresponding local rules.

Dated: May 1, 2023

_/s/Jennifer R. Ecklund_
Jennifer R. Ecklund