No. 23-10159

# In the United States Court of Appeals for the Fifth Circuit

―――――――――――――――

ALEXANDER R. DEANDA, on Behalf of Himself and Others Similarly Situated,

*Plaintiff - Appellee,*

v.

XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; JESSICA SWAFFORD MARCELLA, in her official capacity as Deputy Assistant Secretary for Population Affairs; UNITED STATES OF AMERICA,

*Defendants - Appellants.*

―――――――――――――――

On Appeal from the United States District Court for the Northern District of Texas

―――――――――――――――

**BRIEF OF *AMICI CURIAE* AMERICAN ACADEMY OF PEDIATRICS, AMERICAN MEDICAL ASSOCIATION, AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, AND SOCIETY FOR ADOLESCENT HEALTH AND MEDICINE IN SUPPORT OF DEFENDANTS–APPELLANTS AND REVERSAL**

―――――――――――――――

Jeffrey B. Dubner
Maher Mahmood
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
jdubner@democracyforward.org
*Counsel for Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS

No. 23-10159
*Deanda v. Becerra, et al.*

The undersigned counsel of record certifies that, in addition to the persons and entities identified in the certificates filed by the parties and *amici*, the following listed persons and entities are described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of the case.

These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

A.    Movant **American Academy of Pediatrics** is a non-profit, tax-exempt organization. It has no parent company, and no publicly held company has any ownership interest in it of any kind.

B.    Movant **American Medical Association** is a non-profit, tax-exempt organization. It has no parent company, and no publicly held company has any ownership interest in it of any kind.

C.    Movant **American College of Obstetricians and Gynecologists** is a non-profit, tax-exempt organization. It has no parent company, and no publicly held company has any ownership interest in it of any kind.

i

D.     Movant **Society for Adolescent Health and Medicine** is a non-profit, tax-exempt organization. It has no parent company, and no publicly held company has any ownership interest in it of any kind.


**Counsel for**
***Amici Curiae*:**

Jeffrey B. Dubner
Maher Mahmood
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043

Dated: May 1, 2023

 */s/ Jeffrey B. Dubner*
JEFFREY B. DUBNER

*Counsel of record for Amici Curiae*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................... iii

TABLE OF AUTHORITIES ................................................................... iv

INTEREST OF AMICI CURIAE ............................................................ 1

ARUGMENT ........................................................................................... 3

    I. While Parental Consent for Medical Treatment of Minors Is Preferred and Appropriate in Most Cases, the Medical Consensus Is That Confidential Contraception Should Be Available to Adolescents. ............................................................... 5

    II. Minor Consent to Certain Types of Medical Care, Often Without Parental Notification, Is Well-Established Across the Country. ........................................................................................ 15

    III. Minors Have Rights to Access Health Care Including Contraception That Must Be Respected. ....................................... 23

CONCLUSION ...................................................................................... 24

CERTIFICATE OF COMPLIANCE ..................................................... 26

CERTIFICATE OF SERVICE .............................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Curtis v. Sch. Comm. of Falmouth,*
  652 N.E.2d 580 (Mass. 1995) ............................................................. 23

*Parents United for Better Schs., Inc. v. Sch. Dist. of*
  *Philadelphia Bd. of Educ.,*
  148 F.3d 260 (3d Cir. 1998) .............................................................. 22

*Planned Parenthood Ass'n of Utah v. Mattheson,*
  582 F. Supp. 1001 (D. Utah 1983) ................................................... 22

*Prince v. Massachusetts,*
  321 U.S. 158 (1944) ........................................................................... 24

*T.H. v. Jones,*
  425 F. Supp. 873 (D. Utah 1975) ..................................................... 23

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
  393 U.S. 503 (1969) ........................................................................... 25

**Statutes**

42 U.S.C. § 300(a) ............................................................................ 4, 14

Ala. Code §§ 22-8-4, 22-8-7 (1975) ...................................................... 16

Alaska Stat. § 25.20.025 (1975) ............................................................ 17

Ariz. Op. Att'y Gen. No. 77-37 (1977) .................................................. 17

Ariz. Rev. Stat. § 44-132 (1962) ........................................................... 16

Ark. Code Ann. § 20-16-304 (1973) ....................................................... 18

Cal. Civ. Code Ann. §§ 56.10, 56.11 (West 2022) ................................. 21

Cal. Fam. Code § 6925 (West 1992) ...................................................... 18

Colo. Rev. Stat. § 25-6-102 (2021) ........................................................ 18

D.C. Mun. Regs. Tit. 22, § 600.7 (1963) .............................................. 18

Fla. Stat. Ann. § 381.0051 (West 2012) ................................................ 20

Ga. Code Ann. § 31-9-2 (2022) .............................................................. 18

Idaho Code Ann. § 18-603 (West 1974) ................................................ 18

325 Ill. Comp. Stat. § 10/1 (1976) ......................................................... 20

Iowa Code Ann. § 141A.7 (West 2022) ................................................. 18

Ky. Rev. Stat. Ann. § 214.185 (2021) .................................................... 18

Mass. Gen. Laws Ann. ch. 111, § 24E (West 1990) ............................. 18

Md. Code Ann., Health-Gen. § 20-102 (West 2020) ............................ 18

Me. Rev. Stat. Ann. tit. 22, § 1505 (West 1995) .................................. 21

Me. Rev. Stat. Ann. tit. 22, § 1902 (West 2019) .................................. 18

Me. Rev. Stat. Ann. tit. 22, § 1908 (West 2019) .................................. 18

Mont. Code Ann. § 41-1-402 (West 2003) ............................................ 19

N.C. Gen. Stat. Ann. § 90-21.4 (West 1985) ........................................ 21

N.C. Gen. Stat. Ann. § 90-21.5 (West 2021) ........................................ 19

N.M. Stat. Ann. § 24-8-5 (West 2015) .................................................. 19

N.Y. Pub. Health Law § 2515 (McKinney 2015) ................................. 19

Op. Att'y Gen. 494-b-39 (1972) ............................................................ 19

Or. Rev. Stat. Ann. § 109.640 (West 2021) .......................................... 19

35 Pa. Cons. Stat. Ann. § 10101 (1970) ................................................ 19

35 Pa. Cons. Stat. Ann. § 10103 (1970) ................................................ 19

Tenn. Code Ann. § 68-34-107 (West 1971) ................................................ 19

Tex. Fam. Code Ann. § 32.003(2)(A) (West 2007) ................................... 21

Va. Code Ann. § 54.1-2969(E) (West 2022) ............................................ 19

Wash. Rev. Code Ann. § 9.02.100 (West 2022) ...................................... 20

Wyo. Stat. Ann. § 42-5-101 (West 1991) ................................................ 20

**Other Authorities**

AAP, *Confidentiality Protections for Adolescents and Young Adults in the Health Care Billing and Insurance Claims Process: Statement of Endorsement*, 137 Pediatrics 5 (2016) ............................................................................................ 7

Abigail English et al., *State Minor Consent Laws: A Summary* (3d ed., 2010) .......................................................... 15, 16, 17

ACOG, *Confidentiality in Adolescent Health Care: ACOG Committee Opinion, No. 803*, ACOG Clinical, May 2014 ............. 8, 12

*Adolescent Health: Coverage and Access to Care, Wo'en's Issue Brief*, Kaiser Family Foundation, Oct. 2011 ........................... 10

Arash Anoshiravani et al., *Special requirements for electronic medical records in adolescent medicine*, 51 J. Adolescent Health 409 (2012) ........................................................... 10

Carol Ford et al., *Confidential Health Care for Adolescents: Position Paper of the Society for Adolescent Medicine*, 35 J. Adolescent Health 160 (2004) ........................................................ 7, 11

Carol Ford et al., *Influence of Physician Confidentiality Assurances on Adolescents' Willingness to Disclose Information and Seek Future Health Care: A Randomized Controlled Trial*, 278 JAMA 1029 (1997) ................................. 9, 10, 11

Diane Reddy et al., *Effect of Mandatory Parental Notification on Adolescent Girls' Use of Sexual Health Care Services*, 288 JAMA 710 (2002) ................................................................. 13, 14

Elizabeth M. Alderman & Cora C. Breuner, *Unique Needs of the Adolescent: Policy Statement*, 144 Pediatrics 6 (2019)..... 5, 8, 9, 24

Jonathan Klein et al., *Access to Medical Care for Adolescents: Results from the 1997 Commonwealth Fund Survey of the Health of Adolescent Girls*, 25 J. Adolescent Health 120 (1999) ................................................................. 11

Kimberly Sawyer et al., *How Should Adolescent Health Decision-Making Authority Be Shared?*, 22 AMA J. Ethics 372 (2020)........................................................... 8

Liza Fuentes et al., *Adolescents' and Young Adults' Reports of Barriers to Confidential Health Care and Receipt of Contraceptive Services*, 62 J. Adolescent Health. 36 (2018) ............... 8

Lois A. Weithorn & Dorit R. Reiss, *Providing Adolescents with Independent and Confidential Access to Childhood Vaccines: A Proposal to Lower the Age of Consent*, 52 Conn. L. Rev. 771 (2020)................................... 15

Marianne Sharko et al., *State-by-State Variability in Adolescent Privacy Laws*, 149 Pediatrics 6 (2022) ........................... 15

Mary A. Ott et al., *Contraception for Adolescents: Technical Report*, 134 Pediatrics 1257 (2014).......................................... 6, 11, 12

*Minors' Access to Prenatal Care*, Guttmacher Inst. https://www.guttmacher.org/state-policy/explore/minors-access-prenatal-care ........................................................... 17, 20, 21

Pamela Burke et al., *Sexual and Reproductive Health Care: Position Paper of the Society for Adolescent Health and Medicine*, 54 J. Adolescent Health 491 (2014) .................................... 7

Paula K. Braverman et al., *Contraception for Adolescents: Policy Statement*, 134 Pediatrics 1244 (2014) ................................ 6, 14

vii

*Pregnancies, Births and Abortions Among Adolescents and Young Women in the United States, 2013: National and State Trends by Age, Race and Ethnicity,* Guttmacher Inst., https://www.guttmacher.org/report/us-adolescent-pregnancy-trends-2013 ...................................................................... 12

Rachel Jones et al., *Adolescents' Reports of Parental Knowledge of Adolescents' Use of Sexual Health Services and Their Reactions to Mandated Parental Notification for Prescription Contraception*, 293 JAMA 340 (2005) ............... 13, 14

Richard C. Boldt, *Adolescent Decision Making: Legal Issues with Respect to Treatment for Substance Misuse and Mental Illness*, 15 J. Health Care L. & Pol'y 75 (2012)...................... 16

Ryan H. Pasternak et al., *21st Century Cures Act ONC Rule: Implications for Adolescent Care and Confidentiality Protections*, Pediatrics, April 2023 .................................................... 22

SAHM, *Confidentiality Protections for Adolescents and Young Adults in the Health Care Billing and Insurance Claims Process: Position Paper of the Society for Adolescent Health and Medicine and the American Academy of Pediatrics*, 58 J. Adolescent Health 374 (2016)............... 7

*Sexual Behavior and Contraception and Condom Use Among U.S. High School Students, 2013-2017*, Guttmacher Inst. https://www.guttmacher.org/report/sexual-behavior-contraceptive-condom-use-us-high-school-students-2013-2017 ................................................................................................. 11

Sofya Maslyanskaya & Elizabeth M. Alderman, *Confidentiality in the Care of the Adolescent Patient*, 40 Pediatrics In Review 508 (2019).................................................... 6, 10

*State Laws That Enable a Minor to Provide Informed Consent to Receive HIV and STD Services*, CDC, https://www.cdc.gov/hiv/policies/law/states/minors.html .................. 16

Stephanie A. Grilo et al. *Confidentiality Discussions and Private Time With a Health-Care Provider for Youth, United States, 2016*, 64 J. Adolescent Health 311 (2019)....................8

Susan Hayden Gray et al., *Recommendations for Electronic Health Record Use for Delivery of Adolescent Health Care: Position Paper of the Society for Adolescent Health and Medicine*, 54 J. Adolescent Health 487 (2014) ....................................7

Timothy Stablein et al., *The Catch to Confidentiality: The Use of Electronic Health Records in Adolescent Health Care*, 62 J. Adolescent Health 577 (2018) ..........................................8

## INTEREST OF *AMICI CURIAE*[1]

The American Academy of Pediatrics (AAP), founded in 1930, is a national not-for-profit professional organization dedicated to furthering the interests of child and adolescent health. AAP's membership includes over 67,000 primary care pediatricians, pediatric medical subspecialists, and pediatric surgical specialists. Among other things, AAP has worked with the federal and state governments, health care providers, and parents on behalf of America's children and adolescents to ensure access to safe and effective healthcare, including contraception and other reproductive services.

The American Medical Association (AMA) is the largest professional association of physicians, residents, and medical students in the United States. Additionally, through state and specialty medical societies and other physician groups seated in its House of Delegates, substantially all physicians, residents, and medical students in the United States are represented in the AMA's policy-making process. The

---

[1] No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund this brief, and no person other than *Amici*, their members, and their counsel contributed money to fund this brief. All parties consent to the filing of this brief.

AMA was founded in 1847 to promote the art and science of medicine and the betterment of public health, and these remain its core purposes. AMA members practice in every medical specialty and in every state, including in Texas.

The American College of Obstetricians and Gynecologists (ACOG) represents more than 90% of board-certified obstetrician-gynecologists (OB/GYNs) in the United States. ACOG is committed to ensuring access for all people to the full spectrum of evidence-based quality reproductive health care and is a leader in the effort to confront the maternal mortality crisis in the United States. ACOG has previously appeared as *amicus curiae* in various courts throughout the country, and ACOG's briefs and guidelines have been cited by numerous courts as the authoritative voice of science and medicine relating to obstetric and gynecologic health care.

Founded in 1968, the Society for Adolescent Health and Medicine ('SAHM) is a multidisciplinary organization committed to the promotion of optimal health and well-being for all adolescents and young adults by supporting adolescent health and medicine professionals through the advancement of clinical practice, care delivery, research, advocacy, and professional development.

# ARGUMENT

Generally, involving both minors and parents or guardians in medical decision-making is a central tenet of adolescent medical practice. However, the medical community, backed by decades of research and experience, recognizes that parental involvement is not necessarily advisable for every adolescent patient in every situation. Established medical best practice recommends discussing confidentiality with minor patients and their families, ensuring opportunities for private conversation with adolescents, and providing confidential care when appropriate.

The medical consensus is that adolescents should be provided confidential contraceptive care, as permitted by law, with adolescents encouraged to involve parents or trusted adults. This approach has been shown to increase adolescents' willingness to disclose essential information to their providers and to seek needed care, ultimately reducing the risk of unintended pregnancies, abortions, and untreated sexually transmitted infections. The Title X Family Planning Program approach of requiring funded clinics to "encourage" family participation in family planning services for adolescents—but only to the extent

"practical"—respects the careful balance recommended by the medical community. *See* 42 U.S.C. § 300(a).

This brief provides information relevant to Plaintiff's claim that parents have an absolute substantive due process right to prevent the availability of confidential medical care, such as contraception. Plaintiff's claim is contrary to both medical practice and the legal framework most states have adopted. Accepted medical practice for adolescent care is to promote family involvement but to prioritize confidentiality in various circumstances, including in matters of sexual health. All 50 states and the District of Columbia have historically enacted laws that permit minors to consent to healthcare under at least some circumstances, and contraception is a common allowance.

As HHS explains in its brief, while courts have recognized certain parental rights, they are not as absolute or extensive as Plaintiff claims,[2] and minors themselves have rights that the government must respect. Substantive due process only protects rights that are so deeply rooted as to be considered "fundamental." The medical consensus and the practices

---

[2] Appellant Br. 36–47, Doc. 18.

in many states belie Plaintiff's claim with respect to contraception for adolescents.

## I.    While Parental Consent for Medical Treatment of Minors Is Preferred and Appropriate in Most Cases, the Medical Consensus Is That Confidential Contraception Should Be Available to Adolescents.

Combined, *Amici* represent the vast majority of the nation's physicians, pediatricians, and other medical professionals involved in providing medical care to minors. They have done extensive work to understand and communicate the medical expert consensus on care for adolescents, including contraception care.

AAP has published several Policy Statements relevant to parental notification and adolescent consent to contraception, including statements on the unique needs of adolescents,[3] contraception for

---

[3] Elizabeth M. Alderman & Cora C. Breuner, *Unique Needs of the Adolescent: Policy Statement*, 144 Pediatrics 6 (2019) ("Adolescent Policy Statement"), https://publications.aap.org/pediatrics/article/144/6/e20193150/37985/Unique-Needs-of-the-Adolescent.

adolescents,[4] and achieving quality health services for adolescents.[5] AAP's Policy Statements are written by recognized pediatrician experts after a comprehensive review of the data and medical literature, then peer-reviewed by other experts. These Policy Statements are widely relied upon in the treatment of minors. Additionally, AAP has issued a technical report on contraception for adolescents,[6] published articles on confidentiality and consent in the care of adolescents,[7] and endorsed

---

[4] Paula K. Braverman et al., *Contraception for Adolescents: Policy Statement*, 134 Pediatrics 1244 (2014) ("Contraception Policy Statement"), https://publications.aap.org/pediatrics/article/134/4/e1244/32981/Contraception-for-Adolescents.

[5] William Adelman et al., *Achieving Quality Health Services for Adolescents: Policy Statement*, 138 Pediatrics 2 (2016) ("Quality Care Policy Statement"), https://publications.aap.org/pediatrics/article/138/2/e20161347/52468/Achieving-Quality-Health-Services-for-Adolescents.

[6] Mary A. Ott et al., *Contraception for Adolescents: Technical Report*, 134 Pediatrics 1257 (2014) ("Contraception Technical Report"), https://publications.aap.org/pediatrics/article/134/4/e1257/33010/Contraception-for-Adolescents.

[7] Sofya Maslyanskaya & Elizabeth M. Alderman, *Confidentiality in the Care of the Adolescent Patient*, 40 Pediatrics In Review 508 (2019), https://publications.aap.org/pediatricsinreview/article-abstract/40/10/508/35205/Confidentiality-and-Consent-in-the-Care-of-the.

policies on adolescent confidentiality.[8] SAHM has issued Position Papers on confidential health care for adolescents,[9] including confidentiality in billing and insurance claims[10] and electronic health records,[11] as well as on sexual health services.[12] SAHM also has published numerous studies and commentaries on the role of confidentiality in adolescent health

---

[8] AAP, *Confidentiality Protections for Adolescents and Young Adults in the Health Care Billing and Insurance Claims Process: Statement of Endorsement*, 137 Pediatrics 5 (2016), https://publications.aap.org/pediatrics/article/137/5/e20160593/52144/Confidentiality-Protections-for-Adolescents-and.

[9] Carol Ford et al., Confidential Health Care for Adolescents: Position Paper of the Society for Adolescent Medicine, 35 J. Adolescent Health 160 (2004), https://www.adolescenthealth.org/SAHM_Main/media/Advocacy/Positions/Aug-04-Confidential_Health_Care_for_Adolescents.pdf.

[10] SAHM, Confidentiality Protections for Adolescents and Young Adults in the Health Care Billing and Insurance Claims Process: Position Paper of the Society for Adolescent Health and Medicine and the American Academy of Pediatrics, 58 J. Adolescent Health 374 (2016), https://www.jahonline.org/article/S1054-139X(15)00723-5/fulltext.

[11] Susan Hayden Gray et al., Recommendations for Electronic Health Record Use for Delivery of Adolescent Health Care: Position Paper of the Society for Adolescent Health and Medicine, 54 J. Adolescent Health 487 (2014), https://www.jahonline.org/article/S1054-139X(14)00053-6/fulltext.

[12] Pamela Burke et al., Sexual and Reproductive Health Care: Position Paper of the Society for Adolescent Health and Medicine, 54 J. Adolescent Health 491 (2014), https://www.jahonline.org/article/S1054-139X(14)00052-4/fulltext.

care.[13] And ACOG has issued opinions on confidentiality in adolescent healthcare.[14]

The medical consensus recommendation for treating adolescents is an "adolescent-centered, family-involved" approach.[15] Both the adolescent and the parents should generally be involved in medical decision-making, recognizing that different families will share responsibility for decisions in different ways.[16] But providers should discuss confidentiality with patients, ensure time for private

---

[13] *E.g.*, Liza Fuentes et al., *Adolescents' and Young Adults' Reports of Barriers to Confidential Health Care and Receipt of Contraceptive Services*, 62 J. Adolescent Health. 36 (2018), https://www.jahonline.org/article/S1054-139X(17)30508-6/fulltext; Stephanie A. Grilo et al. Confidentiality *Discussions and Private Time With a Health-Care Provider for Youth, United States, 2016*, 64 J. Adolescent Health 311 (2019), https://www.jahonline.org/article/S1054-139X(18)30783-3/fulltext; Timothy Stablein et al., *The Catch to Confidentiality: The Use of Electronic Health Records in Adolescent Health Care*, 62 J. Adolescent Health 577 (2018), https://www.jahonline.org/article/S1054-139X(17)30868-6/fulltext.

[14] ACOG, *Confidentiality in Adolescent Health Care: ACOG Committee Opinion, No. 803*, ACOG Clinical, May 2014, https://www.acog.org/clinical/clinical-guidance/committee-opinion/articles/2020/04/confidentiality-in-adolescent-health-care.

[15] *Adolescent Policy Statement, supra* n.3 at 3.

[16] Kimberly Sawyer et al., *How Should Adolescent Health Decision-Making Authority Be Shared?*, 22 AMA J. Ethics 372 (2020); ACOG, *supra* n.14.

conversation with the adolescent patient, and, where appropriate, provide confidential screening and treatment.[17]

Adolescence is a critical period of development, filled with pivotal biological, cognitive, and emotional changes and marked by a gradual development toward autonomy and adult decision-making.[18] Adolescents are often faced with new social situations, and many engage in behaviors such as drinking alcohol, use of drugs and tobacco, and having unprotected sex.[19] These behaviors can lead to such things as car crashes, sexually transmitted infections, and unintended pregnancy. Adolescents may also face issues such as depression, anxiety, and substance use disorders[20] Additionally, unmet health needs during adolescence are predictive of poor health outcomes and lower quality of life in adulthood.[21] It is thus crucial to ensure that adolescents receive developmentally appropriate screening and care.

---

[17] *Id.*

[18] *Adolescent Policy Statement, supra* n.3 at 3.

[19] *Id.*, at p.2.

[20] Carol Ford et al., *Influence of Physician Confidentiality Assurances on Adolescents' Willingness to Disclose Information and Seek Future Health Care: A Randomized Controlled Trial*, 278 JAMA 1029, 1033 (1997).

[21] *Adolescent Policy Statement, supra* n.3 at 2.

A substantial body of research reveals that confidentiality is a key factor in screening adolescents for medical needs, particularly related to sensitive topics such as mental health, substance use, and sexual health.[22] Privacy concerns are pervasive in all health care, and those who treat adolescents recognize that confidentiality affects quality care for this population.[23] Research shows that one of the main barriers to adolescent healthcare is a minor's fear that health care providers will share confidential health information with parents and guardians.[24] Some teens will withhold information about themselves, delay care, or not seek help at all in order to keep their parents from finding out about a health need.[25] In two large national surveys, approximately one-quarter of middle and high school students reported that they did not

---

[22] Maslyanskaya, *supra* n.7.

[23] Arash Anoshiravani et al., *Special requirements for electronic medical records in adolescent medicine*, 51 J. Adolescent Health 409, 412–13 (2012), https://www.jahonline.org/article/S1054-139X(12)00335-7/fulltext.

[24] *Adolescent Health: Coverage and Access to Care, Women's Issue Brief*, Kaiser Family Foundation, Oct. 2011, at 2, https://www.kff.org/wp-content/uploads/2013/01/8236.pdf; *see also* Ford, *Influence of Physician Confidentiality Assurances, supra* n.20.

[25] Kaiser Family Foundation, *supra* n.24 at 2.

seek health care they needed,[26] and in one of these studies, 35% of the students who did not seek care reported that one reason was "not wanting to tell their parents."[27] However, assurances of confidentiality increase adolescent willingness to discuss sensitive subjects and to return for future healthcare.[28]

One reason access to sexual and reproductive healthcare for adolescents is important is because sexual intercourse is common among adolescents. As many as half of high school students have engaged in sex intercourse, many without adequate protection against pregnancy and sexually transmitted infections.[29] Unintended pregnancy is a serious

---

[26] Jonathan Klein et al., *Access to Medical Care for Adolescents: Results from the 1997 Commonwealth Fund Survey of the Health of Adolescent Girls*, 25 J. Adolescent Health 120 (1999), https://www.jahonline.org/article/S1054-139X(98)00146-3/fulltext; Carol A. Ford et al., *Foregone Health Care Among Adolescents*, 282 JAMA 2227 (1999), https://jamanetwork.com/journals/jama/fullarticle/192208.

[27] Ford, *Confidential Health Care for Adolescents*, *supra* n.9 at 162; Klein et al., supra n.26.

[28] Ford, *Influence of Physician Confidentiality*, *supra* n.20 1033.

[29] Contraception Technical Report, *supra* n.6 at 1257–1258 (data from 2011, showing over half of surveyed adolescents had engaged in sex); *Sexual Behavior and Contraception and Condom Use Among U.S. High School Students, 2013-2017*, Guttmacher Inst. https://www.guttmacher.org/report/sexual-behavior-contraceptive-condom-use-us-high-school-students-2013-2017 (last updated Mar. 1,

risk—each year, approximately 750,000 teens become pregnant, with more than half ending in births, 14% ending in miscarriage, and 27% ending in abortion.[30] Contraception use is responsible for the marked decline (of nearly two-thirds from the peak in 1990) of adolescent pregnancy rates in the prior decades.[31]

Adolescents who believe their healthcare provider will maintain confidentiality are more likely than other teens to discuss pregnancy prevention and sexually transmitted infections (as well as other sensitive topics such as substance use) with that provider.[32] Many adolescents who seek sexual healthcare services do tell their parents, but many do not. Their reasons vary, but include concerns over telling parents they have sex, discomfort over discussing sex with parents, and fear of punishment

---

2023) (reporting a decrease in sexual intercourse among minors, to approximately 40% in 2017).

[30] Contraception Technical Report, *supra* n.6 at 1258.

[31] Contraception Technical Report, *supra* n.6 at 1257–1258; *Pregnancies, Births and Abortions Among Adolescents and Young Women in the United States, 2013: National and State Trends by Age, Race and Ethnicity,* Guttmacher Inst., https://www.guttmacher.org/report/us-adolescent-pregnancy-trends-2013 (last updated Mar. 1, 2023) (the U.S. pregnancy rate among 15-19-year-olds had dropped to just above one-third of the peak in 1990).

[32] ACOG, *supra* n.14.

or abuse,[33] as well as a desire to be self-sufficient and not wanting to disappoint parents.[34]

Studies have also shown that many sexually active girls who obtain sexual healthcare services would stop using prescribed contraception and stop seeking testing and treatment for sexually transmitted infections if parental notification were required.[35] Importantly, however, the vast majority of affected girls would nonetheless continue to have sexual intercourse.[36] While some would switch to over-the-counter contraception methods, one study showed that 18% of teens whose parents did not know they were visiting a clinic for sexual healthcare would engage in sexual behavior without contraception if parental notification were required for

---

[33] Rachel Jones et al., *Adolescents' Reports of Parental Knowledge of Adolescents' Use of Sexual Health Services and Their Reactions to Mandated Parental Notification for Prescription Contraception*, 293 JAMA 340, 343 (2005), https://jamanetwork.com/journals/jama/fullarticle/200191.

[34] *Id.*

[35] Diane Reddy et al., *Effect of Mandatory Parental Notification on Adolescent Girls' Use of Sexual Health Care Services*, 288 JAMA 710 (2002), https://jamanetwork.com/journals/jama/fullarticle/195185. For example, one study found that 59% of the teenage girls using sexual health services at a clinic in Wisconsin would stop or delay using the clinic's services if parental notification were required. *Id.* at 713.

[36] *Id.*

prescription contraception.[37] Requiring parental notification for prescription contraception thus increases the risk of unintended pregnancies, abortions, and untreated sexually transmitted infections.[38]

For these reasons, medical best practices guidelines recommend confidentiality protections for care related to sexual activity, sexually transmitted infections, and contraception.[39] Adolescents should be provided confidential contraception care, as permitted by law, with adolescents encouraged to involve parents or trusted adults whenever it is possible and safe for them to do so.[40]

The Title X framework is consistent with this medical consensus. Clinics funded through the program must make family planning services available to adolescents. 42 U.S.C. § 300(a). And they must "encourage" family participation "to the extent practical." *Id.* This provision allows the medical provider to provide confidential care, including contraception, but also to encourage adolescents to involve a parent or trusted adult. Many adolescents will choose to involve their parents. The

---

[37] Jones, *supra* n.33 at 345.

[38] Reddy, *supra* n.35.

[39] Contraception Policy Statement, *supra* n.4.

[40] *Id.*

Title X approach, however, ensures that those who do not will nonetheless have access to care.

## II. Minor Consent to Certain Types of Medical Care, Often Without Parental Notification, Is Well-Established Across the Country.

State law has traditionally supported minor consent and confidentiality, especially where the treatments concern substance use, mental health, or sexual activity. While the precise laws vary, all 50 states and the District of Columbia have enacted laws that permit minors to consent to at least some health care under specific circumstances.[41] There are two overlapping categories: those based on the status of the minor and those based on the type of care.[42] Some of these laws allow minors to consent to all or most of their own health care once they have reached a certain age, or where the minors are effectively independent

---

[41] *See* Abigail English et al., *State Minor Consent Laws: A Summary* 2 (3d ed., 2010); Lois A. Weithorn & Dorit R. Reiss, *Providing Adolescents with Independent and Confidential Access to Childhood Vaccines: A Proposal to Lower the Age of Consent*, 52 Conn. L. Rev. 771, 808 (2020), https://repository.uchastings.edu/faculty_scholarship/1812.; Marianne Sharko et al., *State-by-State Variability in Adolescent Privacy Laws*, 149 Pediatrics 6 (2022), https://publications.aap.org/pediatrics/article/149/6/e2021053458/18700 3/State-by-State-Variability-in-Adolescent-Privacy.

[42] State Minor Consent Laws, *supra* n.41 at 2.

from their parents or guardians (such as minors who are married, have joined the military, or are unaccompanied homeless youth).[43]

Most relevant here, many state laws authorize minors to give their own consent for one or more particular types of treatment.[44] Covered treatments tend to be in areas of medicine where risk of familial conflict could deter an adolescent from seeking medical care. For example, "[a]s of 2022, all jurisdictions have laws that explicitly allow a minor of a particular age (as defined by each state) to give informed consent to receive STD diagnosis and treatment services."[45] "At least 34 states have enacted statutes that allow minors to consent for some outpatient mental health services."[46] At least 44 states permit minors to consent to alcohol or substance use treatment, with 13 states confining consent to certain age groups and at least 31 authorizing minors of any age.[47] At least 37

---

[43] *See*, *e.g.*, Ala. Code §§ 22-8-4, 22-8-7 (1975); Ariz. Rev. Stat. § 44-132 (1962).

[44] State Minor Consent Laws, *supra* n.41 at 2.

[45] *State Laws That Enable a Minor to Provide Informed Consent to Receive HIV and STD Services*, CDC, https://www.cdc.gov/hiv/policies/law/states/minors.html (last reviewed Oct. 25, 2022).

[46] State Minor Consent Laws, *supra* n.41 at 6.

[47] Richard C. Boldt, *Adolescent Decision Making: Legal Issues with*

states permit minors to consent to prenatal services, as does the District of Columbia.[48]

Of particular relevance here, many state laws authorize minors to access family planning services, contraceptive service, and pregnancy-related care.[49] At least 23 states and Washington D.C. expressly permit all minors to consent to contraceptive services: Alaska,[50] Arizona,[51]

---

*Respect to Treatment for Substance Misuse and Mental Illness*, 15 J. Health Care L. & Pol'y 75, 90–92 (2012), https://digitalcommons.law.umaryland.edu/jhclp/vol15/iss1/5/.

[48] *Minors' Access to Prenatal Care*, Guttmacher Inst. https://www.guttmacher.org/state-policy/explore/minors-access-prenatal-care (last updated Mar. 1, 2023).

[49] State Minor Consent Laws, *supra* n.41.

[50] Alaska Stat. § 25.20.025 (1975) (minor may consent for diagnosis, prevention, or treatment of pregnancy).

[51] Ariz. Op. Att'y Gen. No. 77-37 (1977) (providers may provide family planning services to minors absent parental consent).

Arkansas,[52] California,[53] Colorado,[54] District of Columbia,[55] Georgia,[56] Idaho,[57] Iowa,[58] Kentucky,[59] Maine,[60] Maryland,[61] Massachusetts,[62]

---

[52] Ark. Code Ann. § 20-16-304 (1973) (contraception information shall be available to every person who desires them regardless of age).

[53] Cal. Fam. Code § 6925 (West 1992) (minors may consent for medical care related to pregnancy prevention).

[54] Colo. Rev. Stat. § 25-6-102 (2021) (contraceptive procedures, supplies, and information must be accessible to every person regardless of age).

[55] D.C. Mun. Regs. Tit. 22, § 600.7 (1963) (minors may consent for health services for prevention, diagnosis, or treatment of pregnancy).

[56] Ga. Code Ann. § 31-9-2 (2022) (any female, regardless of age, may consent for any treatment for the prevention of pregnancy).

[57] Idaho Code Ann. § 18-603 (West 1974) (a physician may provide examinations, prescriptions, devices, and information regarding prevention of conception to any requesting person capable of informed consent).

[58] Iowa Code Ann. § 141A.7 (West 2022) (minors may consent for voluntary treatment, contraceptive services, or screening or treatment for HIV and other sexually transmitted infections).

[59] Ky. Rev. Stat. Ann. § 214.185 (2021) (minors may consent for contraception).

[60] Me. Rev. Stat. Ann. tit. 22, § 1908 (West 2019) (family planning services available to any minor who is a parent, is married, has consent of a guardian, or who may suffer probable health hazards); Me. Rev. Stat. Ann. tit. 22, § 1902 (West 2019) (includes contraception).

[61] Md. Code Ann., Health-Gen. § 20-102 (West 2020) (minors have the same capacity as an adult to consent for treatment for or advice about contraception).

[62] Mass. Gen. Laws Ann. ch. 111, § 24E (West 1990) (family planning services available to all individuals of childbearing age).

Minnesota,[63] Montana,[64] New Mexico,[65] New York,[66] North Carolina,[67] Oregon,[68] Pennsylvania,[69] Tennessee,[70] Virginia,[71] Washington,[72] and Wyoming.[73]

---

[63] Op. Att'y Gen. 494-b-39 (1972) (physicians may provide contraception to minors without parental consent).

[64] Mont. Code Ann. § 41-1-402 (West 2003) (minors may consent for health services related to the prevention of pregnancy but in cases of self-consent, the healthcare provider must provide counseling or refer the minor for counseling).

[65] N.M. Stat. Ann. § 24-8-5 (West 2015) (neither government nor any health facility may create an age-related prerequisite for any family planning service).

[66] N.Y. Pub. Health Law § 2515 (McKinney 2015) (providing family planning services for any eligible adolescent—a person 21 or younger who is at risk for becoming a parent, is pregnant, or is a parent).

[67] N.C. Gen. Stat. Ann. § 90-21.5 (West 2021) (minors may consent for medical services for the prevention, diagnosis, and treatment of pregnancy, not including an abortion or sterilization).

[68] Or. Rev. Stat. Ann. § 109.640 (West 2021) (physicians may provide birth control information and services to any person without regard to the age).

[69] 35 Pa. Cons. Stat. Ann. § 10101 (1970) (minors who have been pregnant may consent for medical, dental, and health services for herself); 35 Pa. Cons. Stat. Ann. § 10103 (1970) (minors may consent for medical services to determine the presence of or to treat pregnancy).

[70] Tenn. Code Ann. § 68-34-107 (West 1971) (contraceptive supplies and information may be furnished to any minor who has the consent of a parent or guardian or who requests and needs it).

[71] Va. Code Ann. § 54.1-2969(E) (West 2022) (minors may consent for medical services related to birth control or family planning).

Some of the remaining states explicitly permit minors to consent to contraceptive services in certain circumstances or based on other factors; other states' laws are silent on minor consent for contraception but allow minors who may consent to healthcare generally based on their status to consent for contraception. For example, Florida and Illinois allow minors to consent to contraceptive services if the physician has determined that there is a "health hazard" to the minor's health.[74] Other states permit contraceptive service if the minor is a parent;[75] is married;[76] or is or was ever pregnant.[77] Other circumstances may include having reached a specific age, level of high school, or demonstration of maturity or having

---

[72] Wash. Rev. Code Ann. § 9.02.100 (West 2022) (every individual has the fundamental right to choose or refuse birth control).

[73] Wyo. Stat. Ann. § 42-5-101 (West 1991) (the state may provide and pay for family planning and birth control services to any person who may benefit from this information and these services).

[74] Fla. Stat. Ann. § 381.0051 (West 2012) (maternal health and contraceptive information and services of a nonsurgical nature available to any minor who is married, parents, pregnant, has the consent of a guardian, or if the physician determines the minor "may suffer probably health hazards if the services are not provided"); 325 Ill. Comp. Stat. § 10/1 (1976) (same).

[75] *Minors' Access to Prenatal Care*, Guttmacher Inst., *supra* n.48.

[76] *Id.*

[77] *Id.*

a referral from a physician or member of the clergy.[78] Even in Texas, the state where Plaintiff resides, any minor who is at least 16 and resides apart from their parent or guardians may consent to *any* medical care.[79]

While confidentiality is often implied where minors may consent, some states expressly bar parental notification without the permission of the minor or allow it only if notification is essential to protect the minor's health.[80] These confidentiality protections may include contraception as well as other services for which minors are allowed to consent.

Where policies have required parental consent or notice for contraception, courts have frequently invalidated them. *See Parents United for Better Schs., Inc. v. Sch. Dist. of Philadelphia Bd. of Educ.,* 148 F.3d 260, 269–70 (3d Cir. 1998) (holding unconstitutional a blanket requirement of parental consent for contraceptives); *Planned Parenthood Ass'n of Utah v. Mattheson,* 582 F. Supp. 1001, 1009 (D. Utah 1983) ("[A] state may not impose a blanket parental notification requirement on minors seeking to exercise their constitutionally protected right to decide

---

[78] *Id.*

[79] Tex. Fam. Code Ann. § 32.003(2)(A) (West 2007).

[80] Cal. Civ. Code Ann. §§ 56.10, 56.11 (West 2022); Me. Rev. Stat. Ann. tit. 22, § 1505 (1995); N.C. Gen. Stat. Ann. § 90-21.4 (West 1985).

whether to bear or to beget a child by using contraceptives."); *T.H. v. Jones,* 425 F. Supp. 873, 882 (D. Utah 1975) ("[T]he state may not enforce the choice of parents in conflict with a minor's constitutional right of free access to birth control information and services."); *Curtis v. Sch. Comm. of Falmouth,* 652 N.E.2d 580, 586 n.9 (Mass. 1995) (rejecting claim that parental notification should be required for contraceptives).

These laws reflect the medical reality described in Part I: parental involvement is recommended and preferable when it does not interfere with a minor's access to health care or present a risk to their health or safety, but circumstances exist in which disclosure of sensitive information to a parent may risk harm to the minor by deterring care or exposing the minor to a risk of abuse.[81]

In short, many states, the District of Columbia, and most if not all prior courts recognize that minor self-consent to contraception is a crucial exception to the general rule of parental decision-making. Many state laws and court decisions also afford confidentiality protection when

---

[81] Ryan H. Pasternak et al., *21st Century Cures Act ONC Rule: Implications for Adolescent Care and Confidentiality Protections*, Pediatrics, April 2023, at S5 Table 3, https://publications.aap.org/pediatrics/article/151/Supplement%201/e20 22057267K/191013/21st-Century-Cures-Act-ONC-Rule-Implications-for.

minors are allowed to consent for contraception. The nearly universal existence of such provisions is incompatible with Plaintiff's claim that the right of a parent to control the healthcare decisions of a minor is absolute.

### III.    Minors Have Rights to Access Health Care Including Contraception That Must Be Respected.

The overwhelming medical consensus and near universal state agreement that, in a variety of circumstances, adolescents have the right to confidentiality and consent to medical care is more than enough basis to deny Plaintiff's substantive due process claim. Even setting that aside, Plaintiff misconceives the nature of constitutional parental rights.

As HHS explains, the constitutional right of parents to make decisions concerning their children has never been absolute—particularly where children's health is involved. For example, the Supreme Court has long recognized that neither parental nor religious rights "include [the] liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944). "Parents may be free to become martyrs themselves. But it does not follow they are free, in identical circumstances, to make martyrs of their children before they

have reached the age of full and legal discretion when they can make that choice for themselves." *Id*. at 170.

Aside from the normal adolescent desire for privacy as adolescents develop toward autonomy and adult decision-making,[82] minors are also "possessed of fundamental rights which the state must respect," *Tinker v. Des Moines Indep. Cmty. Sch. Dist*., 393 U.S. 503, 511 (1969), just as adults are.

The Constitution does not force HHS to prioritize Plaintiff's desire to prevent his children from using contraception over the rights of his adolescent children to seek care if they deem it necessary. Far less should one individual parent's preference govern the access of every adolescent in America to confidential health care.

## CONCLUSION

For these and the reasons in the HHS brief, the Court should reverse the decision of the District Court, with instructions to dismiss the case.

---

[82] Adolescent Policy Statement, *supra* n.3.

Respectfully Submitted,

Dated: May 1, 2023          /s/ Jeffrey B. Dubner
                           JEFFREY B. DUBNER
                           MAHER MAHMOOD
                           DEMOCRACY FORWARD FOUNDATION
                           P.O. Box 34553
                           Washington, D.C. 20043
                           Telephone: (202) 448-9090
                           jdubner@democracyforward.org
                           mmahmood@democracyforward.org

# CERTIFICATE OF COMPLIANCE

## With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

I certify that this filing complies with the type-volume limitation of 32(a)(7)(B) because it contains 4561 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This filing also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Fifth Circuit Rule 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word for Windows, version 2016 in Century Schoolbook 14-point font typeface, with 14-point font typeface for footnotes.

*/s/ Jeffrey B. Dubner*
JEFFREY B. DUBNER

## CERTIFICATE OF SERVICE

I, Jeffrey B. Dubner, counsel for *Amici*, certify that on May 1, 2023, a copy of the above brief was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

I further certify that 1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; 2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1: and 3) the document has been scanned for viruses and has been found to be free of viruses.

*/s/ Jeffrey B. Dubner*
JEFFREY B. DUBNER

May 1, 2023