No. 23-10159

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

ALEXANDER R. DEANDA, on behalf of himself and others similarly situated,

*Plaintiff-Appellee,*

v.

XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; JESSICA SWAFFORD MARCELLA, in her official capacity as Deputy Assistant Secretary for Population Affairs; UNITED STATES OF AMERICA,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Texas

## BRIEF OF ALLIANCE DEFENDING FREEDOM AS AMICUS CURIAE IN SUPPORT OF APPELLEE AND AFFIRMANCE

Katherine L. Anderson
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
kanderson@ADFlegal.org

Christopher P. Schandevel
John J. Bursch
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4655
cschandevel@ADFlegal.org
jbursch@ADFlegal.org

*Counsel for Amicus Curiae*

# CERTIFICATE OF INTERESTED PERSONS

No. 23-10159, *Deanda v. Becerra, et al.*

The undersigned counsel of record certifies that he is not aware of any persons or entities as described in the fourth sentence of Rule 28.2.1 that have a financial interest in the outcome of this case and have not been identified by the parties. The amicus party listed below, together with its counsel, have a non-financial interest in the outcome, as described in the Interest of Amicus Curiae section of this brief. This representation is made so that the judges of this Court may evaluate possible disqualification or recusal.

1) Amicus Curiae Alliance Defending Freedom;

2) Christopher P. Schandevel, counsel for amicus curiae Alliance Defending Freedom;

3) John J. Bursch, counsel for amicus curiae Alliance Defending Freedom; and

4) Katherine L. Anderson, counsel for amicus curiae Alliance Defending Freedom.

Dated: June 30, 2023

*/s/ Christopher P. Schandevel*
Christopher P. Schandevel
*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................i

Table of Authorities................................................................ iii

Interest of Amicus Curiae and Introduction ...........................................1

Argument..................................................................................4

I.     The parental right protected by the Due Process Clause is fundamental, so strict scrutiny applies to violations that fall within the scope of that right..........................................................4

    A.     Fundamental rights protected by the Due Process Clause trigger strict scrutiny..................................................4

    B.     Under *Glucksberg* and *Troxel*, the parental right protected by the Due Process Clause is fundamental. ...........5

II.    Interests falling outside the scope of the fundamental rights protected by the Due Process Clause trigger only rational-basis review. ................................................................7

III.   At a minimum, parents have a fundamental right to decide whether to consent to the government's provision of non-essential medical treatment to their children. .............................10

Conclusion .............................................................................15

Certificate of Compliance.........................................................16

Certificate of Service ..............................................................17

# TABLE OF AUTHORITIES

## **Cases**

*Alfonso v. Fernandez,*
    606 N.Y.S.2d 259 (N.Y. App. Div. 1993) ...................... 11, 12, 13, 14

*Blixt v. Blixt,*
    774 N.E.2d 1052 (Mass. 2002) ........................................................ 6

*Brennan v. Stewart,*
    834 F.2d 1248 (5th Cir. 1988) ........................................................ 4

*Cornerstone Christian Schools v. University Interscholastic League,*
    563 F.3d 127 (5th Cir. 2009) ................................................. 2, 7, 8

*Franklin v. United States,*
    49 F.4th 429 (5th Cir. 2022) ................................................... 4, 6, 7

*Hiller v. Fausey,*
    904 A.2d 875 (Pa. 2006) ................................................................ 6

*Jones v. Jones,*
    359 P.3d 603 (Utah 2015) ............................................................... 6

*Kite v. Marshall,*
    661 F.2d 1027 (5th Cir. 1981) ........................................................ 9

*Littlefield v. Forney Independent School District,*
    268 F.3d 275 (5th Cir. 2001) ....................................... 2, 3, 5, 7, 8, 9

*Malagon de Fuentes v. Gonzales,*
    462 F.3d 498 (5th Cir. 2006) ......................................................... 8

*Matter of Visitation of A. A. L.,*
    927 N.W.2d 486 (Wis. 2019) .......................................................... 6

*Parham v. J. R.,*
    442 U.S. 584 (1979) ................................................................ 10, 11

*Reyes v. North Texas Tollway Authority,*
    861 F.3d 558 (5th Cir. 2017) .......................................................... 4

*Troxel v. Granville,*
    530 U.S. 57 (2000) ........................................................................ 5, 6

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) ........................................................ 3, 4, 5, 6, 7

## Statutes

ALA. CODE § 22-8-4 .................................................................... 10

CAL. FAM. CODE § 6922 ............................................................. 10

DEL. CODE ANN. TITLE 13, § 707 ............................................... 10

ME. REV. STAT. ANN. TITLE 22, § 1503 ..................................... 10

N.Y. PUB. HEALTH LAW § 2504 ................................................. 10

## Other Authorities

Eleanor Klibanoff and Sneha Dey, *Texas Family Planning Clinics Require Parental Consent for Birth Control Following Court Ruling*, The Texas Tribune (Jan. 3, 2023) ..................................... 14

Planned Parenthood Gulf Coast, Inc., *Facts About Minor Consent for Medical Treatment in Texas* ............................................................. 14

Texas Department of State Health Services, *Adolescent Health: A Guide for Providers* (Aug. 2016) ..................................................... 14

**INTEREST OF AMICUS CURIAE[1] AND INTRODUCTION**

Alliance Defending Freedom is a non-profit, public interest legal organization that provides strategic planning, training, funding, and litigation services to protect Americans' constitutional rights—including parents' fundamental right to direct the upbringing of their children. That right is under threat. And courts—including this one—need to act to prevent the right from being relegated to second-class status.

For example, ADF is litigating *Figliola v. School Board of the City of Harrisonburg*, Case No. CL22-1304, in Virginia state court. In that case, plaintiff parents are challenging a school policy requiring teachers to socially transition students without parents' consent by deceiving parents about the new name and pronouns their child is using at school unless the child gives permission for school officials to disclose that information. *See* Compl., perma.cc/VG2V-D8FH; Memorandum in Support of Motion for Temporary Injunction, perma.cc/R8VP-G7P8.

Along with the Wisconsin Institute for Law and Liberty, ADF also represents parents challenging a Wisconsin school policy that requires staff to encourage students to transition to a different gender identity without parental consent and even over a parent's objection. *See* Compl. ¶ 1, *T.F. v. Kettle Moraine Sch. Dist.*, No. 2021CV001650 (Wis. Cir. Ct. Waukesha Cnty. filed Nov. 17, 2021), ECF No. 2, perma.cc/8CKJ-VL5K.

---

[1] No counsel for a party authored this brief in whole or in part, no one, other than amicus and its counsel, made a monetary contribution for its preparation or submission, and all parties have consented to its filing.

1

In that case, school officials told the plaintiff parents that they planned to begin socially transitioning their then-12-year-old daughter to a male gender identity despite the parents' explicit instruction that school officials were to use her legal name and female pronouns. *Id.* at ¶¶ 34–35. The girl had been suffering from anxiety and depression. *Id.* at ¶ 28. After her parents withdrew her from school, her demeanor improved, and she changed her mind about wanting to transition to a male identity, telling her mom that the "affirmative care" she had received from a counselor had "really messed [her] up." *Id.* at ¶ 40.

Parents and children deserve better. But dicta in some of this Court's cases arguably provides cover for schools to run roughshod over parents' rights. For example, dicta in *Littlefield v. Forney Independent School District* could be read to mean that—at least in public schools—infringements on parental rights only trigger rational-basis review. 268 F.3d 275, 291 (5th Cir. 2001) ("[A] rational-basis test is the appropriate level of scrutiny for parental rights in the public school context.").[2] And that dicta could have dangerous consequences: it could be used to justify giving schools and government entities free rein to medically transition children to a new gender identity—by dispensing puberty blockers, testosterone, and estrogen—without their parents' consent. ROA.759.

---

[2] *Accord, e.g., Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 136 (5th Cir. 2009) (the parental right "is not absolute, and states can subject it to reasonable regulation, particularly when the state's interest relates to the provision of public education").

The district court distinguished *Littlefield* on the ground that it "explicitly reserves [the rational-basis] standard for parental rights 'concerning public education' and 'in the public school context.'" ROA.762 n.19 (quoting *Littlefield*, 268 F.3d at 291). But that would still mean parents shed their fundamental rights the moment their children walk through the schoolhouse gates. That cannot be the law. A better reading of *Littlefield* and cases like it would hold that the liberty interests asserted in those cases simply fell outside the scope of the parental rights protected by the Due Process Clause. As such, they only warranted rational-basis review. But liberty interests that fall *inside* the scope of parents' fundamental right always warrant strict scrutiny—even in the public-school context. This Court should say so now.

The Court should reject the Government's attempt to downgrade the fundamental nature of the parental rights protected by the Due Process Clause. At the same time, the Court should clean up any dicta in its prior opinions that might be read to do the same. The right of parents to direct the upbringing of their children is no less fundamental than any other "deeply rooted" right. *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (listing the right alongside other "fundamental rights"). And a parent's right to withhold consent to medical treatment for her child falls within the scope of that right. The district court correctly held that the policy challenged here is subject to strict scrutiny—which it cannot survive. This Court should affirm.

3

# ARGUMENT

## I. The parental right protected by the Due Process Clause is fundamental, so strict scrutiny applies to violations that fall within the scope of that right.

### A. Fundamental rights protected by the Due Process Clause trigger strict scrutiny.

For claimed violations of substantive-due-process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution, this Court has long applied "one of two standards: strict scrutiny and rational-basis review." *Franklin v. United States*, 49 F.4th 429, 435 (5th Cir. 2022); *accord Brennan v. Stewart*, 834 F.2d 1248, 1256 (5th Cir. 1988) (explaining the differences between the two tests).

"If a right is fundamental, strict scrutiny applies," meaning restrictions "must be 'narrowly tailored to serve a compelling state interest.'" *Franklin*, 49 F.4th at 435 (quoting *Glucksberg*, 521 U.S. at 721). "If a right is not fundamental, then rational-basis review is applied, and the restriction at issue survives as long as it is 'rationally related to a legitimate government interest.'" *Id.* at 435–36 (quoting *Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558, 561 (5th Cir. 2017)).

Finally, to decide whether an alleged right is fundamental, the Court asks "whether that right is 'deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if the right was sacrificed.'" *Id.* at 436 (quoting *Glucksberg*, 521 U.S. at 721) (cleaned up).

4

## B.   Under *Glucksberg* and *Troxel*, the parental right protected by the Due Process Clause is fundamental.

The problem with cases like *Littlefield* suggesting that rational-basis review is the correct test "for parental rights in the public school context," 268 F.3d at 291, is that it contravenes the fundamental nature of a parent's right to "direct the education and upbringing of one's children." *Glucksberg*, 521 U.S. at 720. In *Glucksberg*, the Supreme Court reaffirmed that the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Id.* Most relevant here, the Court included the right to "direct the education and upbringing of one's children" on its list of fundamental rights. *Id.* As a result, the government may not infringe the right "*at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* at 721 (cleaned up).

Three years after *Glucksberg*, the Supreme Court reaffirmed that parents have a "fundamental liberty interest[]" in the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality). While four justices joined the plurality opinion, Justice Thomas wrote separately to express his agreement with the plurality's position that the "Court's recognition of a *fundamental* right of parents to direct the upbringing of their children resolve[d] [the] case." *Id.* at 80 (Thomas, J., concurring) (emphasis added).

5

That liberty interest "is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Id.* at 65 (plurality). And as the plurality expressly acknowledged, the Due Process Clause "provides heightened protection against government interference with [such] fundamental rights and liberty interests." *Id.* (plurality); a*ccord id.* at 80 (Thomas, J., concurring) (endorsing "strict scrutiny" as the correct test for infringements on the "fundamental right of parents to direct the upbringing of their children").

Taken together, *Glucksberg* and *Troxel* support one conclusion: whether described as the right to "direct the education and upbringing of one's children," *Glucksberg*, 521 U.S. at 720, or the liberty interest of parents "in the care, custody, and control of their children," *Troxel*, 530 U.S. at 65 (plurality), the rights of parents protected by the Due Process Clause easily qualify as "fundamental" for purposes of determining the appropriate level of review, *Glucksberg*, 521 U.S. at 720; *accord Troxel*, 530 U.S. at 65 (plurality). And once the fundamental nature of the right is established, the standard of review clicks into place: "If a right is fundamental, strict scrutiny applies." *Franklin*, 49 F.4th at 435.[3]

---

[3] *Accord Blixt v. Blixt*, 774 N.E.2d 1052, 1059 (Mass. 2002) (applying *Troxel* and concluding that, "[w]hen a fundamental right is at stake, the so-called 'strict scrutiny' formula . . . comes into play"); *Matter of Visitation of A. A. L.*, 927 N.W.2d 486, 494 (Wis. 2019) (collecting cases showing "the majority of courts" applying *Troxel* have applied strict scrutiny); *Jones v. Jones*, 359 P.3d 603, 610 n.10 (Utah 2015) (same); *Hiller v. Fausey*, 904 A.2d 875, 885, 885 n.18 (Pa. 2006) (same).

## II.    Interests falling outside the scope of the fundamental rights protected by the Due Process Clause trigger only rational-basis review.

Of course, the fundamental nature of a parent's right to direct the education and upbringing of her children doesn't mean any invocation of the right automatically triggers strict scrutiny. "[T]o decide if the implicated right is fundamental, that right must be carefully described." *Franklin*, 49 F.4th at 436 (cleaned up). Once carefully described, if the interest does not "implicate a fundamental right," then the government does not need to show anything "more than a reasonable relation to a legitimate state interest." *Glucksberg*, 521 U.S. at 722. In other words, if the asserted interest falls outside the scope of the fundamental right, then the government need only satisfy rational-basis review.

That basic structure of the analysis explains the results in *Littlefield* and *Cornerstone*. In both cases, this Court acknowledged that the parental rights protected by the Due Process Clause are fundamental. *Littlefield* quotes *Troxel*'s statement that "[o]ne of 'the fundamental liberty interests' recognized by the [Supreme] Court is the 'interest of parents in the care, custody, and control of their children.'" *Littlefield*, 268 F.3d at 288 (quoting *Troxel*, 530 U.S. at 65–66). *Littlefield* also recognizes that "[g]overnment actions that burden … fundamental rights or liberty interests are subject to strict scrutiny." *Id.* at 288 n.18. Similarly, *Cornerstone* reaffirms that "[p]arents have a fundamental interest in raising and educating their children." 563 F.3d at 136.

7

What explains the result in both of those cases is simple: this Court determined that the *specific* interests being asserted did not fall within the scope of the fundamental parental rights and liberty interests that the Constitution protects.

In *Littlefield*, this Court held that "[w]hile Parents may have a fundamental right in the upbringing and education of their children, this right *does not cover* the Parents' objection to a public school Uniform Policy." 268 F.3d at 291 (emphasis added). The Court did "not read *Troxel* to create a fundamental right for parents to control the clothing their children wear to public schools," so the Court applied rational-basis review. *Id.* at 289. That makes sense.

Similarly, in *Cornerstone*, this Court held that parents' "fundamental interest in raising and educating their children … protects their prerogative to make choices regarding the type of education … that their child receives but not particular components of that education." 563 F.3d at 136. But while "clothed in free exercise and due process claims," the case was "fundamentally about [a student's] right to participate in interscholastic competition." *Id.* at 138. Framed that way, the challenged policy did "not unduly burden plaintiffs' fundamental rights." *Id.*

Other parental-rights cases from this Court follow the same pattern. *E.g.*, *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505–06 (5th Cir. 2006) (rejecting argument that noncitizen petitioner's "fundamental rights with respect to [her] children" included the right to be

admitted into the country to be reunited with her children, and thus
declining to apply strict scrutiny); *Kite v. Marshall*, 661 F.2d 1027, 1029
(5th Cir. 1981) ("The determination that no fundamental right to
participate in summer athletic camp exists establishes the level of
scrutiny to which we must subject section 21."). If the asserted liberty
interests fall within the scope of the fundamental right, then strict
scrutiny applies. If not, rational-basis review.

So the question in cases like this one is *not* whether the right of
parents to direct the upbringing of their children is fundamental, thus
triggering strict scrutiny. The Supreme Court has already answered
that question yes, and that necessarily means strict scrutiny applies.
Nor should it matter whether the plaintiff parent is asserting the right
in the context of public education. *Contra Littlefield*, 268 F.3d at 291
("These cases support the determinations in *Meyer, Pierce,* and *Yoder*
that a rational-basis test is the appropriate level of scrutiny for parental
rights in the public school context."). Instead, the question is whether
the specific liberty interests the plaintiff parent is asserting here fall
within the scope of the fundamental right of parents to direct the
upbringing of their children. If so, then strict scrutiny applies. And for
the reasons explained below and in Plaintiff's response brief, Resp. Br.
37–40, the answer to that question is a resounding "Yes."

9

**III.    At a minimum, parents have a fundamental right to decide whether to consent to the government's provision of non-essential medical treatment to their children.**

Carefully described, this case asks whether parents' fundamental right to direct the upbringing of their children includes the right to decide whether to consent when the government attempts to provide prescription contraceptives and other non-essential family-planning services to their children. ROA.17–18. And as Plaintiff explains, the "right of parents to consent to the medical treatment of their children … is assuredly an interest that is deeply rooted in this Nation's history and tradition." Resp. Br. at 38–39 (cleaned up). "Any infringement on this right should therefore be subjected to strict scrutiny, which allows the government to override this fundamental right only when necessary to advance a compelling governmental interest." *Id.* at 39.

Indeed, the Supreme Court's "jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children." *Parham v. J. R.*, 442 U.S. 584, 602 (1979). "The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." *Id.* And that explains why even today, most minors cannot unilaterally consent to most forms of medical and mental-health care. *See, e.g.*, Ala. Code § 22-8-4; Cal. Fam. Code § 6922; Del. Code Ann. Title 13, § 707; Me. Rev. Stat. Ann. Title 22, § 1503; N.Y. Pub. Health Law § 2504.

Included within parents' fundamental right and duty to prepare their children for life's challenges and obligations is the duty "to recognize symptoms of illness and to seek and follow medical advice." *Parham*, 442 U.S. at 602. For centuries, our laws have operated based on the assumption "that natural bonds of affection lead parents to act in the best interests of their children." *Id.* (citing Blackstone and Kent). And "[s]imply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state." *Id.* at 603.

All of that is doubly true for a parent's right to make decisions about her child's access to non-essential forms of medical treatment. "Most children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment." *Id.* "Parents can and must make those judgments." *Id.* And "[n]either state officials nor federal courts are equipped to review such parental decisions." *Id.* at 604.

As the Government tacitly admits, the policy here largely resembles the policy at issue in *Alfonso v. Fernandez*, 606 N.Y.S.2d 259 (N.Y. App. Div. 1993). Opening Br. 42–43. There, the reviewing court held that a "plan to dispense condoms" to minor students "without the consent of their parents or guardians, or an opt-out provision," violated parents' fundamental rights. *Alfonso*, 606 N.Y.S.2d at 261.

11

As the court explained, "[a]t common law it was for parents to consent or withhold their consent to the rendition of health services to their children." *Id.* at 262. Subject to certain limited exceptions, "[a]s legal incompetents, minors could no more consent to medical treatment than they could enter into binding contracts." *Id.*[4] And the "condom availability component" of the challenged program was "not merely education," it was "a health service to prevent disease by protecting against HIV infection." *Id.* at 263.

"Although the program [was] not intended to promote promiscuity, it [was] intended to encourage and enable students to use condoms if and when they engage[d] in sexual activity." *Id.* As a result, even though student participation in the program was "wholly voluntary" and parents were "free to provide guidance" on the use of contraception, parents were still "being forced to surrender a parenting right" by not being allowed to withhold their consent. *Id.* at 265–66. Specifically, they were being denied the right "to influence and guide the sexual activity of their children without State interference." *Id.* at 266.

---

[4] Exceptions at common law included children who "were regarded as emancipated and competent to consent" because "they were married," they "supported themselves," they had been "inducted into military service," or their parents had "abandoned them or failed to support them." *Id.* A physician also "could render health services to a minor in an emergency without first consulting his or her parents." *Id.* But even assuming these narrow circumstances might fall outside the scope of the deeply rooted fundamental right protected by the Due Process Clause, Plaintiff still would be entitled to relief here.

Stated differently, New York City "made a judgment that minors should have unrestricted access to contraceptives, a decision which is clearly within the purview of the petitioners' constitutionally protected right to rear their children, and then [had] forced that judgment on them." *Id.* at 266. The asserted liberty interests fell within the scope of the fundamental right, so strict scrutiny applied: "Because we believe that the petitioner parents have demonstrated an intrusion on their constitutionally-protected right to rear their children as they see fit, we turn next to the issue: whether a compelling State interest is involved and whether this program is necessary to meet it." *Id.* And because the plan failed strict scrutiny, it "violate[d] the petitioners' constitutional due process rights to direct the upbringing of their children." *Id.* at 267.

So too here. Plaintiff is asserting the same right to "withhold [his] consent to the rendition of health services to [his] children," *id.* at 262, namely the provision of "prescription contraception and other family-planning services," ROA.17. That asserted liberty interest is "clearly within the purview of [his] constitutionally protected right to rear [his] children," so strict scrutiny applies. *Alfonso*, 606 N.Y.S.2d at 266. And just like in *Alfonso*, the Government's policy cannot survive that level of review because—even assuming a compelling state interest—the Government cannot meet its burden to show that its policy of prohibiting parental consent is narrowly tailored to furthering that interest. *Id.* at 266–67.

13

"We no longer live in an age where minors find it difficult or socially unacceptable to obtain contraceptives at a local drug or convenience store." *Id.* at 267. "It is hardly a secret that condoms are now displayed next to vitamins and cold remedies." *Id.* "[M]inors may purchase condoms legally, and the cost is hardly exorbitant…." *Id.* That is equally true in Texas, and it will remain true even if this Court affirms the district court's decision below.[5] Thus, the Government's administration of the Title X program in a manner that makes "*prescription* contraception and other family-planning services" available to children at Title X clinics "without the consent of their parents," ROA.17 (emphasis added), is not narrowly tailored to further any compelling state interests that might arguably be implicated. And the district court's decision should be affirmed.

---

[5] *See* Tex. Dep't of State Health Servs., *Adolescent Health: A Guide for Providers* at 13 (Aug. 2016), available at perma.cc/6CL2-8KMH ("Parental consent is not required for minors to purchase *nonprescription* contraceptives (e.g., condoms) or to receive information about family planning.") (emphasis added); Eleanor Klibanoff and Sneha Dey, *Texas Family Planning Clinics Require Parental Consent for Birth Control Following Court Ruling*, The Texas Tribune (Jan. 3, 2023), available at perma.cc/JQ96-MKNE ("Minors can still access … emergency contraception, condoms and counseling without parental consent, LeBleu said."). Planned Parenthood Gulf Coast, Inc., *Facts About Minor Consent for Medical Treatment in Texas*, available at perma.cc/P83A-YMTC (listing condoms among the items Planned Parenthood *can* provide in Texas "to a minor without parental consent").

## CONCLUSION

Recent experience has taught ADF and its clients that the fundamental right of parents to direct the upbringing of their children is under siege in schools across this country. Those threats sometimes extend even outside the school context. Unfortunately, outdated dicta in some of this Court's cases could be construed by lower courts and officials as offering parents little to no protection against the new challenges they and their children are facing today.

In deciding this appeal, the Court should reaffirm that (1) parents have a fundamental right to direct the upbringing of their children, (2) *all* government intrusions on that right are subject to strict scrutiny, (3) parents' right to choose whether to consent to non-essential medical treatment for their children falls within the scope of that fundamental right, and (4) the intrusion on that right challenged here fails strict scrutiny. On that basis, the Court should affirm the decision below.

Respectfully submitted,

June 30, 2023

Katherine L. Anderson
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
kanderson@ADFlegal.org

By: */s/ Christopher P. Schandevel*
Christopher P. Schandevel
John J. Bursch
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4655
cschandevel@ADFlegal.org
jbursch@ADFlegal.org

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Circuit Rule 29 because it contains 3,636 words, not including the parts of the brief exempted by Fed. R. App. P. 32(f), as determined by the word-counting feature of Microsoft Office 365.

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point Century Schoolbook font.

Dated: June 30, 2023

*/s/ Christopher P. Schandevel*
Christopher P. Schandevel
*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

*/s/ Christopher P. Schandevel*
Christopher P. Schandevel
*Counsel for Amicus Curiae*